**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JOSE LUIS CALDERON ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | Judge |
| v. ) | |
| ) | |
| EXPERIAN INFORMATION ) | **COMPLAINT** |
| SOLUTIONS, INC., ) | |
| ) | With Jury Demand Endorsed Hereon |
| Defendants. ) | |
| ) | |

**INTRODUCTION**

1.  The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.  Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated about them.

3.  The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting

agencies ("CRAs").

4. These CRAs sell to readily paying subscribers (*i.e.,* retailers, landlords, lenders, potential employers and similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage or employment or the like.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures to assure "***maximum possible accuracy***" of the personal and financial information that they compile and sell about individual consumers. *See* 15 U.S.C. § 1681*e*(b) The FCRA sets forth this and many other requirements for CRAs' operations.

6. This action seeks compensatory, statutory, and punitive damages, costs of suit and reasonable attorneys' fees for the plaintiff, Jose Luis Calderon, resulting from the defendant's failure to abide by the requirements of the FCRA as more fully described below.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681*p*. Venue in this judicial district is proper because Plaintiff resides in this judicial district and many of the facts relevant to this Complaint occurred in this judicial district.

## PARTIES

8. Plaintiff, Jose Luis Calderon, is an adult individual presently residing in Nampa, Idaho. Plaintiff is a "consumer" as defined by Section 1681*a*(c) of the FCRA.

9. Defendant, Experian Information Solutions, Inc. ("Experian"), is an Ohio corporation doing business throughout the country and in the State of Idaho.

**BACKGROUND AND FACTUAL ALLEGATIONS**

12.     Plaintiff's full name is Jose Luis Calderon.  He has never been known by any other name.

13.     Plaintiff takes great pride in his good name and credit record, and works very hard to ensure that his bills are paid in full and on time every month.  Plaintiff believes and understands that his credit rating with all of his creditors is excellent.

14.     Despite the foregoing, Plaintiff's Experian credit report paints a different picture.

15.     In or around October 2008, plaintiff attempted to purchase an automobile but was told he would not qualify for financing because of his negative credit history.

16.     As Plaintiff believed and understood that he had no negative credit history, he conducted a routine check of his credit through www.annualcreditreport.com, a website established to give consumer's access to their credit reports through each of the national CRAs.

17.     Plaintiff discovered that his Experian credit report contained false and highly negative information that did not belong to Plaintiff.  Specifically, Plaintiff's Experian report showed:  (1) a public record entry indicating a lawsuit had been filed in a Canyon-Caldwell court against Plaintiff by Portfolio Recovery Associates ("the Canyon-Caldwell entry"); (2) an outstanding collection account held by NCO Financial; and (3) the name "JOSE L MARTINEZ CALDERO" as one properly attributable to Plaintiff.  None of this information is true.

18.     Plaintiff immediately disputed the erroneous information with the help of an entity called Advanced Credit Solutions.  Specifically, by letter dated October 13, 2008, Experian was notified, in writing (which was sent by certified mail), that each of the aforementioned, false pieces of information was incorrect and should be removed from Plaintiff's credit report at once.  *See* Dispute Letter dated October 13, 2008 (a copy of which is

attached hereto as Exhibit 1).

19. A second dispute letter was sent to Experian on November 13, 2008. *See* Dispute Letter dated November 12, 2008 (a copy of which is attached hereto as Exhibit 2).

20. Experian responded to Plaintiff's disputes by providing its "Investigation results" dated November 26, 2008. *See* Investigation Results dated November 26, 2008, from Experian to Jose Luis Calderon (a copy of which is attached hereto as Exhibit 3). This communication represented that Experian "investigated" each of the pieces of information disputed by Plaintiff and, while some of the false information was deleted, the public record Canyon-Caldwell entry would remain. *Id.*

21. By correspondence dated the same date, Experian represented to Plaintiff that it had "already investigated [the Canyon-Caldwell entry] information and the credit grantor has verified its accuracy." *See* Letter dated November 26, 2008, from Experian to Jose Luis Calderon (a copy of which is attached hereto as Exhibit 4). Experian further advised Plaintiff that "[w]ithout additional relevant information in support of this dispute, you will not receive notice again regarding this particular dispute." *Id.*

22. Since the Canyon-Caldwell entry does not belong to Plaintiff, Experian was again notified in writing that this information was false, and Plaintiff asked for identification by name and telephone number of the individual(s) contacted by Experian who allegedly "verified" the Canyon-Caldwell entry as belonging to Plaintiff. *See* Dispute Letter dated December 31, 2008 (a copy of which is attached hereto as Exhibit 5).

23. While Experian provided a credit report to Plaintiff in January 2009, the accompanying "Investigation results" confirm that Experian did nothing to verify the accuracy of the Canyon-Caldwell entry, and the false entry remained on Plaintiff's report. *See* Investigation

Results and credit report dated January 23, 2009 (a redacted copy of which is attached hereto as Exhibit 6). Experian offered no response as to the identification of the source of the alleged verification.

24. Over the next few months, Experian was provided several additional pleas to correct the false and highly damaging public record entry it was reporting about Plaintiff. *See, e.g.,* Dispute Letter dated March 25, 2009, May 8, 2009 and July 20, 2009 (copies of which are attached hereto as Exhibits 7, 8 and 9).

25. Despite the fact that the Canyon-Caldwell entry simply does not and never did belong to Plaintiff, Experian seemingly deemed the matter closed. Experian continued to ignore Plaintiff's disputes, and willingly retained this false and highly derogatory information about Plaintiff in its records despite being informed on multiple occasions that the subject information was false.

26. Experian's unreasonable refusal to reinvestigate the disputed information resulted in considerable stress, anxiety and extreme frustration for Plaintiff. Plaintiff was confused and aggravated by Experian's flippant response to his original dispute, and its subsequent refusal to even consider the possibility that its original "reinvestigation" was wrong left Plaintiff utterly frustrated and angry.

27. Desperate to recapture his good name, Plaintiff disputed the false information yet again with Experian. *See* Dispute Letter dated August 20, 2009 (a copy of which is attached hereto as Exhibit 10).

28. In hopes of cutting through Experian's policy not to review previously "investigated" information, Plaintiff posed numerous, very detailed questioned to Experian as to how it verified the Canyon-Caldwell entry as belonging to Plaintiff. *See* Exhibit 10. ("Please

explain to me what your representatives uncovered to lead them to believe that you are reporting this item as it legally should be reported?" "What certified documents were reviewed to conclude your investigation?" "Please provide a complete copy of all of the information that was transmitted to the data furnisher as part of the investigation.").

29.     Experian responded with the same rote answer: a blank "Investigation results" page accompanied by a credit report showing absolutely nothing was updated in Plaintiff's credit report. *See* Investigation Results and Credit Report dated September 2, 2009 (redacted copies of which are attached hereto as Exhibit 11).

30.     Despite additional attempts by Plaintiff to move Experian off its position as to the false and highly derogative public record information in Plaintiff's credit report, Experian simply refused.

31.     As a direct result of Experian's refusal to remove objectively false information from Plaintiff's credit report, Plaintiff was denied a mortgage loan in November 2009.

32.     Plaintiff was humiliated to have the loan officer(s) see and believe that the highly derogatory information in Plaintiff's Experian credit report belonged to Plaintiff.

33.     Plaintiff became physically agitated by the experience, breaking into a sweat and becoming visibly anxious to leave the uncomfortable situation.

34.     Plaintiff is demoralized that he can not secure a house of his own, not due to his own past credit mistakes but because Experian simply refuses to report accurate information about Plaintiff.

35.     Plaintiff questions how and why *he* is supposed to prove that some debt he never heard of is not actually his, and why Experian is allowed to get away with skirting its obligations under federal law to report only accurate information about him.

36. The entire experience has imposed upon Plaintiff significant distrust, frustration and distress, and has rendered Plaintiff hopeless as to his ability to regain his good name.

37. Plaintiff has continued to dispute the false information to no avail.

38. There is simply no excuse for Experian's refusal to correct its records once and for all so as to allow Plaintiff's credit report to reflect the good name and credit rating Plaintiff has worked to earn.

39. Absent litigation, Plaintiff does not believe that his credit record will ever be accurate. Thus, the instant lawsuit is being commenced.

## COUNT ONE
## VIOLATION OF THE FAIR CREDIT REPORTING ACT

40. Plaintiff hereby incorporates by reference all well-pleaded allegations contained in the preceding paragraphs as if fully rewritten herein.

41. A "consumer reporting agency" is defined by the FCRA as follows:

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681*a*(f).

42. Experian is a consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

43. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n* (a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681*n*(a)(1) – (3).

7

44. Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. *See* 15 U.S.C. § 1681*o*. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681*o*(a)(1) – (2).

**(Failure To Adopt And/Or Follow Reasonable Procedures)**

45. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

46. Experian willfully and/or negligently failed to establish and/or follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff in violation of Section 1681*e*(b).

47. In or around November 2009, Experian prepared one or more consumer report pertaining to Plaintiff in connection with a residential loan application he submitted to purchase and finance a home.

48. Plaintiff was unable to secure financing because of the false and highly derogatory public record information being reported by Experian about Plaintiff.

49. Plaintiff had advised Experian on no less than eight (8) occasions prior to November 2009 that the subject public record information does not belong to Plaintiff and must be deleted.

50. Experian patently refused to assure maximum possible accuracy of its records about Plaintiff. *See* Credit Report dated November 25, 2009 (a redacted copy of which is

attached hereto as Exhibit 12).

51. As of today, Plaintiff's Experian report continues to include the false and highly derogatory Canyon-Caldwell entry.

52. As a direct and proximate result of Experian's repeated refusals to correct the adverse information in his credit report, Plaintiff has suffered economic loss.

53. As a direct and proximate result of Experian's repeated refusals to correct the adverse information in his credit report, Plaintiff has suffered extreme embarrassment and humiliation in having his good name and credit history butchered by Experian when Plaintiff attempted to obtain financing to purchase a home.

54. As a direct and proximate result of Experian's repeated refusals to correct the adverse information in his credit report, Plaintiff was (and continues to be) unable to secure financing for a mortgage and was (and continues to be) unable to purchase a home.

55. As a direct and proximate result of Experian's repeated refusals, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

56. As a direct and proximate result of Experian's repeated disregard for Plaintiff's disputes and the importance of his good credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

57. As a direct and proximate result of Experian's willful and/or negligent refusal to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together

with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

58. Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*(a)(2).

### (**Failure to Conduct Reasonable Reinvestigations**)

49. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

50. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

51. The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681*i*(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination[.]" *See* 15 U.S.C. § 1681*i*(a)(3)(B).

52. On at least a dozen occasions since 2008, Plaintiff disputed with Experian the

accuracy of the public record entry in his Experian credit report indicating there was a lawsuit filed against him by Portfolio Recovery Associates in a Canyon-Caldwell court.

53. On at least a dozen occasions since 2008, Plaintiff provided to Experian all necessary information to determine in a reasonable reinvestigation that the subject public record information does not belong to Plaintiff.

54. At no time did Experian ever inform Plaintiff that Experian had made a determination that his disputes were frivolous or irrelevant.

55. However, each time Plaintiff lodged a dispute, Experian either conducted no investigation of Plaintiff's disputes or repeatedly conducted such shoddy investigations that highly derogatory, false information remained in his credit file.

56. Each and every time Experian refused to delete the false information, Experian willfully and/or negligently failed to conduct a reasonable investigation in violation of Section 1681$i$(a)(1).

57. To date, Experian has refused to correct Plaintiff's credit report or even consider further disputes by Plaintiff as to the highly damaging public record entry that is destroying Plaintiff's good name and credit rating.

58. As a direct and proximate result of Experian's repeated refusals to correct the adverse information in his credit report, Plaintiff has suffered economic loss.

59. As a direct and proximate result of Experian's repeated refusals to correct the adverse information in his credit report, Plaintiff was (and continues to be) unable to secure financing for a mortgage and was (and continues to be) unable to purchase a home.

60. As a direct and proximate result of Experian's repeated refusals, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

61. As a direct and proximate result of Experian's repeated disregard for Plaintiff's disputes and the importance of his good credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

62. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling his to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

63. Experian's continued refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE**, Plaintiff, Jose Luis Calderon, respectfully prays that judgment be entered for Plaintiff and against the defendant, Experian Information Solutions, Inc., for the following:

    a) Actual damages in an amount to be proved at trial;

    b) Punitive damages as provided for in 15 U.S.C. § 1681*n*(a)(2);

    c) Statutory damages as provided for in 15 U.S.C. § 1681*n*(a)(1)(A);

    d) Costs and attorneys' fees as provided for in 15 U.S.C. § 1681*n*(a)(3) and 15 U.S.C. § 1681*o*(a)(2); and

    d) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Ryan T. Earl*
Ryan T. Earl (Idaho Bar #8342)
EARL &EARL, PLLC
212 10th Avenue South
Nampa, Idaho  83651
Telephone:  (208) 890-0355
Facsimile:  (208) 461-9560
Email:  ryantearl@earlandearllegal.com

Sylvia A. Goldsmith (Ohio Bar #0064871)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Gemini Towers
1991 Crocker Road, Suite 600
Westlake, Ohio  44145
Telephone:  (440) 934-3025
Facsimile:  (440) 934-3026
Email:  **sgoldsmith@sgoldsmithlawoffice.com**

Attorneys for Plaintiff

# **JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

DATED this 15th day of August, 2011.

/s/ *Ryan T. Earl*
Ryan T. Earl (Idaho Bar #8342)
EARL &EARL, PLLC