Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **JOSE LUIS CALDERON**, | ) |
| | ) CASE NO.: 1:11-CV-00386-EJL |
| Plaintiff, | ) |
| | ) JUDGE LODGE |
| v. | ) |
| | ) |
| **EXPERIAN INFORMATION** | ) |
| **SOLUTIONS, INC.**, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

This is a case brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by a consumer named Jose Luis Calderon who has what is referred to in

the credit reporting industry as a *mixed file*:[1] Mr. Calderon's credit report contained a highly derogatory public record judgment, as well as an unrelated collection account, a name, and an address, that did not belong to him. Despite Mr. Calderon's fourteen (14) separate and distinct disputes – disputes that identified the rightful owner of the judgment as an individual with a different address and date of birth than his own – Defendant, Experian Information Solutions, Inc., refused to delete the false information thereby causing Mr. Calderon considerable economic and non-economic injury.

The instant motion arises from Experian's refusal to produce all necessary information for Mr. Calderon to ascertain how, when and why his credit file was mixed and, perhaps more importantly, to what extent that mixture continues today within Experian's database (information that is within Experian's exclusive control), as well as other information pertinent to prove of Mr. Calderon's claims that Experian both negligently and willfully violated the FCRA in the handling of his credit file.

## HISTORY OF DISCOVERY DISPUTE

On or around December 6, 2011, Plaintiff served his First Request for Production of Documents directed to Experian and a corresponding Notice of Rule 30(b)(6) Deposition. A copy of Plaintiff's First Request for Production of Documents directed to Experian is attached hereto as Exhibit 1.

On January 9, 2012, Experian served its formal responses to Plaintiff's request, and produced some responsive materials consisting primarily of communications by and between Plaintiff and Experian including the various consumer credit reports Plaintiff received from Experian throughout his numerous disputes of a judgment appearing in his Experian credit report

---

[1] A mixed file is "the joining of related or unrelated consumers with similar identification information on one specific consumer report." *See* Mixed File Procedures manual at EXP/Calderon 000704.

that did not belong to him.  A copy of Experian's Responses to Plaintiff's First Set of Production of Documents is attached hereto as Exhibit 2.  Experian advised that it had additional responsive documents, but that those documents were "confidential" and would not be produced until a Protective Order was entered in the case.  Plaintiff agreed to continue the Experian corporate deposition(s) until all of the necessary documents were produced so as to avoid the need for duplication of the parties' discovery efforts.

On or around February 2, 2012, and after filing a Motion for Protective Order on January 31, 2012, that was granted on February 1, 2012, Experian produced additional materials.  These documents, all marked "confidential," included three (3) internal reports reflecting (or purporting to reflect) all information related to Plaintiff's Experian credit file, and the various actions taken by Experian in response to Plaintiff's numerous disputes.  The supplemental production also included a procedural manual regarding handling consumer disputes, an excerpt of another procedure manual specifically relating to mixed files, and a handbook detailing how to read/understand one of the internal reports.

On February 14, 2012, after receipt and careful review of Experian's supplemental production, Plaintiff's counsel electronically sent to Defendant's counsel a several-page letter outlining the deficiencies in Experian's production.  *See* Letter from Sylvia A. Goldsmith to Eric J. Hardeman dated February 14, 2012 (a copy of which is attached hereto as Exhibit 3).

On February 22, 2012, counsel for both parties had a lengthy meet and confer session attempting to resolve their discovery issues.  The parties are simply at an impasse as to resolution of their dispute.

# PARTICULAR DISCOVERY REQUESTS IN DISPUTE

Experian failed to provide responsive documents to a number of Plaintiff's Requests for Production of Documents. This Court has the power to compel such discovery pursuant to Fed. R. Civ. P. 26 and 37.

### 1. The Admin Reports, D/R Logs and Disclosure Logs

An Administrative or "Admin" report is a compilation of current and historical information including name variations, social security numbers, addresses, and credit accounts appearing in a particular consumer's credit file as of the date the Admin report is run. Plaintiff is aware of at least three (3) types of Admin reports utilized by Experian: a Long Admin, a Short Admin, and a loose-match Admin. While some of the information contained in the different versions is necessarily the same, each version shows the consumer's information in slightly different ways and/or with different or more detailed pieces of information or codes related to such information to track or utilize it in different ways.

A Dispute Resolution Log or "D/R Log" is a compilation of the disputes lodged by a particular consumer regarding items contained in his or her credit file, as well as any actions taken by Experian in response, that are included within the searched parameters on that consumer. Similarly, a Disclosure Log is a compilation of all communications sent by Experian to the consumer, specifically including letters and copies of that person's consumer credit report.

Without question, Plaintiff has requested all such documents that relate in any way to or otherwise contain information belonging to Plaintiff. *See* Request for Production Nos.

1, 2 and 3.[2] Experian has flatly refused to produce anything other than the Short Admin report, a D/R Log and a Disclosure Log that were printed shortly after the filing of this lawsuit following a limited search for what Experian believes to be Plaintiff's "PIN" or personal identification number – a number that Experian assigns to a given consumer based on that consumer's personal identifying information.

Experian has refused to review information relating to any other PIN and, as such, has limited its production of documents not to what information it has pertaining to Plaintiff but to what information it has associated with one particular PIN. In a perfect world, perhaps those two things would be the same. But Experian's system is not full-proof, and the information of more than one consumer commonly ends up under a single PIN. Indeed, that is what happened *here*, with a public record judgment and at least one unrelated collection account ending up in Mr. Calderon's credit file even though those items do not belong to him. So, while Experian claims to have "identified" Plaintiff's PIN and refused to produce any Admin(s), D/R Log(s) and/or Disclosure Log(s) for any other PINs, there is a reasonable possibility that some of

---

[2] These three requests read in their entirety as follows:

Request for Production No. 1:
Please provide all consumer reports, credit reports, consumer disclosures, updates or other compilation of information in Plaintiff's "file" as that term is defined in 15 U.S.C § 1681*a*(g), specifically including without limitation any current, historical and/or archived information such as long and short Administrative reports.

Request for Production No. 2:
Please produce all records of communication between Plaintiff and Experian, including all documents, records of telephonic communications, log books or other documents.

Request for Production No. 3:
Please produce all documents and/or screens generated, created or otherwise utilized or reviewed that relate to Plaintiff or any reinvestigation regarding any account or record related to Plaintiff or for which Plaintiff lodged a dispute, specifically including without limitation any dispute resolution logs, disclosure logs and/or any other logs, screens or documents that result from any administrative or internal action or review of Plaintiff's file.

Plaintiff's information is contained under *someone else's* PIN, the same way someone else's information was contained under his.[3]

Experian further stands behind the objection that it should not be required to produce *any* Admin reports, D/R Logs or Disclosure Logs because it is not obligated to "create documents that do not exist." *See*, *e.g.*, Experian's Response to Request for Production No. 1 at 5. However, the information included in all of these reports is information maintained in and readily accessible from Experian's electronic database. All that needs to be done to "create" such reports is to ask the computer for one to be printed.[4]

Clearly, *any* information Experian has that specifically relates to Plaintiff and his credit file – a credit file that at various points in time relevant here contained a judgment, an address, a name and at least one unrelated collection account that belong to someone *other than Plaintiff* – needs to be produced, irrespective of whether that information is presently and exclusively in electronic form. For this reason, Experian's objection in this regard has regularly been overruled by courts entertaining similar motions to compel. *See*, *e.g.*, *Brenda Faith Campbell v. Experian Information Solutions, Inc.*, Case No. 08-04217-CV-C-NKL (W.D. Mo. June 11, 2009) at Document No. 53.

Experian also objects to production of documents under any other PINs on the grounds that those reports and/or logs may contain information belonging to other consumers and so, there exists no permissible purpose for releasing it. But the FCRA specifically accounts

---

[3] Plaintiff has information that there are at least four (4) other Jose Calderon's in the greater Nampa, Idaho, area. In addition to his own father, Jose C. Calderon, and the individual with whom Plaintiff believes his credit report has been mixed, Jose Zuniga Calderon, Plaintiff is aware that his attorneys represent an unrelated individual named Jose Calderon Moreno who appears to have a mixed file with Mr. Moreno's father, also named Jose Calderon.

[4] Moments before Plaintiff's Motion to Compel was to be filed, a supplemention of Experian's original responses was served. This supplementation included what appears to be just two pages of a Long Admin report generated from Experian's understanding of Plaintiff's PIN. Only Page 2 and Page 8 of that document were produced.

for the need to do so in a situation such as this where the privacy rights of one consumer, *i.e.*, the instant Plaintiff, cannot fully be vindicated if the consumer reporting agency is allowed to hide behind the "privacy" of a consumer not a party to the lawsuit so as to blur the extent of the agency's wrongdoing. *See* 15 U.S.C. § 1681*b*(a)(1) ("consumer reporting agency may furnish a consumer report * * * (1) In response to the order of a court having jurisdiction to issue such an order[.]"). Not only has this objection been overruled in similar mixed file cases where it is necessary for the plaintiff to review all possibly-related Admin reports, D/R Logs and Disclosure Logs (to determine to what extent the mixture of information currently continues within Experian's database),[5] Experian has *stipulated* to producing such materials before. *See Howley, et al., v. Experian Information Solutions, Inc.*, Civil Action No. 09-241 (D. N.J. September 9, 2009) at Document 17.[6]

With respect to production of a Long Admin or Loose Match Admin, Experian has failed to articulate any genuine reason for its staunch refusal to produce those here. In fact, Experian's refusal to run a Loose Match Admin inquiry (or conduct any further search of its database to determine if there continues to be a link between Plaintiff and any other "Jose Calderon" in the greater Nampa, Idaho area) is highly suspect. Experian cannot possibly assure Plaintiff or itself (or other Nampa-area "Jose Calderons" for that matter) that the mixture of information has been corrected definitively. As long as the information of any of these individuals remains linked to one or more of the others, each of them is at risk not only that the

---

[5] *See*, *e.g.*, *Campbell*, *supra* ("The Court order[s] Defendant Experian to perform a search to identify every place and PIN where [Plaintiff's] information is located in their database and provide it to the Plaintiff[.]").

[6] Plaintiff's counsel specifically alerted defense counsel during the parties' meet and confer that she was aware of other instances in which Experian had produced the same materials either by Court Order or by stipulation, but Defendant's counsel refused to consider producing them here, instead preferring to force Plaintiff to expend not only his own resources, but also those of the Court, on the instant motion.

combined information will cause damage but also that the continued link could result in the future and further mixing of additional information.

2. **Plaintiff's Credit Score**

Plaintiff has sought information from Experian about how his credit score is computed and, more specifically, how the inclusion of a public record civil judgment would have lowered that score. *See* Request for Production No. 4 ("Please produce all documents relating to the computation of Plaintiff's credit score(s)."). In response, Experian has claimed ignorance, *i.e.*, it purportedly does not know what Plaintiff is looking for because "the most frequently used credit scoring models are provided to users of consumer reports by the Fair Isaac Corporation, a third party entity that Experian has no control over." *See* Response to Request for Production No. 4 at 7. Plaintiff has reminded opposing counsel that Experian's website home page at www.experian.com prominently invites consumers to find out what their credit score is from Experian. *See* Exhibit 3 (Goldsmith Letter) at 2. Nevertheless, Experian advised it simply would not provide any documentation to Plaintiff about his credit score.

Plaintiff recognizes that there are numerous credit scoring models used by different lenders, and each such model is designed to weigh certain lender-specified variables more heavily than others. So Plaintiff has not requested Experian to generate anything other than what it regularly provides to other consumers who request their credit score from Experian. Specifically, Plaintiff requests his credit score from Experian based on what his credit file contained as of the date this lawsuit was filed, as well as today.[7] Clearly Experian is capable of providing such scores as it does so as a regular part of its business.

---

[7] Despite Plaintiff's fourteen (14) unsuccessful disputes to have Experian remove the false and highly derogatory public record judgment removed from his credit report, that information was deleted immediately following service of Plaintiff's Complaint.

8

In fact, as Plaintiff was filing the instant motion to compel, Experian served a supplement to its original discovery responses which included Plaintiff's current credit score. Therefore, Plaintiff simply asks that he be provided a similar score based on his credit file as of the day this lawsuit was filed.

3. **Matching Algorithm(s)**

The instant lawsuit stems from the fact that a public record civil judgment belonging to another "Jose Calderon" ended up – and remained despite multiple disputes – in Plaintiff's credit report. Plaintiff has requested documentation explaining how that happened, *i.e.*, how Experian determines what information being furnished by a third party is included in the credit file of a particular consumer. *See* Request for Production No. 9.[8]

In response, Experian does not suggest that such documents do not exist. Instead, Experian has withheld responsive documents based on objections largely rooted in the confidential nature of the information sought: "The Request seeks confidential, closely guarded information about the structure, design, and architecture of the database that is the heart of Experian's credit reporting system." *See* Response to Request for Production No. 9 at 10. Since a Stipulated Protective Order has been entered in this case, Experian's stated concerns in this

---

[8] Request for Production No. 9 reads in its entirety as follows:

Please produce any and all manuals, memoranda, records, reports or other written documentation containing, outlining or otherwise describing Defendant's policies, practices, standard, rules and/or procedures relating to the manner in which Experian determines which credit information, account data and/or personal identifying information shall be included in a particular credit file in the database of consumer information maintained by or for Experian. This request specifically includes, but is not limited to, any documents outlining the personal identifiers required or necessary to match credit information being supplied by a subscriber with a particular credit file maintained by or on behalf of Experian or within the Experian database, and any and all procedural and/or training materials specifically including without limitation Defendant's business rules relating to the subject selection procedure.

9

regard should be satisfied.[9] Nevertheless, Experian refuses to produce the critical information of how the subject judgment ended up in Plaintiff's credit file in the first place.

Experian has known about mixed files for as long as it has been in business. When Experian acquired TRW (an old credit reporting agency) in the 1990s, it also acquired a Consent Order previously issued against TRW specifically relating to mixed files. *See Federal Trade Commission v. TRW, Inc.*, 784 F.Supp 381 (N.D. Tex. 1991). The Consent Order, which is binding upon Experian, *Id.; Bentley v. Providian Fin. Corp.*, 2003 WL 22234700 at *5 (S.D. N.Y. April 21, 2003). Provides that TRW, now Experian, shall maintain reasonable procedures to "prevent the occurrence and or recurrence of Mixed Files." *Id.* This echoes the FCRA mandate that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

Here, Plaintiff claims Experian violated this mandate by allowing someone else's derogatory information into Plaintiff's credit file, in the face of a near-twenty year history of mixed file knowledge, and by refusing to delete the information despite more than a dozen disputes by Plaintiff telling Experian the judgment belonged to someone else. *See*, *e.g.*, Complaint at ¶ 46, ¶ 56. As Experian is certainly aware, Plaintiff would be greatly prejudiced with respect to proof of his claim in this regard if Plaintiff is never allowed to review the underlying procedure to determine its reasonableness based on Experian's knowledge and long-standing notice of mixed files. Experian has no legitimate basis to refuse to produce this information.

---

[9] Since none of Experian's competitors and, in fact, no other entities at all, are parties to the instant lawsuit, there is no reason why the Stipulated Protective Order already filed should not protect Experian's interests in the confidential information. However, if Experian believes that the existing Order is insufficient, the Court could enter an additional Order along the lines of an "Attorneys' Eyes Only" provision to satisfy Experian's concerns. Plaintiff's counsel and Experian have agreed to such orders in the past. *See Campbell*, *supra*.

### 4. Experian's Motivations

It can reasonably be assumed that it costs money for Experian to conduct reinvestigations, and the more money Experian spends on reinvestigations, the less money Experian makes. Plaintiff has requested information on how that reality effected Experian's adoption of certain policies and procedures regarding reinvestigations as well as the individual agents who handled Plaintiff's disputes.

For instance, one of the core allegations here is that it was patently unreasonable for Experian to refuse to investigate Plaintiff's subsequent disputes. As confirmed in the documents produced to date by Experian, Experian has a policy that it will not re-investigate a dispute that has already been "investigated," irrespective of the accuracy (or inaccuracy) of the results of that initial investigation. By determining that a subsequent dispute is a "duplicate," the agent need not spend any more time on the matter.[10]

Upon information and belief, Experian encourages its employees (either through bonuses and/or incentive pay or through disciplinary warnings and/or other action) to conduct reinvestigation as quickly as possible. Thus, Plaintiff has requested documentation to this effect. *See* Request for Production Nos. 13 and 14.[11] During the parties' meet and confer, Experian

---

[10] Plaintiff suspects Experian intends to argue that Plaintiff's subsequent disputes were "frivolous" or "irrelevant" because they related to the same false public record judgment that he previously disputed. However, Experian never once notified Plaintiff of a determination that his disputes were "frivolous" or "irrelevant" even though such notice is specifically mandated by the FCRA. *See* 15 U.S.C. § 1681*i*(a)(3)(B) ("Upon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination.").

[11] These two requests read in their entirety as follows:

Request for Production No. 13:
Please produce documentation of all programs under which Defendant's employees or agents who communicate with consumers or handle any aspect of consumer disputes are provided any bonus, pay, or other incentive."), and Request for Production No. 14 ("Please produce employment and salary records, or other compensation or payment schedule, of every person or entity who communicated with Plaintiff, worked on any aspect of Plaintiff's disputes, or altered any information in Plaintiff's Experian file within the timeframe listed above.

offered to provide salary and bonus information for certain categories of employee positions as is applicable to the various individuals who processed Plaintiff's disputes. Nonetheless, nothing has been produced. Experian has also refused to provide any disciplinary information for any such employees.

Similarly, Plaintiff has requested information relating to the costs associated with conducting reinvestigations, defending lawsuits where reinvestigations have filed to correct false information, and Experian's budgeting of resources accordingly. *See* Request for Production Nos. 15, 16 and 17.[12] In essence, Plaintiff is attempting to understand the reasoning and/or motivations for Experian's decisions with respect to the policies and procedures that are at play here. After feigning ignorance as to what information Plaintiff is seeking, defense counsel intimated that he would consider asking Experian "if" it had responsive budgetary information for the National Consumer Assistance Center (which handles consumer disputes in general) as well as for the Mixed File department. Ultimately, nothing has been produced.

To the extent Experian's desire to maximize its profits trumped its responsibility to assure the maximum possible accuracy of the information it reported about Plaintiff, or in any

---

(continued…)

Request for Production No. 14:
Please produce employment and salary records, or other compensation or payment schedule, of every person or entity who communicated with Plaintiff, worked on any aspect of Plaintiff's disputes, or altered any information in Plaintiff's Experian file within the timeframe listed above.

[12] These three requests read in their entirety as follows:

Request for Production No. 15:
Please produce all cost/benefit analyses regarding expenditures necessary for compliance with 15 U.S.C. § 1681i or the reinvestigation of disputed credit information.

Request for Production No. 16:
Please produce all cost/benefit analysis regarding expenditures necessary for cost of defending cases of disputed credit information versus compliance with 15 U.S.C. § 1681i or the reinvestigation of disputed credit information.

Request for Production No. 17:
Please produce all budgets or projections prepared within the preceding five years, allocating resources or expenditures to the conducting of reinvestigations under 15 U.S.C. § 1681i.

way impacted the manner in which Plaintiff's disputes were handled, that information is relevant and critical to establishing whether Experian's conduct in this case was willful or negligent. Plaintiff would be prejudiced by allowing Experian to continue to hide this discovery.[13]

   **5. <u>Notice of Mixed Files</u>**

Plaintiff contends that the credit reporting errors in his case were in negligent and willful violation of 15 U.S.C § 1681*e*(b) and § 1681*i*. In proving negligence or willfulness, Plaintiff is entitled to know what Experian knew about mixed files and when it knew it. If Experian had never before encountered a mixed file, the standard of care for reasonable procedures to avoid such a mix in the first place or for correcting such a mix upon a consumer dispute would be one thing. The standard of care would be entirely different if Experian had ample knowledge of this type of error and the tools to correct it, but recklessly failed to do so as Plaintiff alleges.

Therefore, Plaintiff seeks information about Experian's knowledge and level of notice of mixed files and of reinvestigation deficiencies regarding same. *See* Request for Production Nos. 20 and 21.[14] Experian has flatly refused to produce *any* information on these topics claiming that the Requests are overly broad, unduly burdensome, and irrelevant. However, evidence of prior complaints for the same type of credit reporting problems at issue here is particularly relevant to the question of willfulness under 15 U.S.C. § 1681*n* as well as to

---

[13] Experian's supplementation of its original discovery responses included additional information about Request for Production No. 14, specifically the names and titles of the various individuals who processed Plaintiff's disputes. No documentation was produced.

[14] These two requests read in their entirety as follows:

<u>Request for Production No. 20</u>:
Please produce documents showing claims or actions against Defendant for violations of 15 U.S.C. § 1681i of the FCRA brought by any individual, entity, agency or governmental body from 1999 to present.

<u>Request for Production No. 21</u>:
Please produce documents showing claims or actions against Defendant for violations of the FCRA brought by any individual, entity, agency or governmental body at any time which specifically relate to mixed files.

13

the question of notice for simple negligence under 15 U.S.C. § 1681*o*.  *See Grizzard v. Sallie Mae*, Civ No. 3:04-cv-625 (E.D. Va. Jan. 31, 2005) at Docket No. 83 (ordering production of prior FCRA consumer complaints and testimony of defense witnesses in analogous case).

As one court noted, the fact that a consumer reporting agency is a "repeat FCRA violator" is particularly important in determining liability: "because [Defendant] has continued to disregard its obligations despite clear judicial rulings and warnings, its conduct is more reprehensible than that of a first time offender, requiring more severe punishment[.]"  *See Dixon-Rollins v. Trans Union*, LLC, 2010 WL 3749454, at *10 & n.7, 12 (E.D. Pa. Sept. 23, 2010). Thus courts have compelled defendants in similar FCRA cases to produce evidence of prior complaints and actions.  *See*, *e.g.*, *Syed M. Monnan v. Trans Union, LLC*, Civil Action No. 10-2218, (E.D. Pa. December 28, 2010) at Document 22.

Experian also objects arguing that the Requests call for the production of publicly available documents.  But, as Plaintiff has pointed out to opposing counsel, Experian (and/or its national counsel, Jones Day) necessarily keeps track of the instances in which Experian has been sued for 15 U.S.C. § 1681*i* and § 1681*e*(b) violations, and has produced similar information in other cases.  For example, in *Howley*, *supra*, Experian initially objected to a providing information on the number of mixed file cases Experian defended on an annual basis, but then *voluntarily* supplemented its answer with the responsive information (albeit limited to a five-year period of time).  Experian's responses in this regard were utilized as the basis for a plaintiff's successful motion to compel similar information from Trans Union, LLC.  *See Monnan*, *supra*, Civil Action No. 10-2218, (E.D. Pa. December 28, 2010) at Exhibit J.

## CONCLUSION

Plaintiff will suffer hardship and prejudice as a result of Experian's failure to provide him with pertinent and relevant discovery requested by Plaintiff. Plaintiff has attempted in good faith to resolve this discovery dispute to no avail. Based on the foregoing, Plaintiff respectfully asks this Court to enter the accompanying Order compelling Experian to produce all documents responsive to Requests for Production Nos. 1 – 4, 9, 13 – 17, 20 and 21, as described above, within ten (10) days of the date of this Order.

Respectfully submitted,

 /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio  44116
Telephone:  (440) 934-3025
Facsimile:  (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing **Plaintiff's Motion to Compel Production of Documents** was served on the 8th day of March, 2012, by the means indicated below, on the following counsel of record:

*By Electronic Mail Delivery*:

Jason E. Prince, Esq.
STOEL RIVES LLP
101 S. Capitol Blvd.
Boise, ID 83702
Tel.: (208) 387-4288
Fax: (208) 380-9040

Eric J. Hardeman, Esq. (CA Bar No. 253489) (*Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
ejhardeman@jonesday.com

                                         /s/ Sylvia A. Goldsmith
                                         Sylvia A. Goldsmith  (*Pro Hac Vice*)
                                         LAW OFFICE OF SYLVIA A. GOLDSMITH
                                         Attorney for Plaintiff