UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE LUIS CALDERON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　　Defendant. | Case No. 1:11-cv-00386-EJL-MHW<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL** |

　　　　Pending before the Court is Plaintiff's Motion to Compel Production of Documents (Dkt. 15). On November 22, 2011, this case was referred to the undersigned United States Magistrate Judge for all non-dispositive matters, pursuant to 28 U.S.C.A. § 636(b)(1)(A). (Scheduling Order, p. 2, Dkt. 12). Having reviewed the briefing and affidavits submitted by the parties (see Dkt. 15, 16, & 17), and having entertained oral argument on June 6, 2012, the Court hereby makes the following ruling.

## BACKGROUND

　　　　This case involves claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 et seq., which Plaintiff Jose Luis Calderon has brought against Experian Information Solutions, Inc. (hereafter "Experian"). Essentially, Mr. Calderon claims that Experian wrongfully identified certain negative credit information associated with another

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 1**

individual, also named "Jose Calderon," as belonging to him.[1]  Mr. Calderon further alleges that his attempts to get Experian to remove the negative information from his file were unsuccessful, and that as a result of the false information that remained on his credit report, he was ultimately denied a mortgage loan in November of 2009.

The parties view this case through very different lenses, with the primary source of disagreement being the extent to which this case is properly considered as involving what is known in the credit reporting industry as a "mixed file."  Experian does agree that some negative credit information not belonging to Plaintiff did become ascribed to his account.  However, it asserts that this error was the result of a simple father/son mixture, not a full-blown "mixed file," because there is no indication that the credit information of other, unknown, individuals has become associated with Plaintiff's file.  Plaintiff, on the other hand, asserts that a "mixed file," is properly defined as any situation in which information belonging to someone else appears in a consumer's credit file.  Though it is not something the Court must resolve at this time, the parties' differences on this issue help explain their divergent views on the proper scope of discovery.

Since the briefing was filed in this matter, the parties' respective attorneys appear to have developed a much more productive relationship and were able to reach agreements on a number of matters without the assistance of the Court. Therefore, the issues upon which

---

[1]While not critical to the present discovery dispute, the negative credit information concerned a public record judgment in a lawsuit that had been filed in Canyon County, Idaho and an outstanding collection account held by NCO Financial.  (Complaint, ¶ 17, Dkt. 1).

**ORDER ON PLAINTIFF'S  MOTION TO COMPEL,  Page 2**

the parties ultimately required assistance had evolved considerably by the time of the hearing. The following discussion encapsulates the resolutions that were reached about these issues and will constitute the Court's order on this matter.

## DISCUSSION

### A. Credit Files of Other Consumers

Because he believes that this is a "mixed file" case and wishes to know the extent to which his information is still mixed with that of other individuals, Plaintiff has requested the credit files of other individuals by the name of "Jose Calderon." As indicated, Experian maintains that the case does not involve a "mixed file" and that the only error that occurred was the assignment of some information belonging to Plaintiff's father, Jose C. Calderon, to Plaintiff. Though Plaintiff disputes this,[2] he has agreed for the time being to accept only the disclosure of his father's file. His counsel also represented that his father, Jose C. Calderon, has agreed to waive any objections he might have to the disclosure of the file.

The Court will therefore order Experian to produce the father's file. This disclosure is to include any Administrative Reports, D/R Logs, Disclosure Logs, and the results of Social Security Number searches maintained or capable of being produced for Plaintiff's Father, Jose C. Calderon. If a review of this information does not clarify matters for Plaintiff, or if it still appears that another individual may be involved, Plaintiff may submit a request that the credit files for other individuals be produced. All disclosures of this type

---

[2] Specifically, Plaintiff believes that a "Jose Zuniga Calderon" lives in the Nampa, Idaho area and that this individual's credit information may have become associated with his (Plaintiff's) file.

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 3**

will be subject to the strictures of the Protective Order. (Dkt. 14).

The Court will defer ruling on the issue of whether Experian's matching algorithms must be produced, based upon Plaintiff's counsel's representation that she could forgo production of that information until it is determined whether the mixture that occurred was limited to a father/son mixture, as Experian believes is the case.

### B.  Relationship Between Experian Information Services, Inc., and its Chilean Sister Corporation.

As the case developed, the parties learned that the key personnel who handled Plaintiff's file are employees of a Chilean entity, Experian Services Chile, S.A., which is a sister corporation of the Defendant, Experian Information Solutions, Inc.  Based on counsel's representations that the Chilean entity is Defendant's sister corporation, the Court finds that the relationship between the two entities is sufficiently close to treat them as the same for purposes of the present discovery disputes.  Plaintiff is entitled to discover information about how his disputes were handled and why certain decisions were made with regard to his file, whether or not the work was conducted by employees of a Chilean or an American corporation.

The parties represented that they are currently conducting written discovery that will address the specifics of the relationship between the Defendant and its Chilean sister entity, as well as between these two entities and their parent corporation.  Though the specific requests themselves have not been placed into the record, based on the discussion between counsel, the materials sought included the relevant contracts between the American and

**ORDER ON PLAINTIFF'S  MOTION TO COMPEL,  Page 4**

Chilean entities, and/or between these two entities and their parent corporation. Plaintiff's counsel also indicated that she was seeking training materials that would have applied to employees handling Plaintiff's disputes, whether in Chile or not. Experian's counsel represented that it was willing and able to produce these materials.

Given the time constraints for discovery imposed by the Amended Scheduling Order, (Dkt. 21), and the two-step process for depositions contemplated herein, the Court will order Experian to provide the requested materials to Plaintiff no later than Friday, June 22, 2012.

**C.  Depositions of Chilean Individuals versus Individuals in the United States.**

At the hearing, the parties also discussed the necessity of deposing several Chilean individuals who handled Plaintiff's disputes. Plaintiff represented that at least three depositions were critical and that the guidance of the Court would probably be necessary at some point, while Experian claimed that Court involvement on that matter was premature since no deposition notices had yet been issued.

Considering the difficulty and expense that depositions of foreign nationals would entail, the Court will order that Plaintiff first conduct a deposition of an Experian employee in the United States before deposing individuals in Chile. At the deposition of the American individual, the Plaintiff can inquire, among other things, about the relationship between the two corporations, the handling of Plaintiff's complaints, and the circumstances under which Experian Information Services, Inc. chooses to send consumer complaints to Chile. This deposition may be conducted pursuant to either Rule 30(b)(1) or 30(b)(6) of the Federal Rules of Civil Procedure. After this deposition is completed, Plaintiff may conduct

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 5**

additional discovery, to the extent that such is needed, regarding the handling of his file in Chile. This additional discovery can consist of additional Requests for Production, deposition of the relevant Chilean employees, or both.

**D.     Experian's "Motivations" (Requests for Production 13 through 17).**

The next area about which Plaintiff sought information concerned what Plaintiff loosely calls Experian's "motivations" for minimizing the cost of conducting investigations and reinvestigations of consumer complaints.[3] To that end, Plaintiff has sought to compel Experian to produce information on the cost of conducting reinvestigations, (See RFP 15, Dkt. 15-3), incentive programs that might directly or indirectly reward efficiency over accuracy (RFP 13), cost-benefit analyses concerning the costs of conducting reinvestigations and the costs of complying with FCRA (RFP 15 and 16), and budgets or projections allocating resources to reinvestigation activities (RFP 17). Plaintiff has also sought to compel Experian to produce the employment and salary records of those individuals who worked on any aspect of his disputes. (RFP 14).

With respect to RFPs 14 and 17 the Court considers the requested information (salary and employment records and budgetary projections for the cost of reinvestigations) sufficiently sensitive that it will not order the production of the materials at this time. Plaintiff may renew his request at a later time, if further discovery suggests these materials are in fact needed. This order also does not preclude Plaintiff from inquiring of Chilean

---

[3]As the parties use the term, a "reinvestigation" is simply an investigation that occurs after Experian has already received one complaint from a consumer, and denied it.

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 6**

employees at deposition as to their employment history, salary history, and disciplinary history. In addition, while the Court is not ordering Experian to produce specific budgetary numbers at this time, this order does not preclude general inquiry at deposition as to how Experian's budget works and how costs for various tasks are allocated and projected.

With respect to Requests 13, 15, and 16, (cost benefit analyses and incentive programs) Experian has stated, either through the representations of its counsel at oral argument or through the Declaration of Kathy Centanni, that it does not have such information. However, since the knowledge of both counsel and Ms. Centanni may be limited to what documents are in the possession of the American entity, the Court will order the Defendant to conduct another records search, this time focused on the Chilean entity, and direct it to provide any responsive documents.

### D. Prior Lawsuits on Mixed Files and Number of Fixed File Claims Handled by Experian Internally.

The final subject of discussion at the hearing concerned Plaintiff's requests for information on prior lawsuits and the number of mixed file claims handled internally by Experian. Based on the discussion that occurred between the parties and the Court about what information it would be possible for Experian to provide, the Court will order Experian to provide Plaintiff with a list of prior lawsuits, to include the case name, date of filing, jurisdiction, and case number, for the last five years. This disclosure, however, will be subject to certain limitations. Specifically, it need only include cases which were handled by Jones Day (Experian's primary outside counsel), and it need only cover those cases in

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 7**

which the complaint contains an allegation that a mixed file was involved. This is similar to a production that, according to the parties' representations, Experian recently prepared in another federal case, *Howley v. Experian Information Solutions, Inc.,* No. 09-241 (D.N.J. filed January 16, 2009).

Finally, the Court will order Experian to provide Plaintiff with the number of mixed file disputes it has handled over the last five years. Based on the representations of Experian's counsel as to what it will be feasible to provide, this production will be limited to the number of times Experian was contacted by a consumer, and, as a response, added a "do not combine" notation to the file, thus flagging the matter as a "mixed file."

## ORDER

1. Plaintiffs Motion to Compel (Dkt. 15) is **GRANTED** in part, consistent with the discussion herein.

2. Experian is directed to provide Plaintiff with any responsive documents, consistent with the discussion above, on or before June 22, 2012.

3. With regard to depositions, the parties are directed to conduct a 30(b)(1) or 30(b)(6) deposition of an Experian employee in the United States before taking the depositions of Chilean citizens.

4. If the parties require assistance with any matter that may develop with respect to this Order, they may contact the Court for a telephonic conference, after meeting and conferring with one another as required by Rule 37.

5. All productions pursuant to this Order will be subject to the strictures of the

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 8**

Protective Order previously entered by the Court.



DATED: June 18, 2012.

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER ON PLAINTIFF'S MOTION TO COMPEL, Page 9**