## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **JOSE LUIS CALDERON**, | ) | |
| | ) | CASE NO.: 1:11-CV-00386-EJL |
| Plaintiff, | ) | |
| | ) | JUDGE LODGE |
| v. | ) | |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED NOTICE OF RULE 30(b)(6) VIDEO DEPOSITION DIRECTED TO EXPERIAN INFORMATION SOLUTIONS, INC.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff, Jose Luis Calderon, requests to take the deposition of Experian Information Solutions, Inc. ("Experian"). The designated person(s) duly authorized on behalf of Experian shall testify under oath as to matters including those specifically identified below in Subjects of Examination. Said deposition shall be held on the 19th day of July 2012, at the offices of Earl & Earl. 212 Tenth Avenue South, Nampa, ID 83651, commencing at 9:00 a.m. (MST) and continuing until completed.

## DEFINITIONS

A. "Document" means anything which may be considered to be a document or tangible thing within the contemplation of the Federal Rules of Civil Procedure, and includes, without limitation, any written, printed, typewritten, handwritten, recorded or other graphic matter or computer generated or stored information, whether produced in hard copy or other tangible medium or presently stored within the memory of a computer or other storage device, such as tapes, hard or

floppy disks, CDs, or mag cards, now or at any time in your possession, custody, or control; and,

includes generally and without limiting the generality of the foregoing definitions, any

correspondence, letters, telegrams, telexes, cables, transcripts, agreements, contracts, notes,

memoranda, jottings, projections, reports, opinions, workpapers, diaries, daybooks, notebooks,

calendars, address and telephone records, expense records and vouchers, time records, personnel

records, minutes, summaries of any communications, reports or summaries or investigations, books of

account, journals, ledgers, journal entries, accounting books and records, spread sheets, microfiche

cards, microfilms, photographs, films, appraisals, surveys, financial statements, financial forecasts,

computer programs, computer printouts, manuals, guides, books, magazines, newspapers, publications,

and all preliminary versions and drafts, revisions of, or notations on any of the foregoing, including

all non-identical copies and drafts of any of the foregoing, and all summaries, analyses, or reports

relating or referring in whole or in part to any of the foregoing.

B.      "All documents" means every document and every non-identical copy known to

Defendant and every such document or writing which Defendant can locate or discover by reasonably

diligent efforts.

C.      The "Canyon-Caldwell public record item" means the judgment which appears to have

been taken by Portfolio Recovery Associates in or around May 2006 against an individual named

"Jose Calderon."

D.      "FCRA" means the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seg.*

E.      "Mixed file" means a consumer report in which some or all of the information

contained therein belongs to a person or persons other than the individual who is the subject of the

consumer report.

F.      "Person" includes natural persons and all other legal entities.

G.      "Personal identifying information" or "personal identifiers" as used herein shall mean the name, address, date of birth, Social Security number, or any other information intended to refer to or identify Plaintiff within a consumer report, consumer disclosure or file maintained or issued by Defendant.

H.      "Plaintiff" as used herein means Jose Luis Calderon.

I.       "Experian," "you" or "your" refers to Defendant, Experian Information Solutions, Inc., and/or any related or affiliated entity or subsidiary.

J.       "Subscriber" as used herein shall refer to any entity that furnishes consumer credit information, account data and/or personal identifying information to Experian and is allowed to access consumer credit information, account data and/or personal identifying information from Experian.

K.      Unless otherwise specifically stated in any Subject of Examination below, the timeframe for each shall be from January 1, 2008, to present.

L.      The terms "identify," identity," or "identification," shall have the following meanings:
   (a)   when used in reference to an individual natural person shall mean to state the name, the present or last known business and resident addresses, the current business affiliation and position, and the position during the time specified of said individual;
   (b)   when used in reference to any other entity included within the definition of "person," above, shall mean to state the current or last names, if any, the present or last known business address, the nature of the business, and the identity of the chief executive officers) and/or general manager(s) throughout the specified time period, of said entity:
   (c)   when used in reference to a document shall mean to state the following:

         (i)    the date of its preparation;
         (ii) the identity of its author and of any individual involved in its preparation and/or its production;
         (iii) what type of document it is (e.g., letter, chart, memorandum, etc.) or some other designation by which to identify it:
         (iv)   its contents;

(v)      its present custodian or its location; and

(vi) the identification of all persons for whom it was prepared, or who received copies of it, re-surveys, graphs, charts, photographs, phonographs, films, tapes, discs, drums, printouts, and all other data whether recorded by electronic or any other means. If a document was prepared in several copies or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of any of the pages thereof, then each such non-identical copy is a separate document and must be identified.

## SUBJECTS OF EXAMINATION

### [Credit Files]

1.      Please identify, authenticate, describe and explain with specificity any and all Administrative Reports, D/R Logs, Disclosure Logs, SSP searches, credit scores, or other information on Plaintiff generated, maintained and/or stored by you.

2.      Please identify, authenticate, describe and explain with specificity any and all Administrative Reports, D/R Logs, Disclosure Logs, SSP searches, or other information on Jose C. Calderon maintained and/or stored by you.

3.      Please identify, authenticate, describe and explain with specificity any and all codes, keys or other documentation that would describe how to read, interpret or otherwise explain any of the terms, shorthand, abbreviations or any other information provided in or on any of the documents produced by Experian in this litigation.

### [NCAC in Santiago, Chile]

4.      Please identify, authenticate, describe and explain with specificity any contract(s), agreement(s), or other written understanding(s) by and between any Experian entities that controls, governs, describes or outlines any facet of the operation of the NCAC in Santiago, Chile.  This Subject specifically includes, but is not limited to, any and all information

4

surrounding the negotiation of, specific terms, and the actual costs referred to in the Experian

Intracompany Services Agreement produced in this litigation, Bates No. EXP/CALDERON

001312.

5.	Please identify, authenticate, describe and explain with specificity any cost or

payment arrangement(s) by and between any Experian entities for reinvestigations done by the

NCAC in Santiago, Chile, for Defendant.  This Subject specifically seeks, but is not limited to,

information about how the NCAC in Santiago, Chile, is directly or indirectly compensated for

reinvestigations it performs on Defendant's behalf, and/or how the costs of conducting such

reinvestigations are paid, and by whom.

6.	Please identify, authenticate, describe and explain with specificity the process

through which it was decided by and between any Experian entities, including any cost benefit

analysis, to open a second NCAC.  Without limiting this Subject in any way and to the extent

you considered alternate locations for such NCAC, this Subject seeks information about the

process through which it was decided that the second NACA would be located in Santiago,

Chile.

7.	Please identify, authenticate, describe and explain with specificity the process by

which a consumer dispute addressed to Experian in Allen, Texas is handled, processed and/or

reinvestigated by an agent(s) in the NCAC in Santiago, Chile.  Without limiting this Subject in

any way, this Subject seeks information about how it is determined to have a certain dispute

handled, processed and/or reinvestigated by an agent(s) in the NCAC in Santiago, Chile, and the

physical process through which that dispute is both sent (from the NCAC in Allen, Texas) and

received (by the NCAC in Santiago, Chile).

8.      Please identify, authenticate, describe and explain with specificity any and all efforts made by Defendant to audit, monitor or otherwise conduct quality control of the reinvestigations conducted on its behalf by agents in the NCAC in Santiago, Chile.

### [Policies and Procedures]

9.      Please identify, authenticate, describe and explain with specificity Defendant's policies, practices, training, standards, rules, and/or procedures for any department or center that handles non-fraud related consumer contacts, requests and/or disputes.  Without limiting this Subject in any way, and to the extent there is a difference in such policies, procedures, training standards, rules and/or procedures with respect to employees located in Allen, Texas, and agents who work in the NCAC in Santiago, Chile, this Subject specifically seeks information about those differences.

10.     Please identify, authenticate, describe and explain with specificity what training and supervision Defendant's employees and/or agents receive as to compliance with the FCRA, including 15 U.S.C. § 1681i.  Without limiting this Subject in any way, and to the extent there is a difference in such training and supervision with respect to employees located in Allen, Texas, and agents who work in the NCAC in Santiago, Chile, this Subject specifically seeks information about those differences.

11.     Please identify, authenticate, describe and explain with specificity what training and supervision Defendant's employees and/or agents receive as to compliance with Experian's policies and procedures regarding reinvestigation of disputed information.  Without limiting this Subject in any way, and to the extent there is a difference in such training and supervision with respect to employees located in Allen, Texas, and those who work in the NCAC in Santiago, Chile, this

Subject specifically seeks information about those differences.

12.     Please identify, authenticate, describe and explain with specificity what training and supervision Defendant's employees and/or agents receive as to compliance with Experian's policies and procedures on handling, processing or reinvestigating what Experian calls a "duplicate dispute." Without limiting this Subject in any way, and to the extent there is a difference in such training and supervision with respect to employees located in Allen, Texas, and those who work in the NCAC in Santiago, Chile, this Subject specifically seeks information about those differences.

13.     Please identify, authenticate, describe and explain with specificity what training and supervision Defendant's employees and/or agents receive as to compliance with Experian's policies and procedures regarding mixed files, and how it is determined which employees and/or agents get what training and supervision with respect to mixed files. Without limiting this Subject in any way, and to the extent there is a difference in such training and supervision with respect to employees located in Allen, Texas, and those who work in the NCAC in Santiago, Chile, this Subject specifically seeks information about those differences.

14.     Please identify, authenticate, describe and explain with specificity any and all programs Experian has under which Defendant's employees or agents who communicate with consumers or handle any aspect of consumer disputes are provided any bonus, pay, or other incentive. Without limiting this Subject in any way, and to the extent there is a difference in such program, if any, with respect to employees located in Allen, Texas, and those who work in the NCAC in Santiago, Chile, this Subject specifically seeks information about those differences.

**[Specific Reinvestigations Relating to Plaintiff's Credit File]**

15.     Please identify, authenticate, describe and explain with specificity all communications between Plaintiff and Experian.  Without limiting this Subject in any way, and to the extent some communications may have been generated from the NCAC in Santiago, Chile, this Subject specifically seeks information about those communications as well.

16.     Please identify, authenticate, describe and explain with specificity all information that relates to Plaintiff or any reinvestigation regarding any account or record related to Plaintiff or for which Plaintiff lodged a dispute.  Without limiting this Subject in any way, and to the extent some information may have been generated from or otherwise maintained in the NCAC in Santiago, Chile, this Subject specifically seeks information about that information as well.

17.     Please identify, authenticate, describe and explain with specificity any and all information utilized, considered or otherwise accessed by or for Experian relating to Plaintiff, Plaintiffs file or any reinvestigation of any information contained in Plaintiffs file.  Without limiting this Subject in any way, and to the extent some information may have been generated from or otherwise maintained in the NCAC in Santiago, Chile, this Subject specifically seeks information about that information as well.

18.     Please identify, authenticate, describe and explain with specificity all communications between Defendant (or any individual or entity acting on Defendant's behalf) and any entity at any time specifically relating to the Canyon Caldwell public record item.

19.     Please identify, authenticate, describe and explain with specificity all communications between Defendant (or any individual or entity acting on Defendant's behalf) and any entity at any time specifically relating to any NCO tradeline(s) that appears in Plaintiff's credit file.

8

**[Mixed Files]**

20.     Please identify, authenticate, describe and explain with specificity Experian's definition and/or understanding of what a mixed file is specifically including, but not limited to, the different types of mixed files that can exist.

21.     Please identify, authenticate, describe and explain with specificity how Experian identifies or "confirms" the existence or appearance of a mixed file within its database.  To the extent how Experian identifies or "confirms" a mixed file depends on the type of mixed file involved, this Subject specifically seeks information about any and all variances involved.

22.     Please identify, authenticate, describe and explain with specificity how Experian corrects a mixed file.  To the extent how Experian corrects a mixed file depends on the type of mixed file involved, this Subject specifically seeks information about any and all variances involved.

23.     Please identify, authenticate, describe and explain with specificity any and all methods by which Experian makes sure that a file it has confirmed is a mixed file does not become mixed again at some point in the future.  To the extent the method by which Experian makes sure a corrected mixed file does not become mixed again in the future depends on the type of mixed file involved, this Subject specifically seeks information about any and all variances involved.

24.      Please identify, authenticate, describe and explain with specificity to what extent Experian monitors or tracks the number of disputes or legal complaints it receives relating to or alleging the existence of a mixed file.

25.     To the extent Experian has adopted any particular policy(ies) and/or procedure(s) in

9

an effort to comply with the measures TRW agreed to undertake in the Consent Order dated December 10, 1991, Case No. 3-91cv2661-H District of Texas, that are currently in place or that have been in place at any point in the previous five (5) years, please identify, authenticate, describe and explain with specificity any such policy(ies) and/or procedure(s).

**[Other]**

26.      Please identify, authenticate, describe and explain with specificity to what extent Experian (or any related or unrelated entity] engages in a cost/benefit analyses regarding expenditures necessary for Experian's compliance with 15 U.S.C. § 1681$i$ or the reinvestigation of disputed credit information.

27.      Please identify, authenticate, describe and explain with specificity to what extent Experian (or any related or unrelated entity] engages in a cost/benefit analysis regarding expenditures necessary for cost of defending cases of disputed credit information versus compliance with 15 U.S.C. § 1681$i$ or the reinvestigation of disputed credit information.

28.      Please identify, authenticate, describe and explain with specificity what studies Experian has sanctioned and/or participated in, whether formal or informal, on the accuracy of information in Experian's consumer reports or consumer reports generally.

29.      Please identify, authenticate, describe and explain with specificity any legal interpretations on which Experian intends to rely as a defense to any claim in the instant case. For each such interpretation(s), please identify, authenticate, describe and explain with specificity how it was determined that such interpretation would be relied upon here.

Dated this 2nd day of July 2012.

         /s/ Sylvia A. Goldsmith

Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio  44116
Telephone:  (440) 934-3025
Facsimile:  (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff