Jason E. Prince, Esq.
STOEL RIVES LLP
101 S. Capitol Blvd.
Boise, ID 83702
Tel.: (208) 387-4288
Fax: (208) 380-9040

Daniel J. McLoon *(pro hac vice)*
djmcloon@jonesday.com
Angela M. Taylor *(pro hac vice)*
angelataylor@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:     (949) 851-3939
Facsimile:     (949) 553-7539

*ATTORNEYS FOR DEFENDANT*
*EXPERIAN INFORMATION SOLUTIONS, INC.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| Jose Luis Calderon,<br><br>        Plaintiff,<br><br>   v.<br><br>Experian Information Solutions, Inc.<br><br>        Defendant. | **Case No: 1:11-cv-00386-EJL**<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO COMPEL** |

Defendant Experian Information Solutions, Inc. ("Experian") submits the following in opposition to Plaintiff's Second Motion to Compel ("Motion").

## I.     INTRODUCTION

This is a credit reporting case, brought by Plaintiff Jose Luis Calderon ("Plaintiff") against Experian under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* Plaintiff alleges that Experian inaccurately reported a public record judgment with Canyon County Magistrate Court ("Canyon County judgment") and a collection account with NCO Financial on his Experian credit file.  There are two specific claims at issue in this case:

(1) whether Experian has reasonable procedures to assure maximum possible accuracy, and (2) whether Experian conducted reasonable reinvestigations of the disputes made by a credit repair organization on Plaintiff's behalf. Experian has produced all information requested which is relevant to these two issues.

Contrary to the allegations contained within Plaintiff's Motion, Experian has at all times acted in good faith in responding to Plaintiff's discovery requests. To date, Experian has produced more than 1,300 pages of documents, including, but not limited to the following:

- Experian's **entire** consumer file for Plaintiff.
- Experian's **entire** consumer file for Plaintiff's father, Jose C. Calderon.
- All documents related to the disputes made on Plaintiff's behalf.
- All internal records reflecting the actions that the agents in Experian's National Consumer Assistance Center located in Santiago, Chile took in response to Plaintiff's disputes.
- Multiple training manuals used by agents located in both Allen, Texas and Santiago, Chile.
- The testimony of two 30(b)(6) witnesses.
- The Intracompany Service Agreement between Experian Information Solutions, Inc. ("EIS") and Experian Services Chile, S.A. ("ESC") which is the only document that details the relationship between the two sister corporations.

Declaration of Angela Taylor (Taylor Decl."), ¶ 2.

Plaintiff also falsely claims that Experian has "robotically refuse[d] to produce any meaningful information" about the National Consumer Assistance Center ("NCAC") located in Santiago, Chile. (Motion at 2). However, through written discovery responses, document production and deposition testimony, Experian has explained that the Santiago NCAC operates according to the exact same policies and procedures as the Allen NCAC. Both NCAC locations use the same training materials, provide the same training programs to the agents, and require that the agents adhere to the same procedures for handling disputes made by consumers.

- 2 -

Plaintiff's accusation that Experian is attempting to cover up information relating to the NCAC in Santiago, Chile is without merit. At no point has Experian made an "effort to conceal NCAC-Chile" in its responses. Throughout the discovery process, Experian has provided substantial and comprehensive responses relating to Plaintiff's claims, regardless of whether the reinvestigations were completed in Santiago, Chile or Allen, Texas. Experian has also produced the Intracompany Services Agreement between EIS and ESC which is the only document that details the relationship between the two sister corporations. There is nothing further to compel.

In a continuing campaign to harass and unduly burden Experian, Plaintiff seeks to force Experian to produce three individual dispute agents located in Santiago, Chile for depositions on American soil. However, Plaintiff's attempts to notice the depositions on American soil, and bypass the use of the mandatory letters rogatory process, runs afoul of both Chilean and United States Law. As explained in the Declaration of Raúl Montero López, a Chilean attorney and Professor of Procedural Law at the University of Chile, the letters rogatory process constitutes the **only** method for U.S. litigants to take witness depositions in compliance with Chilean law.

Finally, Plaintiff seeks to compel the deposition testimony of four high-level executives on the irrelevant subject of "how it was decided by Experian to open a second NCAC." (Motion at 17). However, because the Experian executives do not have unique or particular knowledge relevant to the two distinct claims at issue in this case, and because Plaintiff is using these depositions as a vehicle to harass Experian, the Court should deny Plaintiff's attempt to compel such testimony.

## II. PLAINTIFF'S ATTEMPT TO NOTICE THE DEPOSITIONS OF INDIVIDUAL DISPUTE AGENTS LOCATED IN SANTIAGO, CHILE IS IMPROPER AND MUST BE DENIED.

Without any analysis, Plaintiff contends that Experian is required to produce individual dispute agents—foreign nationals residing in Chile and employees of non-party Experian Services Chile, S.A—who processed his reinvestigation requests. As discussed below, Plaintiff's attempt to notice these depositions on American soil and bypass the use of the mandatory letters

rogatory process runs afoul of both Chilean and United States law and offends principles of international comity.

Plaintiff's request to depose the individual dispute agents is built upon a foundation of unsupported legal conclusions and mischaracterizations of the parties' meet and confer efforts.

**First**, Plaintiff's assertion that Experian has "flatly refused" to produce the individual dispute agents in violation of the Court's Order of June 18, 2012 is disingenuous and misleading. The Court's Order provided that Plaintiff may conduct the "deposition of the relevant Chilean employees" after the completion of a 30(b)(6) deposition of an Experian employee in the United States. *See* Order on Plaintiff's Motion to Compel, Dkt. No. 25 ("Order"). To that end, Experian repeatedly has informed Plaintiff that he may take the depositions of individual dispute agents located in Chile, so long as he complies with Chilean law in compelling those depositions. *See* Letter from A. Taylor to S. Goldsmith, dated July 31, 2012 ("[I]f Plaintiff still wishes to conduct the depositions of the individuals located in Chile, Plaintiff may do so"); Letter from A. Taylor to S. Goldsmith, dated August 8, 2012 ("[I]f Plaintiff still wishes to depose the employees of ESC, he may do so").

Plaintiff is attempting to manufacture a dispute as to whether he is entitled to take such depositions where none exists. Rather, this dispute turns on the manner in which such depositions may be conducted, which was not addressed in the Court's Order.

**Second**, Plaintiff relies on the fundamentally mistaken premise that he may notice the depositions of employees of a non-party without the need to issue a subpoena or follow international protocols. Plaintiff's failure to offer any authority in support of this proposition is hardly surprising. It is black-letter law that "[o]nly a **party to a litigation** may be compelled to give testimony pursuant to a notice of deposition." *U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994) (emphasis added). In other words, "[a] deposition subpoena is necessary to assure attendance of a nonparty witness." 1 Schwarzer & Tashima, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions* (The Rutter Group 2012), § 11:1450; *see also* Fed. R. Civ. P. 45. Moreover, a party seeking to depose "a

- 4 -

resident of a foreign country who is not a party to the local action (or officer, director, managing agent or employee of an *entity* party) … must proceed under the laws and procedures of the foreign country." *Id.* at § 11:1283 (emphasis added); *see also* Fed. R. Civ. P. 28(b).

Plaintiff's attempt to evade these jurisdictional limitations on the right to compel deposition testimony of foreign nationals necessarily fails.  Experian Services Chile, S.A. is a separate legal entity from Experian Information Solutions, Inc., such that the individual dispute agents are employed by a corporate affiliate that is not a party to this action and have not subjected themselves to the jurisdiction of the United States courts.  It is undisputed that the individual dispute agents have not been served with a deposition subpoena.  Indeed, the dispute agents are outside the subpoena power of the federal courts, as they are non-citizens living in Chile.  *See Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009) ("[C]ourts … have found that foreign nationals living abroad are not subject to subpoena service outside the United States.") citing *United States v. Taveras*, 2006 WL 1875339, at *15 (E.D.N.Y. July 5, 2006) ("[T]he federal district court's power of subpoena does not extend to non-citizens beyond the nation's borders.").[1]

Against this wall of precedent, Plaintiff has not identified—nor could he—any provision under the federal rules that allows a party to compel the deposition of foreign non-parties.  While Rule 45(b)(3) permits service of a subpoena in a foreign country, such subpoena must be "directed to a *United States national or resident*…." Fed. R. Civ. P. 45(b)(3) (emphasis added). There is a good and obvious why the Rules do not provide for service of a United States deposition subpoena on a foreign national residing abroad: "[T]he act of service itself constitutes an exercise of one nation's sovereignty within the territory of another sovereign.  Such an exercise [absent consent by the foreign nation] constitutes a violation of international law." *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 493-94 (C.A.D.C. 1984).

---

[1] *See also United States v. Korolkov*, 870 F. Supp. 60, 65 (S.D.N.Y. 1994) ("As [the potential witnesses] are not citizens of the United States and do not reside here, they are not amenable to United States subpoenas."); Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2462 (3d ed.) ("Aliens who are inhabitants of a foreign country cannot be compelled to respond to a subpoena, as they owe no allegiance to the United States").

Professor Montero, a practicing Chilean attorney who teaches Chilean procedural law at the University of Chile, explains in his declaration that Chilean law specifies the letters rogatory process as the only method for U.S. litigants to take deposition testimony on Chilean soil. *See* Declaration of Raúl Montero López ("Montero Decl.")at ¶¶ 2-28, 30-35. The parties cannot voluntarily agree to violate Chilean law. *Id.* ¶ 8-9. The Chilean constitution vests in the Chilean courts exclusive authority to oversee any and all judicial and evidentiary matters on Chilean soil, and does not permit any person or group of persons to usurp that authority. *Id.* ¶ 2, 35. Moreover, the procedural rules applicable to witness testimony given within Chile are binding rules of public order that neither Chilean citizens nor foreigners may waive. *See id.* ¶ 24, 40. In other words, when it comes to deposition testimony, Chilean citizens and U.S. litigants may not voluntarily agree to bypass the mandatory letters rogatory process. *Id.* ¶ 8-9. [2]

What is more, United States courts have consistently denied attempts to notice depositions of individuals employed by a foreign corporate affiliate of a party to the litigation. By example, in *Ski Train Fire of November 11, 2000*, the plaintiff sought the "depositions of a number of [employees of defendant's Austrian subsidiary] as fact witnesses." 2006 WL 1328259, *9 (S.D.N.Y. 2006). The *Ski Train* court explained that "[i]f the person sought for deposition is not within the subpoena power of a United States court, then procedures according to international treaty must be followed." *Id.* On this basis, the *Ski Train* held that "[t]he [employees of the Austrian subsidiary sought to be deposed] are not employed by [defendant]. Nor are they within the subpoena power of this or any other federal court. Therefore, **they must be deposed in Austria according to Austrian procedures.**" *Id* (emphasis added).[3]

---

[2] Even with respect to the Additional Protocol to the Inter-American Convention on the Taking of Evidence abroad (to which the United States is not a party), Chile has made clear its objections to foreign involvement in the taking of evidence within Chile. Montero Decl. ¶¶ 19-21, 33. Specifically, by expressly rejecting Articles 11, 12 and 13 of that Convention, Chile limited the role diplomatic and consular agents may play in collecting evidence in Chile. *Id.* Given that Chile refuses to allow even the diplomatic and consular agents of fellow Convention signatory parties to engage in such activity, it should come as no surprise that Chilean law would prohibit U.S. attorneys from doing so. In fact, U.S. attorneys may not participate in the taking of deposition testimony in Chile because only Chilean trained and qualified attorneys may take such action. *Id.* ¶ 27-29. 31.

[3] *See also Newmarket Partners, LLC v. Oppenheim*, 2009 WL 1447504, at *1 (S.D.N.Y. 2009)(denying a request to compel a party to produce an employee of its foreign corporate affiliate for deposition noting that the employee "does not qualify as a managing agent of [party corporation] simply by virtue of the fact that he is an officer of [non-party affiliate]."

It follows, then, that the individual dispute agents, as non-parties employed by Experian's foreign affiliate for whom this Court lacks *in personam* jurisdiction, must be deposed in Chile according to Chilean procedures.

**Third,** Plaintiff's attempt to hang his hat on the Court's finding that the relationship between Experian and Experian Services Chile, S.A. "is sufficiently close to treat them as the same for purposes of the present discovery disputes," (*see* Order at 4), does not save his claim. As an initial matter, the Court did not hold that Experian Services Chile, S.A. is a party to this litigation, or suggest that Experian Services Chile, S.A. is subject to the same deposition notice requirements as Experian.

Even assuming, *arguendo*, that this Court finds that Experian Services Chile, S.A. is a party to the litigation for the purposes of this dispute, Plaintiff is not entitled to deposition upon notice in the absence of any assertion that the individuals sought to be deposed are officers, directors, or managing agents of Experian.  It is well-settled that "[a] corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice." *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498, 503 (D. Utah 1997); *see also Afram Lines*, 159 F.R.D. at 413 ("[A] corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice.") citing *GTE Products Corp. v. Gee*, 115 F.R.D 67, 69 (D. Mass. 1987) ("What is not permissible is to notice the deposition of a corporation by a particular person who is not an officer, director or managing agent.").

To be sure, "[i]f the individual so designated is not an officer, director, or managing agent, but merely an employee, then the party seeking **the deposition must proceed as for an ordinary non-party witness.**" *Surgarhill Records Ltd. v. Motown Record Cop.*, 105 F.R.D. 166, 169 (D.C.N.Y. 1985) (emphasis added); *see also Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439, at * 2 (S.D.N.Y. 2002) (explaining that 30(b)(6) testimony "must be distinguished from that of a 'mere corporate employee' whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena.").

- 7 -

Here, plaintiff's motion is devoid of any allegation that the individual dispute agents are "officers, directors, or managing agents" of Experian.  Nor could plaintiff make such an allegation, as the individual dispute agents are entry-level employees that do not "exercise substantial independent authority and judgment in [their] corporate decision-making such that [their] ultimately determine corporate policy." *George v. Sonoma Sherrif's Dept.*, 2011 WL 2975850, at * 3 (N.D. Cal. 2011).  In any event, Plaintiff has failed to meet his burden to demonstrate that the individual dispute agents are "directors, officers, or managing agents" of Experian. *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1452, n. 4 (D.C. Cir. 1986) ("[T]he burden of proof to establish managing-agent status has been placed on the party seeking discovery."); Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed) ("The burden is on the party seeking the examination to demonstrate … that the witness is a managing agent.").

This deficiency is a mortal blow to Plaintiff's attempt to notice depositions of the individual dispute agents on American soil without using a subpoena served in Chile uder that country's laws.

**Fourth**, Plaintiff's naked claim that employees of Experian Services Chile, S.A. operate under the "complete control and discretion" of Experian does not compel a different conclusion. The "control" test finds no support in the federal rules for depositions of individual fact witnesses.  Rather, Rule 34 instructs that a party is obligated to produce *documents* that are in its "possession, custody, or control." Fed. R. Civ. P. 34.  This point is amply illustrated in *Ski Train*, where the Southern District of New York held that "[u]nlike the language of Rule 34, Rule 30 of the Federal Rules of Civil Procedure does not require a party to litigation to produce persons for deposition who are merely alleged to be in the party's control." 2006 WL 1328259, at * 9.[4] Here, Plaintiff's attempt to compel deposition testimony in the United States of the individual dispute agents is predicated on the fatally flawed argument that Experian Services Chile, S.A. operates under the "control" of Experian

---

[4] *See also Ethypharm S.A. France v. Abbott Laboratories*, 271 F.R.D. 82, 88 (D. Del. 2010) (rejecting plaintiff's argument that the "parent's control of the subsidiary's employees renders such witnesses subject to deposition in the U.S. under the Federal Rules of Civil Procedure")

Despite Plaintiff's best effort to sow confusion, case law simply confirms that the deposition of the individual dispute agents, without a showing that the agents are "officers, directors, or managing agents" of Experian, must be conducted in Chile in accordance with Chilean law.

### III.  PLAINTIFF'S ATTEMPT TO COMPEL DEPOSITION TESTIMONY ON THE FORMATION OF THE SANTIAGO NCAC MUST BE DENIED.

#### A.  Deposition testimony on the business rationale for opening an NCAC in Santiago, Chile is irrelevant.

Plaintiff seeks to compel the deposition testimony of four Experian employees for the stated purpose of determining "how it was decided by Experian to open a second NCAC, and specifically to do so in Santiago, Chile." (Motion at 17). However, Plaintiff's attempts to solicit testimony on topics relating to the formation of the Santiago NCAC have no bearing on his claims and are not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed R. Civ. P. 26(b)(1). Discovery on the topic of Experian's business rationale for its decision to open its second NCAC—and its decision to do so in Santiago, Chile—falls well outside the scope of the narrowly circumscribed issues presented in this case relating to (1) the reasonableness of Experian's procedures to assure maximum possible accuracy under Section 1681e(b); and (2) whether Experian conducted a reasonable reinvestigation of Plaintiff's disputes under Section 1681i. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Pascarella*, 2011 WL 2149524, *2 (E.D. Tenn. May 31, 2011) ("[A] district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided.").

Specifically, Plaintiff calls for this line of testimony on the launch of the Santiago NCAC because it "goes to Experian's motives in adopting the policies and procedures it has." (Motion at 17). Plaintiff ostensibly seeks such information to prove his claims regarding the reasonableness of Experian's reinvestigation and compliance procedures. Yet, Plaintiff ignores the fact that the procedures followed in Chile are the exact same procedures that are followed by Experian's NCAC in Texas. The location of the actual work is irrelevant, and plaintiff's attempt to conduct discovery on why Experian chose to locate its second NCAC in Santiago necessarily

- 9 -

fails.  At bottom, Plaintiff's attempt to transmute this controversy into a referendum on the merits or propriety of Experian's use of reinvestigation services abroad should not be countenanced.

**B.      Plaintiff improperly seeks to notice four "apex" depositions of Experian executives.**

Plaintiff's attempt to compel deposition testimony on the formation of the Santiago NCAC fails for the further, independent reason that it calls for the deposition of high-level Experian executives on this irrelevant subject: (1) Anthony Reeves, Senior Vice President of Sales; (2) Lee Lundy, Senior Vice President of Consumer Services; (3) Steven Wagner, President, Consumer Information Solutions; and (4) Kerry Williams, Group Leader, Experian Credit Services.  Plaintiff offers no legitimate reason for his request to depose these individuals, as they do not have any "unique knowledge" of the issues in this case.  None of these individuals were involved in the handling of disputes made on Plaintiff's behalf and would not have detailed knowledge of the procedures Experian follows for disputes such as the ones submitted by Plaintiff.  (*See* Taylor Decl. at ¶¶ 3-6.)  Rather, it is readily evident that Plaintiff's only interest in noticing these "apex" depositions is to harass and unduly burden Experian in violation of the letter and spirit of the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 26(b)(2), a court may limit the scope of discovery if it determines that the information sought is cumulative, duplicative, obtainable from a more convenient, less burdensome or less expensive source, or if the burden of the proposed discovery outweighs the likely benefit.  Fed. R. Civ. P. 26(b)(2).  Furthermore, under Rule 26(c), the court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."  Fed. R. Civ. P. 26(c).  To that end, federal courts have routinely issued orders to protect high-level executives of large corporations from being deposed where the potential deponent does not have unique or particular knowledge relevant to the lawsuit, other less intrusive and less burdensome means of obtaining the information sought exists, or a party is employing the deposition as a vehicle to harass the executive or the corporation.  Each of these reasons exists here and warrants denying Plaintiff's attempt to compel such testimony.

- 10 -

**First**, the high-level Experian executives sought to be deposed do not posses unique or particular knowledge of the issues in this case. When a party seeks to take the deposition of an official at the highest level or "apex" of a corporation, the court may exercise its authority to limit discovery. *WebSide Story, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, *2 (S.D. Cal. 2007); *Celerity, Inc. v. Ultra Clean Holdings, Inc.*, 2007 WL 205067, *3 (N.D. Cal. 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."). The decision to allow an "apex" deposition calls for the Court to consider whether the high-level deponent has unique, non-cumulative knowledge of the facts at issue. *See WebSideStory*, 2007 WL 1120567, at * 2; *Celerity*, 2007 WL 205067, at * 3. "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition." *WebSideStory*, 2007 WL 1120567, at *2. This is to say, "[d]epositions of high-level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in the dispute." *Murray v. County of Suffolk*, 213 F.R.D. 108, 109 (E.D.N.Y. 2002).[5]

Here, Plaintiff should be precluded from deposing high-level Experian officers on matters relating to the Santiago NCAC in the absence of unique, non-cumulative knowledge regarding Experian's procedures and the reinvestigation of the disputes made on Plaintiff's behalf. And, despite Plaintiff's insistence to the contrary, the 30(b)(6) deposition of Scott Yamanka and Teresa Iwanski answered all questions as to payments for work completed in the Santiago

---

[5] *See also Consolidated Rail Corp. v. Primary Indus. Corp.*, 1993 WL 364471, at * 1 (S.D.N.Y. 1993) (precluding plaintiff from deposing defendant's top executives "until it has been demonstrated that . . . [the executives] have some unique knowledge pertinent to the issues in these cases."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (upholding lower court's grant of an order protecting defendant's president, who "did not have any direct knowledge of the facts," from deposition); *Liberty Mutual Ins. v. Superior Court*, 13 Cal. Rpt. 2d 363, 366 (1992) (granting a protective order and noting that "the head of a large national corporation will generally not have knowledge of a specific incident or case handled several levels down the corporate pyramid."); *Thomas v. International Business Machine*, 48 F.3d 478, 483 (10th Cir. 1995)(finding that chairman's general knowledge of the policy at issue was not sufficient justification to permit the deposition because the plaintiff failed to demonstrate that such knowledge could not be gained through depositions of lower-level executives and managers or through less burdensome discovery); *Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Board*, 96 F.R.D. 619, 621-22 (D.D.C. 1983) (prohibiting depositions of board members where party seeking depositions failed to show persons sought to be deposed had "unique personal knowledge" of facts of case).

- 11 -

NCAC, along with significant detail concerning the terms of the Intracompany Services Agreement between Experian and Experian Services Chile, S.A.  And, to the extent Plaintiff is soliciting testimony regarding the negotiations surrounding the Agreement, or the business rationale for opening an NCAC in Santiago, Experian maintains that such information does not have any potential to lead to the discovery of admissible evidence—rendering any deposition testimony that could be offered by the "apex" depositions on that subject irrelevant.

**Second**, less intrusive and less burdensome means of obtaining information **relevant** to the issues in this case have already been made available to Plaintiff.  As a general rule, courts will permit the deposition of a high-level executive only upon a showing that the party exhausted other forms of discovery and was still unable to obtain the information the party hoped to gain from the proposed deponent.  *See Sharma v. Lockheed Engineering*, 1988 WL 118154, at *3 (4th Cir. 1988).[6]  By example, in *Baine v. General Motors Corp.*, the plaintiff sought the deposition of defendant General Motor's vice president in a product liability action because he had authored a memorandum on seat belts that was circulated throughout the company.  141 F.R.D. 332, 333 (M.D. Ala. 1991).  Notwithstanding his authorship of the memorandum, the *Baine* court held that "deposing [the vice-president] at this time would be oppressive, inconvenient and burdensome" in view of the fact that the plaintiff had not demonstrated that the information sought could not be gained by deposing the distributees of the memorandum, through interrogatories, or through a Rule 30(b)(6) deposition.  *Id.* at 353.  Likewise, the court in *Liberty Mutual* explained that "it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance without the intermediate steps of seeking discovery from lower level employees more involved in everyday corporate operations."  13 Cal. Rpt. 2d at 366.

Similar to *Liberty Mutual*, Plaintiff seeks to "leap-frog" his way to the "apex" of Experian, a large corporation, despite having taken depositions of lower-level employees—

---

[6] *See also Salter*, F.2d at 651 (not permitting plaintiff to take the defendant's president's deposition until he conducted depositions of lower-level employees and demonstrated that their testimony was inadequate or inconsistent with president's prior sworn congressional testimony."); *Porazzi Co. v. Mormaclark*, 16 F.R.D. 383 (S.D.N.Y. 1951) ("It appearing that the Vice President could contribute nothing beyond that which would be gleaned from an examination of the General Claims Agent, I hold this to be a showing of good cause that the deposition of the Vice President should not be taken at the present time.").

IRI-42503v1

including Mr. Yamanka and Ms. Iwanski—with more direct knowledge of the facts in this litigation. In other words, it would be oppressive, inconvenient, and burdensome to compel the four "apex" depositions, as Plaintiff has failed to adequately demonstrate need to solicit testimony already gained using less intrusive forms of discovery.

**Third**, Plaintiff may not use the "apex" depositions as an improper litigation tactic or a vehicle to harass Experian's high-level executives. Courts protect heads of large corporations and other high-level executives from oral deposition under Rule 26, despite the liberal discovery policies embodied in the federal rules, when the deposition is being used as a tool for harassment. *See Digital Equipment Corp. v. System Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass 1986) (granting protective order vacating notice of deposition of defendant's president where record reflected purpose was solely to harass and annoy the executive; courts recognize that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation."). The inherent burden of deposing a high-level executive is compounded when the defendant, like Experian, currently faces hundreds of similar lawsuits throughout the country. If the "apex" deponents were required to respond to every notice seeking their deposition, they would end up spending a significant portion of time— if not all of their time—testifying at depositions. Plaintiff's suspicion that the requested deponents possess some general knowledge regarding the decision to open an NCAC in Santiago is not a proper or justifiable basis to impose this undue burden on these executives, particularly where the information sought is either irrelevant or has already been provided through other means of discovery.

## IV.   EXPERIAN IS NOT WITHHOLDING DISCOVERY FROM PLAINTIFF.

### A.   Experian properly identified Scott Yamanaka as its 30(b)(6) witness in response to deposition Topics Nos. 4 and 5.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), a party must designate one or more individuals who are able to testify concerning the topics included on the deposition notice. "The persons designated must testify about information known or reasonably available to the organization" Fed. R. Civ. P. 30(b)(6). A party does not have to produce the person with the

- 13 -

*most* knowledge about the matters included in the notice, but rather "it need only produce a person with knowledge whose testimony will be binding on the party." *Century 21 Real Estate, LLC v. All Professional Realty, Inc.* 2012 WL 2116409 (E.D.Cal., June 6, 2012) *citing Rodriquez v. Pataki*, 293 F. Supp.2d 305, 311 (S.D.N.Y. 2003). Moreover, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996).

Plaintiff falsely claims that Experian's 30(b)(6) witness, Scott Yamanaka, "has virtually no information on the two (2) Subjects of Examination on which he was designated." (Motion at 6). To the contrary, Mr. Yamanaka provided detailed testimony concerning the terms included in the Intracompany Services Agreement and the manner in which EIS compensates ESC for the services it performs.

Deposition Topics No. 4 and 5 ask Experian to "identify, authenticate, describe and explain" any contract, agreement or written understanding concerning the operation of the NCAC in Santiago Chile, and "identify, authenticate, describe and explain" any cost or payment arrangement between any Experian entities for reinvestigations done by NCAC in Santiago, Chile. Contrary to Plaintiff's accusations, Mr. Yamanaka was able to identify, authenticate, describe and explain in detail the Intracompany Services Agreement ("Agreement") between EIS and ESC. (*See* Deposition of Scott Yamanaka ("Yamanaka Depo.") at 39:4-45:11, relevant excerpts attached as Exhibit B to the declaration of Angela M. Taylor). Mr. Yamanka was also able to provide testimony explaining how EIS makes payments to ESC for the work completed in the Santiago NCAC. (*Id.* at 25:8-27:2, 29:12-30:8, 39:4-45:11). The fact that Mr. Yamanaka did not review the Agreement prior to his preparations for the 30(b)(6) deposition is immaterial. Accordingly, there is nothing further to compel regarding Deposition Topics No. 4 and 5.

- 14 -

**B.**     **Experian has produced the only written agreement between Experian Information Solutions, Inc. and Experian Services Chile, S.A. which governs the reinvestigations of consumer disputes.**

As stated above, Experian has produced the Intracompany Service Agreement between EIS and ESC which details, among many things, the reinvestigations of consumer disputes to be handled in the Santiago NCAC. Despite Plaintiff's best efforts to elicit testimony from Mr. Yamanaka to the contrary, no additional agreements exist. (*See* Yamanaka Depo. at 60:3-20.[7]) Accordingly, there is nothing further to compel.

**V.     PLAINTIFF'S ATTEMPTS TO REVISIT ISSUES RESOLVED IN HIS FIRST MOTION TO COMPEL SHOULD BE DENIED.**

**A.**     **Experian does not maintain a cost-benefit analysis for the cost of compliance with the FCRA, the defense of lawsuits or the cost of reinvestigations.**

The issue of whether Experian maintains a "cost-benefit analysis" concerning the costs of conducting reinvestigations and the costs of complying with the FCRA was previously addressed through Plaintiff's First Motion to Compel. Through a declaration provided by Kathy Centanni, Experian explained that it does not maintain any such information. *See* Declaration of Kathy Centanni in support of Experian's Opposition to Plaintiff's First Motion to Compel ("Centanni Decl."), ¶ 38, Dkt. No. 16. Following the hearing on Plaintiff's First Motion, the Court ordered Experian to conduct another records search, this time focused on Experian Services Chile, S.A., and provide any responsive documents. (*See* Order at 7). Experian complied with this Court's Order, and provided Plaintiff with a supplemental discovery response which explained that neither EIS nor ESC maintain any such records. *See* Experian's Supplemental Response to Request for Production No. 15 and 16 ("Experian Information Solutions, Inc. and Experian

---

[7] Q: Well, have you had the opportunity to learn in preparation for this deposition as the designee what written documents, emails, contracts, procedures would constitute the written understanding of the relationship between Experian Information, Experian Chile with respect to specifically NCAC?

A: It would be the Intracompany Services Agreement that we've been talking about.

Q: Okay, that's one. You worked for a lot of corporations. You have an MBA from a really kick-ass school, I'm sorry, a really strong school. You're not representing to me your believe that that three page document, really just an outline, constitutes the entire written understanding between these two entities with respect to how NCAC Chile is supposed to operate, are you?

A: I don't have any knowledge of any agreement outside of this. (Yamanaka Depo. at 60:3-20)

Services Chile, S.A. do not maintain a "cost/benefit" analysis for the cost of compliance with the FCRA or the defense of lawsuits. In addition, Experian Information Solutions, Inc. and Experian Services Chile, S.A. do not maintain an analysis of the cost of reinvestigations of consumer disputes.")

Experian's response was further confirmed during the 30(b)(6) deposition of Teresa Iwanski.

> Q: Do you know whether or not any departments or division of Experian undertakes any sort of review or analysis of how much Experian spends on reinvestigations?
>
> A: No, ma'am.
>
> Q: So you're not in a position to say that they don't do that, you just have no knowledge of that, correct?
>
> A: No, ma'am. - - it's not something that Experian does.

(Deposition of Teresa Iwanski ("Iwanski Depo.") at 77:6-17, relevant excerpts attached as Exhibit A to the declaration of Angela M. Taylor.)

Plaintiff now erroneously claims that Experian was being deceitful in its discovery responses. (*See* Motion at 8.) In support of this accusation, Plaintiff cites to a leading question that was asked of Experian's 30(b)(6) witness, Scott Yamanaka:

> Q: You would expect [Experian] would do a thorough job to do a cost benefit analysis to determine whether or not to open an Experian Chile NCAC verses keep it in Texas, right?
>
> A: Yes, there would have been a financial analysis that was performed.

(*See* Motion at 8; Yamanaka Depo at 64:1-6.)

Plaintiff is comparing apples to oranges. Through written discovery, Plaintiff served the following two requests for production: (1) Please produce all cost/benefit analyses regarding expenditures necessary for compliance with 15 U.S.C. § 1681i or the reinvestigation of disputed credit information; and (2) Please produce all cost/benefit analysis regarding expenditures necessary for cost of defending cases of disputed credit information versus compliance with 15 U.S.C. § 168li or the reinvestigation of disputed credit information" *See* Plaintiff's Request for Production Nos. 15 and 16. However, the question posed to Mr. Yamanaka was whether Experian may have conducted any sort of analysis concerning its decision to open a business

- 16 -

operation in Santiago, Chile.  These are two separate issues.  To suggest that Experian's responses were deceitful because of the testimony provided by Mr. Yamanaka is not only disingenuous, but is also evidence of the unscrupulous tactics being employed by Plaintiff's counsel.  In essence, Plaintiff is asking this Court to ignore all logic in his desperation to find a non-existent "smoking gun."

### B.   Financial Information

This is Plaintiff's second attempt to obtain irrelevant budgetary information regarding Experian's National Consumer Assistance Center.  In Plaintiff's First Motion, Plaintiff failed to identity why the requested financial information was relevant to his claims that Experian failed to have reasonable procedures in place to assure maximum possible accuracy and that Experian failed to conduct reasonable reinvestigations.  In its June 18, 2012 Order, the Court ruled that Plaintiff's request for Experian's budgets or projections allocating resources to reinvestigation activities was "sufficiently sensitive that it will not order the production of the materials at this time." (*See* Order at 6).  The Court went on to note that although Experian is not ordered to produce specific budgetary numbers, this order does not preclude general inquiry at deposition as to how Experian's budget works and how costs for various tasks are allocated and projected." (*Id.*)

As discussed above, Experian produced the Intracompany Services Agreement between EIS and ESC which specifies how ESC is paid for the work it performs.  Moreover, Experian's 30(b)(6) deposition provided testimony concerning such payments. (*See, e.g.,* Yamanaka Depo. at 25:17-27:2; 29:12-30:8; 39:10-12; 42:10-45:11).  Now, in a further effort to bog down this case in meaningless discovery disputes, Plaintiff seeks copies of all "invoices, spreadsheets, and system reports with 'drill down capabilities' that show in specific detail the costs associated with NCAC-Chile." (Motion at 7).

As with Plaintiff's previous motion to compel, Plaintiff once again fails to identify how such information is relevant to Plaintiff's claims in this case.  "[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden

- 17 -

whatsoever imposed would be by definition 'undue.'" *Goznales v. Google, Inc.*, 234 F.R.D. 674,

680, *citing Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D.

Cal. 1995). Accordingly, because Plaintiff's request for Experian's financial information is not

relevant to the two distinct issues in this case, the Court should once again deny Plaintiff request

as irrelevant and unduly burdensome.

### C.    Incentive Programs

Through both written discovery and deposition, Plaintiff has sought information regarding

whether Experian Services Chile, S.A. has any incentive program that might directly or indirectly

reward efficiency over accuracy. Pursuant to the Court's June 18, 2012 Order, Experian

conducted a search of its records and determined that ESC did not have any such incentive plan

during the time period of Plaintiff's disputes. *See* Experian's Supplemental Response to

Interrogatory 13 ("Experian Services Chile, S.A. did not have any incentive plans that directly or

indirectly rewarded efficiency over accuracy during the time period of Plaintiff's disputes.").

Despite this clear response, Plaintiff's Motion incorrectly claims that "Experian finally conceded

that its dispute agents are, in fact, give an 'incentive package' which is paid on a quarterly basis

and is formulated, at least in part, on 'converted units' which assign value to particular tasks."

(Motion at  9).

Plaintiff's accusation takes the deposition testimony of Ms. Iwanski out of context.

During Experian's 30(b)(6) deposition, Ms. Iwanski testified that the agents who work at the

NCAC in Santiago, Chile are compensated differently that the agents who work at the NCAC in

Allen, Texas. (*See* Iwanski Depo. at 62:17-22). However, Plaintiff's counsel failed to recognize

this distinction during her subsequent lines of questioning. The sections of Ms. Iwanski's

deposition testimony referenced in Plaintiff's Motion contain a discussion of the incentive

program that were available to agents who worked in the **Allen NCAC**. This testimony did not

concern the agents who worked for the Santiago NCAC. (*See* Iwanski Depo. at 69:9-73:22.[8]) As

---

[8] The following is the opening question asked to Teresa Iwanski which preceded the testimony concerning converted units and incentive pay referred to in Plaintiff's Motion: "Q: Okay. I'm trying to understand if the agents that handle telephone disputes in **Allen, Texas** in any way receive more money in the course of a year - - regardless of what we want to call that - - compensation, pay bonuses, incentives - - whether or not they receive any

Experian has previously explained, the agents who worked for the NCAC in Santiago, Chile during the time of Plaintiff's disputes did not receive any sort of compensation that directly or indirectly rewarded efficiency over accuracy. Nothing in Ms. Iwanski's testimony refutes this statement.

## VI.   PLAINTIFF'S ATTEMPT TO COMPEL DISCOVERY OF LEGAL INTERPRETATIONS RELIED UPON IN FORMULATING EXPERIAN'S POLICIES AND PROCEDURES CALLS FOR THE PRODUCTION OF PRIVILEGED MATERIAL AND MUST BE DENIED.

Without a hint of authority, Plaintiff asserts that he is entitled to the production of legal readings and interpretations of the FCRA upon which Experian relied in formulating its policies and procedures. (*See* Motion at 16). Plaintiff also calls for discovery on (1) the identity of the individuals who made the decisions to rely on those legal readings or interpretations; and (2) how that reliance impacted decisions ultimately made as to the policies and procedures Experian adopted. (*Id*). As Plaintiff recognizes, the question of whether Experian violated the FCRA is a purely objective standard. The subjective intentions of Experian are irrelevant. *See Levine v. World Fin. Network Nat'l Bank,* 554 F.3d 1314, 1319 ("The interpretation of the Act that agencies may sell reports for closed accounts was objectively reasonable, and *Safeco* instructs us not to consider the subjective intent of Experian.").

In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court considered the meaning of the word "willfully" in this context and concluded that the term is broad enough to include both intentional and reckless violations of the law. The Court noted that "recklessness is not self-defining," but that, in a civil context, it is "generally understood . . . as conduct violating an **objective** standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco,* 551 U.S. at 68 (*quoting Farmer v. Brennan*, 511 U.S. 825, 836 (1994))(emphasis added). In order for Experian to prevail on Plaintiff's willfulness claims, Experian is required to show that its procedures were an

---

(continued...)

additional money in the course of a year based on how much work they do during that year." (Iwanski Depo. 69:9-15).

objectively reasonable interpretations of its statutory duties. Plaintiff's argument that the absence of discovery into the subjective process by which Experian's procedures were developed should deprive Experian of the right to argue that its procedures are objectively reasonable is illogical. Plaintiff has conducted extensive discovery concerning Experian's procedures. At trial, both sides will have the opportunity to present evidence on whether these procedures are objectively reasonable. The issue of how these procedures were arrived at is irrelevant.

Independently, Plaintiff's attempts to discover Experian's reasoning for interpreting the FCRA in a particular way should be denied because it necessarily infringes upon information protected by the attorney-client and work product privileges. In other words, the process by which Experian conducts its legal evaluation of the FCRA to define its policies and procedures implicates the mental impressions, conclusions, opinion, or legal theories of Experian's counsel, along with any legal advice given to Experian's employees on those subjects—privileged information that is protected and immune from discovery by Rule 26. *See* Fed. R. Civ. P. 26. Nor has Plaintiff shown any extraordinary justification to overcome Experian's claim of privilege. *See, e.g., In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir. 1982) ("[T]o the extent that work product reveals the opinions, judgments, and thought processes of counsel . . . a party seeking discovery must show extraordinary justification."). Accordingly, Plaintiff's attempt to compel discovery, or estop any defense, as to willfulness must be denied.

## VII.   CONCLUSION.

For the foregoing reasons, Experian respectfully requests that the Court deny Plaintiff's motion to compel in its entirety.

Dated:  September 17, 2012                JONES DAY


By: /s/ Angela M. Taylor
     Angela M. Taylor
Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS,
INC.

- 20 -

IRI-42503v1

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

I, Angela M. Taylor, declare I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 3161 Michelson Drive, Suite 800, Irvine, California 92612. On September 17, 2012, I served, by electronic transmission, a copy of: **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO COMPEL**

I am familiar with the United States District Court for the District of Idaho's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

Ryan Thomas Earl                                   *Attorneys for Plaintiff*
ryantearlattorneyatlaw@yahoo.com
Earl & Earl, PLLC
212 Tenth Avenue South
Nampa, Idaho 83651
T:      (208) 890-0355

Sylvia A. Goldsmith                                *Attorneys for Plaintiff*
sgoldsmith@sgoldsmithlawoffice.com
Law Office of Sylvia A. Goldsmith
Milano Law Building
2639 Wooster Road
Rocky River, OH 44116
T:      (440) 934-3025

Executed on **September 17, 2012**, at Irvine, California.

*/s/ Angela M. Taylor*
Angela M. Taylor

- 21 -