Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
Geoff B. McCarrell, Esq.
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com
Email: gmccarrell@sgoldsmithlawoffice.com

Leonard A. Bennett (Admitted *Pro Hac Vice*)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| **JOSE LUIS CALDERON** | ) | |
| | ) | CASE NO.: 1:11-CV-00386-EJL |
| Plaintiff, | ) | |
| | ) | JUDGE LODGE |
| v. | ) | |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
***SECOND* MOTION TO COMPEL DISCOVERY AND FOR RULE 37(c)(1) SANCTIONS**

Reading Experian's opposition to Plaintiff's Second Motion to Compel makes Plaintiff question if the parties are litigating the same case. According to Experian, it has been the epitome of cooperation and good faith in the discovery process; Experian has produced everything and anything that could possibly be relevant to the two limited claims at issue here.

Plaintiff has experienced something strikingly different.

Experian has carefully designed its reinvestigation policies and procedures to protect its own bottom line, not the accuracy of the information reported about the consumer. Irrefutably, it took the initiation of a federal lawsuit to get Experian to remove false and highly derogatory information from Plaintiff's credit file because of these policies and procedures. This fact gives rise to both negligent and willful violations of two (2) key provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, Section 1681*e*(b) which requires Experian to "assure maximum possible accuracy" of the information it reports, and Section 1681*i*, the reinvestigation section of the statute which is "the heart of … efforts to ensure the ultimate accuracy of consumer reports" which is necessary for the ongoing integrity of our nation's banking system. *See* Committee Report accompanying S.650, S. Rep. No. 185, 104th Congr. 1st Sess., at 43 (Dec. 14, 1995).

Furthering its efforts to protect that bottom line, Experian has done everything possible to prevent Plaintiff from proving his claims as these claims inevitably bring to light the blatant inadequacies of some of the core policies and procedures underlying Experian's reinvestigation process. Keeping Plaintiff (and other consumers who are trapped in the abyss known as Experian's "repeat dispute" arena) in the dark allows Experian to continue on with these willful violations of the FCRA.

### I. EXPERIAN HAS MISREPRESENTED CHILEAN LAW WITH RESPECT TO DEPOSING THE INDIVIDUAL DISPUTE AGENTS IN THIS CASE.

Experian has steadfastly represented to both Plaintiff and this Court numerous times, in person, via telephone, and in writing, that it is ***against Chilean law*** for Plaintiff to depose the individual dispute agents – agents that exercised their discretion in considering and ultimately ignoring a dozen pleas from Plaintiff to remove false and highly damaging information from his credit file – without going through the letters rogatory process. *See*, *e.g.*, Experian's Opposition to Plaintiff's Second Motion to Compel at 3 ("[T]he letters rogatory process constitutes the only method for U.S. litigants to take witness depositions in compliance with Chilean law (emphasis in original)."). Having invested considerable time and money consulting with a Chilean law expert of his own, Plaintiff can now definitely say: ***that simply is not true***. *See* Affidavit of Zandra X. Valenzuela ("Valenzuela Aff." a copy of which is attached hereto as Exhibit 1) at ¶ 3. If, as requested here, a witness appears at the direction of its employer as opposed to requiring a subpoena (which necessarily invokes the jurisdiction of a Chilean court), the letter rogatory process never comes into play. *Id.* at ¶¶ 5, 9 and 10.

This Court has already ruled that the relationship between Experian and its sister corporation, Experian Services Chile, S.A., "is sufficiently close to treat them as the same for purposes of the present discovery disputes." Order on Plaintiff's (First) Motion to Compel at 4.[1]

---

[1] Seemingly aware that Plaintiff might discover that Chilean law does not prohibit the voluntary appearance of witnesses as Experian has insisted, Experian pushes the notion that a subpoena is necessary to compel the appearance of employees of Experian Services Chile, S.A. First, Experian relies on the previously-rejected notion that Experian Services Chile S.A. is a wholly-distinct non-party here. *See* Experian Opposition at 4. Besides the fact this Court has already ruled on this issue, discovery since this Court's Order on Plaintiff's (First) Motion to Compel has confirmed that not only are Experian and Experian Services Chile, S.A. sister corporations, but also that Experian exercises control over Experian Services Chile, S.A. in every respect, from hiring and training of employees to controlling the financial strings of the operation which has been set up as another arm of Experian's Allen, Texas, dispute center. Experian concedes as much here. *See* Experian's Opposition at 2 ("Experian has explained that the Santiago NCAC operates according to the exact same policies and procedures as the Allen NCAC. Both NCAC locations use the same training materials, provide the same training programs to agents, and require that the agents adhere to the same procedures for handling disputes made by consumers.").

2

Therefore, there exists no obstacle (either legal or factual) to Experian directing the individual dispute agents at issue to appear in Chile for a video- or tele-conference deposition in this case. In fact, Professor Valenzuela has previously arranged such depositions in other United States lawsuits where a Chilean witness needs to be deposed, and has agreed to do so in this instance. *See* Valenzuela Aff. at ¶ 1.

## II.     EXPERIAN HAS OBFUSCATED PLAINTIFF'S EFFORTS TO DISCOVER ANY EVIDENCE RELEVANT TO HIS WILLFULNESS CLAIMS.

### A.     Information About NCAC Chile Goes To Experian's Motivations.

Plaintiff's first Motion to Compel included a lengthy discussion of the need for various items in that discovery dispute as they go to Experian's motivations for making (or failing to make) certain decisions that necessarily impact proof of Plaintiff's negligent and willful claims under the FCRA. Again, this evidence is necessary to show that Experian's actions were taken with "reckless disregard," *i.e.*, with "'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *See Safeco Ins. Co. of American v. Burr*,

---

(continued from previous page …)
       Second, Experian argues that a subpoena is necessary to compel the appearance of employees who are not officers, directors or managing agents of Experian. *See* Experian's Opposition at 7. This Court has already compelled these depositions so Experian's argument in this regard is moot. Moreover, any doubt about whether a party witness is a "managing agent" is to be resolved in favor of the Plaintiff at this stage. *See*, *e.g.*, *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996). Finally, the dispute agents at issue here are managing agents because they closely align themselves with the interests of the employer, which is the paramount question to resolve in determining whether an employee-witness is covered by the standards of Fed. R. Civ. P. 30(b)(1). *See*, *e.g.*, *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010) (reasoning that "courts are generally agreed, however, on the controlling factors used in deciding whether an individual is a managing agent of a corporation. These factors include: (1) whether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the adverse party."). The term "'managing agents' should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority * * * respecting the subject matter of the litigation.'" *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968) (quoting *Kolb v. A. H. Bull Steamship Co.*, 31 F.R.D. 252, 254 (E.D.N.Y.1962)).
       Should Experian be willing to provide a Stipulation in this case that the individual dispute agents in its Santiago, Chile NCAC are not allowed to exercise any discretion or independent thought whatsoever with respect to the handling of individual disputes pursuant to Experian's standard policies and procedures, then perhaps Plaintiff would accept their characterization that these individuals do not constitute managing agents.

3

551 U.S. 47, 68, 127 S.Ct. 2201, 2215, 167 L.E.2d 1045, 1065 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

For instance, Plaintiff has sought discovery aimed at the cost of conducting reinvestigations, incentive programs that might directly or indirectly reward efficiency over accuracy, and any cost-benefit analyses concerning the costs of conducting reinvestigations and/or of complying with the FCRA.  *See* Document Request Nos. 13, 15 and 16.  *See also* Order on Plaintiff's (First) Motion to Compel at 6.  Contrary to Experian's suggestions, this Court did not rule that the information was not relevant or otherwise owed to Plaintiff.  Rather, based on defense counsel's representations that no such documentation exists, this Court ordered Experian to check again, "this time focused on the Chilean entity, and *** provide any responsive documents."  *See* Order on Plaintiff's (First) Motion to Compel at 7.

Likewise, with respect to Plaintiff's requests for budget or projection information allocating resources to reinvestigation activities, and salary records of individual dispute agents who worked on Plaintiff's disputes, *see* Document Request Nos. 14 and 17, this Court did not determine that this information was irrelevant to Plaintiff's claims.  Rather, in determining that Experian did not need "to produce specific budgetary numbers at this time," the Court noted that its Order was not intended to preclude "general inquiry at deposition as to how Experian's budget works and how costs for various tasks are allocated and projected."  *See* Order on Plaintiff's (First) Motion to Compel at 7.  And Plaintiff did just that, proceeding with the depositions of Teresa Iwanski and Scott Yamanaka, and inquiring as to all of the foregoing topics.

The need for this second Motion to Compel arises from the fact that, despite this Court's direction in the Order on Plaintiff's (First) Motion to Compel, and despite subsequent

4

deposition testimony confirming Plaintiff's suspicions that: (a) defense counsel's representations to this Court as to the existence of certain materials was false, and (b) Experian might put forth witnesses that could not substantively respond to Plaintiff's questions on point, nothing additional has been made available to Plaintiff. Experian has not provided a shred of substantive information responsive to Plaintiff's discovery requests on Experian's motivations. In fact, Experian has blocked meaningful discovery related to anything that it deems possibly harmful to itself with respect to a willfulness determination here.

As example, Experian tries to hide behind a relevance objection to justify not producing a Rule 30(b)(6) witness on the issue of how it was determined that a second NCAC would be opened in Santiago, Chile. *See* Experian's Opposition at 9. But as Experian is well aware, discovery rules are to be "broadly and liberally construed" in order to serve the purpose of discovery which is to provide the parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Handi-Craft Co. v. Action Trading, S.A.*, 2003 WL 26098543, Case. No. 4:02CV1731 (E.D. Mo.) (citing *Gladfelter v. Wal–Mart Stores, Inc.*, 162 F.R.D. 589, 590 (D. Neb. 1995); *see also Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 95 (S.D. Iowa 1992) ("The spirit of Rule 26 of the Federal Rules of Civil Procedure is that discovery be self-effectuating, without need to resort to the court, and that its scope be liberal, extending to all matters reasonably calculated to lead to admissible evidence").

The claims in the complaint define the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections." *Ahern v. Trans Union, LLC Zale Corp.*, 2002 WL 32114492, Case No. 3:01CV2313 (D. Conn.) (citing *Compagnie*

*Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Experian has failed to provide any justification to refuse to produce information about how it was decided to open the Santiago NCAC, specifically including any cost-benefit analyses done with respect to that decision. Considering the extent to which Experian has fought Plaintiff's efforts to depose the individual dispute agents there, insisting that Plaintiff accept the hearsay interpretation of Experian's well-trained professional deposition witness instead, makes the questions surrounding the underlying decision all the more relevant to Experian's motivations in doing so.

Second, Experian refuses to produce certain specifically-named Experian individuals for deposition, arguing that they are "apex" depositions that are unnecessary because there are "less intrusive and less burdensome means of obtaining the information[.]" *See* Experian Opposition at 10.[2] But Plaintiff tried that route by serving a carefully-crafted Notice of Rule 30(b)(6) Deposition with a Subject of Examination on point only to have Experian refuse to produce a witness to testify. Experian cannot have it both ways. Since Experian has already rejected its chance to identify a corporate designee on the subject matter, it cannot now complain that Plaintiff has moved forward with noticing the depositions of individuals who can testify accordingly.

---

[2] Experian also relies on the misplaced argument that the particular deponents do not have "unique or particular knowledge" relevant here because they would not be in a position to testify as to what did or did not happen with respect to the reinvestigations of Plaintiff's disputes. With all due respect, Experian knows that is not what Plaintiff wishes to question Anthony Reeves, Lee Lundy, Steven Wagner and Kerry Williams about. These individuals in their executive capacities are perhaps the only individuals with "unique or particular knowledge" about the high-level decisions related to opening the second NCAC in Santiago, Chile.

**B.     If Experian Intends To Use Any Legal Interpretations Of The FCRA As A Defense Under *Safeco*, Then It Necessarily Opens The Door For Discovery On Same.**

Per the plain language of *Safeco*, a willfulness determination under the FCRA is a two-step process: (1) the consumer must show that the defendant's action violates "*a* reasonable reading of the statute's terms (emphasis added)[;]" and (2) the defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, *supra*, 551 U.S. at 70, 127 S.Ct. at 1066.

Relying on *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009), Experian pushes this Court to believe that only the first step of this test is necessary in determining willfulness. *See* MTC Opposition at 19 ("the question of whether Experian violated the FCRA is a purely objective standard."). Experian misrepresents the *Levine* holding. Certainly, the Eleventh Circuit did not reach the subjective element of the *Safeco* test but that was because the consumer failed to pass the objective hurdle which is necessary in order to move on to the subjective one.[3] The *Levine* court determined that the actions at issue could not violate "a reasonable reading" of the FCRA and, with prong one of the *Safeco* test *not* satisfied, there was no need to consider the subjective element of prong two. That does not equate to Experian's position that the standard under *Safeco* is a purely objective one. To buy into that position would render the second prong – the subjective prong – of the *Safeco* test irrelevant.

At the center of the case *sub judice* is Experian's "repeat dispute" procedure which dictates that once Experian has conducted a reinvestigation of a particular item disputed by a consumer, Experian will not, as a matter of policy, reinvestigate that item again even if the

---

[3] Even assuming, *arguendo*, that Experian's interpretation of *Levine* is correct, and the *Safeco* standard is limited to the question of whether Experian's interpretation of the FCRA was objectively reasonable, this Court still necessarily needs to know what Experian's interpretation of the FCRA was in order to determine if such determination was objectively reasonable. *See Levine*, *supra*, 554 F.3d at 1319. To date, Experian has refused to produce a single shred of evidence on that issue.

7

original reinvestigation results were wrong. In Plaintiff's experience, he disputed the appearance on his credit report of a judgment that does not belong to him *thirteen (13) times* and Experian flatly refused to reinvestigate all but the first dispute. Even after Plaintiff provided additional information (as Experian claims it requires in order to trump its sweeping "repeat dispute" procedure), Experian *still* refused to conduct any sort of investigation of Plaintiff's disputes.[4] It took the filing of this lawsuit to get Experian to look substantively at Plaintiff's dispute and delete the now-admittedly false information. Under an objective reading of the FCRA,[5] Experian's "repeat dispute" procedure is patently unreasonable.

Similarly, the FCRA provides a lone exception to a consumer reporting agency's mandatory obligation to reinvestigate each and every dispute made by a consumer in 15 U.S.C. § 1681*i*(a)(3) which provides in its entirety:

> (3) Determination That Dispute Is Frivolous or Irrelevant
>
> (A) *In general*. Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.
>
> (B) *Notice of determination*. Upon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the

---

[4] The FCRA requires that in order to forego any dispute, Experian needs to make the determination that the dispute is irrelevant or frivolous and, after such determination is made, Experian has an affirmative obligation to notify the consumer of that determination within five (5) days of when it is made. Irrefutably, Experian never made any such determination with respect to Plaintiff's repeated dispute of the admittedly-false judgment that Experian insisted upon strapping to Plaintiff's otherwise perfect credit history, and certainly never provided him with any notice of such determination as expressly required by 15 U.S.C. § 1681*i*(a)(3). There is no possible interpretation of the FCRA that could be deemed reasonable, objectively or otherwise, that completely disregarding Section 1681*i*(a)(3) does not violate the express mandates of the FCRA.

[5] A consumer's right to dispute the accuracy or completeness of any item of information in his credit file is one of the most critical protections provided by the FCRA. *See* 15 U.S.C. § 1681*i*; Committee Report accompanying S.650, S. Rep. No. 185, 104th Congr. 1st Sess., at 43 (Dec. 14, 1995) (the reinvestigation provision is "the heart of … efforts to ensure the ultimate accuracy of consumer reports" which is necessary for the ongoing integrity of our nation's banking system.). A reinvestigation must be "a good faith effort to determine the accuracy of the dispute item or items." *See* FTC Official Staff Commentary § 611 item 2.

8

>consumer for that purpose, by any other means available to the agency.
>
>(C) *Contents of notice*. A notice under subparagraph (B) shall include
>
>>(i) the reasons for the determination under subparagraph (A); and
>>
>>(ii) identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

*See* 15 U.S. C. § 1681*i*(a)(3). Experian made no effort to follow this procedure with respect to the numerous times it determined it would not reinvestigate Plaintiff's disputes as to the false judgment appearing on his credit report and yet, Experian's corporate representative testified that the individual dispute agents correctly followed Experian's policies and procedures. *See*, *e.g.*, Deposition of Teresa Iwanski at 164, 237.

For sure, there is no possible interpretation of the FCRA that could be deemed "objectively reasonable" that concludes that Experian may completely disregard the express mandates of 15 U.S.C. § 1681*i*(a)(3). Thus, with the first prong of the *Safeco* test satisfied with respect to both of these issues – issues that go directly to proof of Plaintiff's reinvestigation claim – Experian necessarily must produce information on what it did and did not conclude with respect to its decisions in this regard in order for the remainder of the *Safeco* analysis to be determined.

Of course, such evidence of willfulness is only necessary here if Experian intends to rely on some yet-undisclosed interpretation of the FCRA as a defense to Plaintiff's claims of willfulness. If Experian refuses to produce the relevant discovery, then Experian should be prohibited from making that defense under *Safeco*.

### III.     CONCLUSION.

Plaintiff has now been forced to go through two (2) Motions to Compel and even hire a Chilean law expert at considerable expense in an effort to make Experian comply with its own, self-executing discovery obligations. Plaintiff believes this is a calculated plan on Experian's part to keep Plaintiff and his counsel from discovering potentially damaging information about the decisions made by Experian which impact the negligent and willful FCRA claims at issue here.

For all of the reasons stated herein, as well as those enumerated in the *Memorandum In Support Of Plaintiff's Second Motion To Compel Discovery and For Rule 37(c)(1) Sanctions*, it is time for the Court to put an end to Experian's game playing once and for all. Plaintiff respectfully asks for the relief more fully set forth in his Motion.

Respectfully submitted,

  /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
Geoff B. McCarrell, Esq.
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com
Email: gmccarrell@sgoldsmithlawoffice.com

Leonard A. Bennett (Admitted *Pro Hac Vice*)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

>Ryan T. Earl (Idaho Bar #8342)
>EARL & EARL, PLLC
>212 10th Avenue South
>Nampa, Idaho 83651
>Telephone: (208) 890-0355
>Facsimile: (208) 461-9560
>Email: ryantearlattorneyatlaw@yahoo.com
>
>Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing *Reply Memorandum In Support Of Plaintiff's Second Motion To Compel Discovery and For Rule 37(c)(1) Sanctions* is being filed with the Court on this 28th day of September, 2012, through the Court's electronic filing system. Service of this Memorandum on all counsel of record will be made through such system.

>  /s/ Sylvia A. Goldsmith
>Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
>Attorney for Plaintiff