IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE LUIS CALDERON, | ) |
| | ) CASE NO.: 1:11-CV-00386-EJL |
| Plaintiff, | ) |
| | ) JUDGE LODGE |
| v. | ) |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF ZANDRA X. VALENZUELA DELGADO

Country of Chile     )

Region of the Lakes  ) ss.:

ZANDRA VALENZUELA DELGADO, being duly sworn, states and deposes as follows:

1.  I have been a practicing attorney for more than 15 years in Chile, and I am a graduate of the University of Chile Law School. I have also attended an International Public Law Masters program at the University of Amsterdam in the Netherlands.

    I have taught Chilean and International law at three universities in Chile. I am currently senior legal partner at Spencer Global Consulting, providing legal and investment services to foreigners in Chile. My specialization is in international public and private law including family, corporate, contract law, and general cross boarder jurisdictional matters involving Chile. I have previously provided various expert testimony to U.S. courts in regards to Chilean procedural law and jurisdictional matters, and have assisted with arranging the deposition and testimony of Chilean citizens via video conference and other technological media on Chilean soil before U.S. courts of law[1].

2.  I have been requested to review and give an opinion under the laws of Chile on the following matters: In accordance with the laws of Chile: (a) Is it against Chilean law for a US Plaintiff, in a US lawsuit, involving only US legal claims, to depose a US's company's employee or agent when that employee or agent is located in Chile without going through the letter

---

1 *Jagwani v. Jagwani*, United States District Court for the Southern District of Texas; *Villegas Duran v. Arribada Beumont*, United States District Court for the Southern District of NY.

rogatory process? (b) Does Chilean Law prohibit an employer from directing its employee or agent from appearing at a deposition related to a foreign lawsuit without that employee's or agent's appearance being commanded through the letter rogatory process? and (c) Do employers have any rights under Chilean law to ask their employees or agents to do work-related tasks such as attend a deposition via video or telephone conference?

3. Based upon the applicable statutory and case law of Chile discussed below, it is my opinion to a reasonable degree of professional certainty that:

(a) There is no express prohibition under Chilean law for taking testimony in a case where foreign jurisdiction is applicable, or related with a case before a foreign court. The legality of the procedure is a matter to be decided by that foreign court and law, not Chilean law. There is no provision under Chilean law that might be understood as preventing a plaintiff or its employees or agents in Chile from cooperating with the courts in the US voluntarily.

(b) Only if: (i) a Chilean court order is needed and that order must be executed in Chile; or (ii) the foreign Court expressly requests the deposition to be conducted before a Chilean Court of Law, then the rogatory letter process is required.

This would be in the case of a witness that must be compelled by subpoena to testify, but not in the situation of a witness that voluntarily appears or is directed by his employer to appear to testify.

(c) It is within the legal authority of a Chilean company to require its employees to cooperate with the US Court, including testifying before said Court in matters related to their employment in Chile.

4. The concept of jurisdictional function[2] (in the Chilean Legal System: *"ejercicio de la funcion jurisdiccional"*) granted exclusively to Chilean courts is related to the decision of judicial matters or the execution of a judicial order within the territory of Chile. In other words, in order to be considered within the scope of a "public order," a Foreign Court would have to request the execution of that function through a Chilean Court. Thus, it would be at the option of the foreign court to request that formality.

5. Effectively the execution of a subpoena from a US Court to a Chilean Court must be requested though the process of Rogatory Letter. However, if the involvement of the Chilean Court is not required by the foreign court, for instance, if the witness appears at the direction of its employer as opposed to needing to be compelled via a subpoena, there is no jurisdictional claim in the Chilean Legal System. In that case, the relevant procedural rules are subject to US jurisdiction.

6. The INTER-AMERICAN CONVENTION ON LETTERS ROGATORY[3], treaty applicable for cases involving the US and Chile, refers to matters of cooperation between the state parties to it, that is, if the involvement of a Chilean Court is needed, or the execution of a judicial order falls under the territory of the Chile. A voluntary declaration of a witness requires

---

2  Chilean Constitution 1980, Article 76

3  INTER-AMERICAN CONVENTION ON LETTERS ROGATORY -
   http://www.oas.org/juridico/english/treaties/b-36.html

neither the involvement of a Chilean Court nor the execution of an order (subpoena) from a US court.

7. The text in Spanish of article 2 of the Convention uses the words *"recepción"* (hearing before the Court) and *"obtención"* (to obtain) evidence, translated as "taking of evidence" used in the English version. Both concepts under Chilean Law imply acts before or by a Chilean Court. In Civil procedural law, "recepción de la prueba" implies a hearing in Court, and "obtención" compelling via a court order.

8. The CODE OF PRIVATE INTERNATIONAL LAW (*Código de Derecho Internacional Privado* known as Codigo de Bustamante) might be interpreted as a comprehensive authorization required to be granted under Chilean Law for judicial cooperation; however, under Public International Law, a treaty is applicable to the relation of two states if they are a party to that treaty. In the case of the Code of Private International Law, this treaty is not applicable to the relationship between the US and Chile, because the US is not a party. All arguments related to, or based on that treaty are not applicable to the instant case. The Chilean Supreme Court has repeatedly ruled that even in the case of the general principles contained in that treaty, and for the execution of foreign rulings, the provisions are not applicable to cases involving the United States.[4]



9. US law ought to decide if a witness located in Chile should be directed by its employer to appear for deposition to be taken remotely, either by phone or video conference. The rogatory letter is only intended to be the manifestation of judicial cooperation between states, and it is defined as a request to involve the judicial system of a different State in the process, when enforcement is required. If related with a voluntary act, it is not applicable.

10. The distinction between a willing witness deposition and a testimony ordered by the Court through a subpoena is relevant in this case. There is no express prohibition under Chilean law for taking voluntary testimony in a case where foreign jurisdiction is applicable, or related with a case before a foreign court. The legality of the procedure is a matter to be decided by that foreign court and law, not Chilean law.

11. Thus, if a court order (subpoena) is needed for the declaration of a witness, then in this case that order would have to be executed in Chile. Only then a rogatory letter would be required.

12. The Chilean public order and matters of jurisdiction, where there is a clear prohibition for the involvement of a foreign court without the proper formalities, applies when such a foreign court pursues the execution or enforcement of a ruling in Chile, which in the case of a witness declaration would be a subpoena.

13. Further, Chilean law does not prevent nor regulate in civil or commercial cases the use of video conference. This matter is only regulated in the rules of procedure for criminal cases.

---

4  See: *Gil Pulgar v González* (Chilean Supreme Court, 736-2007 [2009]); *Macchiavello v Vargas* (Chilean Supreme Court, 2081-2006 [2009]); *Valencia v Frazier* (Chilean Supreme Court, 2065-2007 [2009]); *Luna v Riveros* (Chilean Supreme Court, 5204-2006 [2008]); *Arriagada v Saez* (Chilean Supreme Court, 4335-2008 [2009]); *Darrel v Esquivel* (Chilean Supreme Court, 2660-2008 [2005]);

14. If a US Court allows for the use of telephone or video conference to hear the testimony of a willing witness, without the participation of a Chilean Court, there is no prohibition under Chilean law to allow that testimony without the need of a rogatory letter. Only if the foreign court requests the involvement of a Chilean court to take that testimony and to conduct the required oath of the witness, then the rogatory letter will be needed. In terms of jurisdiction, and for the purpose of procedural law, the testimony ought to be understood as being conducted before the foreign court, regulated by that foreign law, notwithstanding the remote nature of the physical presence of the witness. For this case, the relevant law is not Chilean law, but US law.

15. The Chilean Civil Procedural Code in Article 76 when referring to the letters rogatory needed for communications and requests from a foreign court, refers to "diligencias" which are clearly defined as procedures that ought to be conducted before a Chilean Court. This cannot be understood as a prohibition. A prohibition must be expressly stated by the law. Further a prohibition must be interpreted restrictively, and it is not allowed to extend the scope of that prohibition via analogy or to extend the scope of the specific situation in how it ought to be applied in any way. The article would apply if there is an official communication from a foreign court, but it cannot be interpreted as being the only way to depose a voluntary witness in Chile.

16. The use of phone or video conference to take testimony of a willing witness in Civil cases without the involvement of a Chilean Court is a common practice in Chile, not only in cases involving US Federal courts, but courts all around the world. For example in the case *Villegas Duran v. Arribada Beumont*, United States District Court for the Southern District of NY, the Court authorized the deposition of witnesses and expert witnesses in Chile via video conference. I personally participated in coordinating with the New York Court the technical requirements for the video conference used for the witnesses to be deposed from Chile. There was no involvement of the Chilean court required, even though the U.S. Court was directly addressing the issue of the rights of the parties involved under the Hague convention to have the matter adjudicated before a Chilean court and not a U.S. court.

17. Chilean Law allows employers to request the worker under extraordinary circumstances to perform tasks not related with the normal functions of the worker's contract. The Labor Code does not have an express provision for exceptional cases, nor situations that do not refer to permanent changes. Under Chilean Law and legal principals, where the law is silent, if something is allowed in the broadest case, it ought to be understood to be allowed in the narrowest case. In this case, the rule would be if the employer is allowed under the law to change permanently an employee's tasks under normal circumstances, the employer is allowed to request the change of task under particularly extraordinary circumstances. Thus, the employer may at their option compel a worker to perform a duty or task not related with his or her normal employment contract in special circumstances.

18. If the individual employee refuses to testify, it is within the power of the Chilean company to sanction that employee within the restrictions of Chilean employment law for failing to perform a job requirement. That is a matter for Chilean law or the company to deal with in Chile, but it is within the legal authority of the Chilean company to require their employee to cooperate with the U.S. court in matters related to their employment in Chile. Also, if the company in Chile terminates their employment for cooperating with the courts in the US, they would be in violation of Chilean law. In all cases, the employee is fully within their rights to

voluntarily testify either as an employee or as a private citizen. Thus, it is at the option of the company in Chile to compel their employee to cooperate with the court.

19. Therefore, it can be concluded that there is no prohibition under Chilean Law in regards to an employer requesting an employee, as a condition of their employment, to be deposed as a witness in a court in the United States, independently of any formal legal procedure within a Chilean court.

Further affiant sayeth naught.

**ZANDRA XIMENA VALENZUELA DELGADO**

**Chilean ID 9.384.538-2**

FIRMÓ ANTE MÍ: Doña ZANDRA XIMENA VALENZUELA DELGADO, cédula de identidad Nº9.384.538-2.- Llanquihue, 28 de septiembre de 2012.- emb

Macarena Constanza Molina Cortés
NOTARIO SUPLENTE