## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE LUIS CALDERON<br><br>               Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br>               Defendant. | Case No. 1:11-cv-00386-EJL-MHW<br><br>**ORDER ON PLAINTIFF'S<br>SECOND MOTION TO COMPEL** |

Pending before the Court is Plaintiff's Second Motion to Compel and Motion for Rule 37 Sanctions. (Dkt. 34). Having reviewed the parties' submissions on this matter (Dkts. 34, 34-1, 40, 40-1 though 40-5, and 42), and having entertained oral argument on October 3, 2012, the Court hereby enters the following Order.

## BACKGROUND

This is a case in which Plaintiff, Jose Luis Calderon, seeks recovery against Experian Information Solutions Inc. (hereafter "Experian") for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* This is the second time in several months that the case has come before the Court on discovery matters. The Court will therefore not engage in an extensive discussion of the facts giving rise to this case, which are set forth generally in the Court's previous Order on Plaintiff's first Motion to Compel (Dkt. 25), but will turn

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 1**

immediately to the matters at hand.

## DISCUSSION

### A.  Depositions of Witnesses in Chile

The parties' most significant area of disagreement, and the one which will have the greatest impact on the timely progression of discovery in this case, concerns the process by which certain witnesses who are located in Chile can be deposed.  Plaintiff's counsel wishes to take the depositions of several individuals who worked on Plaintiff's file and who, beginning in 2008, processed several of the numerous requests that he made to Experian to have incorrect information removed from his credit report.  The individuals who processed Plaintiff's requests are known as "dispute agents," and all, or most of them, were employees of Experian Services Chile, S.A. ("Experian Chile" or "the Chilean entity"), which is located in Santiago, Chile and is the Defendant's sister corporation.   Though some of these individuals have apparently left Experian Chile in the intervening years, Plaintiff's counsel wishes to depose three of its current employees.  Experian contends that the only way to go about deposing these individuals is by means of the "letters rogatory" process, which would essentially require Plaintiff to file a new lawsuit in Chile, hire a Chilean attorney, and take evidence according to the customs and practices of Chilean courts.  This would mean, among other things, that a Chilean judicial officer, rather than Plaintiff's attorneys, would conduct the examination of the witnesses. Plaintiffs have estimated that if they are forced to go through this process, it would consume over a year.

Experian's argument as to why these depositions must proceed according to Chilean

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 2**

law rather than the Federal Rules of Civil Procedure has several components to it.    First, Experian contends that the dispute agents in question are not "directors, officers or managing agents" of Experian such that they would be subject to deposition via notice, as opposed to subpoena.  Next, Experian contends that although a subpoena would be available to secure the deposition testimony of witnesses who are not "officers, directors, or managing agents," if they were located in the United States, such is not possible in this case because federal courts have no power to issue subpoenas in Chile to Chilean nationals.  For the Court to do so, Experian contends, would be to impermissibly tread on Chilean law and Chilean sovereignty.  A final component to Experian's argument emphasizes that the Chilean entity is a separate corporate entity that has not been named as a defendant in this lawsuit.

It is, of course, black letter law that only a party to a lawsuit may be deposed pursuant to notice as opposed to subpoena.  Pursuant to Rule 30 of the Federal Rules of Civil Procedure, a party may request the deposition of another party to the litigation by serving a notice of deposition upon that party. *Sugarhill Records, Ltd., v. Motown Record Corp.* 105 F.R.D. 166, 169 (S.D.N.Y. 1985).  If the party to be deposed is a corporation, the party seeking discovery may either designate an appropriate individual or describe the subject matter to be covered in the proposed deposition and allow the corporate deponent to designate its own spokesperson under Rule 30(b)(6).  *Id.*  However, if the party seeking discovery chooses to designate a particular witness, the person so designated must be an "officer, director, or managing agent" of the corporation.  *Id.*  If the person is not an "officer, director, or managing agent" of the corporation, the party seeking the discovery must proceed as

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 3**

though the person is an ordinary non-party witness and obtain a subpoena to secure the attendance of the deponent.

These same rules apply to witnesses located overseas.  If the witness sought to be deposed is not an officer, director, or managing agent of a corporate opponent, "the procedures of the Hague Convention or other applicable treaty must be utilized."  *Stone v. Morton Int'l.,* 170 F.R.D. 498, 503 (S.D. Utah 1997). *See also, In re Honda Motor Co., Inc. Dealership Litigation,* 168 F.R.D. 535 (D. Md. 1996); *EEOC v. Honda of America Mfg., Inc.,* 2007 WL 682088 (S.D. Ohio 2007). Since there is no argument in this case that the individual dispute agents are officers or directors of Experian, the resolution of this dispute turns on whether they qualify as "managing agents" for purposes of this litigation.

Though the phrase "managing agent" appears at several points in the rules pertaining to discovery, the framework for determining whether a particular individual qualifies for such status is "primarily a construction of decisional law concerned with ensuring that an organization is deposed through its proper representatives concerning the matters at issue in the litigation." *E.I. Dupont de Nemours & Company v. Kolon Industries,* 268 F.R.D. 45, 48 (2010). [1]  The Ninth Circuit has not, apparently, had occasion to address the standards under which a corporate employee will be determined to be a "managing agent."  However, courts around the country take largely consistent approaches, and consider the following factors:

---

[1]For example, Rule 30(b)(6) allows a corporation to designate a "managing agent" in response to a request to produce a witness who can speak to particular subject matter. Rule 32 allows the testimony of a "managing agent" to be used for any purpose at trial, and Rule 37 subjects a party to sanctions if a "managing agent" fails to appear for his or her deposition.

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 4**

"(1)whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual *respecting the matters involved in the litigation." Sugarhill Records,* 105 F.R.D. at 170 (emphasis in original). *See also, Kolon Industries,* 268 F.R.D. at 48-49 (discussing similar factors); *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,* 802 F.2d 1448, 1452, n.4 (D.C. Cir. 1986) (stating similar factors); *Afram Lines,* 159 F.R.D. 408, 413 (S.D.N.Y. 1994) (same). Another court has identified the factors as follows: "whether the corporation has invested the person with discretion to exercise his judgment; (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the opposing party." *Honda American,* 168 F.R.D. at 540-41. *See also,* 8A WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 2103.

Whichever variation of the test used, virtually all courts and commentators agree that the question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an ad hoc basis, considering the facts of the particular case. Further, at least where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements, the third factor, i.e. the

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 5**

witness's likely "identification with the interests of the employer"--is said to be the "paramount test." *See, e.g., Kolon Industries,* 268 F.R.D. at 49; *Honda American,* 168 F.R.D. at 541; *Boston Diagnostics Development Corp, Inc. v. Kollsman Mfg. Co.,* 123 F.R.D. 415 (D. Mass 1988); *Independent Productions Corp. v. Loew's Inc.,* 24 F.R.D. 19, 25 (S.D.N.Y. 1959); FPP § 2103.[2]

Moreover, while the burden is on the party seeking the discovery to prove that the potential witness is a managing agent of the corporation, this burden is a modest one, and at least at the discovery stage, all doubts are to be resolved in favor of the party seeking the depositions. *See, e.g., Afram Lines*, 159 F.R.D. at 413-14; *Sugarhill Records*, 105 F.R.D. at 170; *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 97 (S.D.N.Y. 1968); *Malletier v. Dooney & Bourke, Inc.,* 2006 WL 3476735 at * 14 (S.D.N.Y. 2006); *Boss Mfg. Co., v. Hugo Boss, AG,* 1999 WL 20828 (S.D.N.Y. 1999). This is particularly true where the party seeking discovery has had less than complete discovery on the issue of the witness's status within the corporation. *See id.,* at *4; *Afram Lines,* 159 F.R.D. at 413-14. Thus, courts have concluded

---

[2]The cases Experian submitted in oral argument do not support the idea that some other aspect of the test is paramount. *Luther v. Kia Motors,* 2009 WL 1727909 at * 3 (W. D. Pa. 2009) does state that the key element is the amount of discretion invested by the corporation in the particular witness, and whether he or she acts in superior or an inferior capacity. However the *Luther* court was relying on another case that discussed the efficacy of service of process on a corporation under Rule 4. *See, Fuiun Jiao v. First Intern. Travel., Inc.,* 2004 WL 1737715 (S.D.N.Y. 2004). Different considerations govern the question of whether an employee is authorized to accept service of process on behalf of a corporation, and for this reason the Court is not persuaded by the reasoning of the *Kia Motors* case. The Court has also reviewed the other case Experian provided to the Court during oral argument, and finds it to be so factually different from the case at bar as to be of little help. *See, Libbey Glass v. Oneida, Ltd.,* 197 F.R.D. 342 (N.D. Ohio 1999).

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 6**

that if there is at least a "close question" as to the managing agent status of a potential witness, doubts should be resolved in favor of allowing the deposition, with the final determination of whether the agent has the ability to bind the corporation to be left for trial. *See id.,* 159 F.R.D. at 413-414; *Sugarhill Records,* 105 F.R.D. at 171; *EEOC v. Honda of America, Inc.,* 2007 WL 682088 (S.D. Ohio 2007); *Boss Mfg. Co.* 1999 WL 20828 at * 3.

In this case, the parties have presented the Court with almost no information as to the status of the individual dispute agents within Experian Chile or within the overall corporate structure of the related Experian entities. Plaintiff's failure to do so may be due at least in part to his ongoing discovery disputes with Experian. Experian, on the other hand, did little more than to assert that the individuals in question cannot possibly qualify as managing agents because of their status as low-level or entry-level employees.[3] Though there is some authority for this proposition,[4] a roughly equal number of cases have concluded that employees not specifically designated as "managers" may indeed qualify as "managing agents" for purposes

---

[3]At oral argument, Experian's counsel asserted that it was not until receiving Plaintiff's reply brief (Dkt. 42), that Experian realized that Plaintiff would claim that the dispute agents were "managing agents." It therefore submitted additional post-hearing argument on the subject as well as a brief job description for dispute agents at the Chilean entity, and has requested leave to file a sur-reply on that subject. (Dkts. 48 & 50). The argument that the dispute agents were managing agents is something that Experian could easily have anticipated, particularly because many of the cases it cited in its response brief discussed at length the tests for determining managing agent status. Since this is a matter that could have, and should have, been addressed in the response brief, the Court will strike Experian's post hearing submissions, (Dkt. 48 & 50) to the extent that they do more than indicate which dispute agents are currently employed by the Chilean Entity. It will also deny the request for leave to file a sur-reply (Dkt. 50), and strike Plaintiff's own post-hearing brief. (Dkt. 49).

[4]*See, e.g., Kolon Industries,* 268 F.R.D. at 53; *Luther v. Kia Motors* at *3.

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 7**

of the deposition rules, where their duties and activities are closely linked with the events giving rise to the lawsuit.

In *Tomingas v. Douglas Aircraft,* for example, the Court considered the question of whether two engineers who had investigated the site of an airplane crash were "managing agents" of the corporation that had directed them to conduct the investigation.  The court concluded that they were, observing:

> The term 'managing agent' should not be given too literal an interpretation ***but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority  respecting the subject matter of the litigation*.'** . . . This Court concludes, therefore, that although [the engineers] may not be 'managing agents' in the course of their everyday duties for the defendant corporation, ***they are 'managing agents' for the purpose of giving testimony regarding the accident investigation, a most relevant aspect of this litigation.*** Although the characterization of these two proposed deponents as 'managing agents' is not free from doubt, whatever doubt remains should be resolved in favor of the examining party.

*Id.* at 96-97 (emphases added).  Thus, the Court concluded that two engineers who did not have managerial authority in general, were nonetheless "managing agents"  for purposes of the obtaining their depositions.

*A.H. Bull Steamship Co, v. Kolb,* 31 F.R.D. 252 (E.D.N.Y. 1962), was a wrongful death case that arose from the collapse of a ramp or bridge over which the decedent had been driving a fork-lift truck.  Plaintiff sought to depose an individual, Gierl, who had received the bids for the allegedly faulty bridge project and who had the authority to authorize work under the contract.  The defendant sought to block the depositions, arguing, much as Experian does

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 8**

in this case, that Gierl was not its managing agent because he "functioned within the framework and under the limitation of higher authority." *Id.,* 31 F.R.D. at 254. The Court concluded otherwise, explaining that a liberal and practical interpretation of the discovery rules justified the conclusion that Gierl was a managing agent, because that question should be largely dependent upon "the functions, responsibilities, and authority of the individual involved *respecting the subject matter of the litigation." Id.* (emphasis added). Similarly, the question in *Sugarhill Records, supra,* was whether an employee who had negotiated certain contracts and "side clearances" that were the subject of the litigation could be deposed as a managing agent of her corporate employer. The defendant asserted that the individual in question was merely an employee, and that she was required to follow certain established policies while negotiating the clearances. The court, however, concluded that because she was the sole employee involved in and with knowledge of the events giving rise to the lawsuit, she could be considered a managing agent for purposes of obtaining her deposition testimony. *Sugarhill Records,* 105 F.R.D. at 171.

The above authorities persuade the Court that there is at least a "close question" as to whether the individual dispute agents are "managing agents" of Experian for purposes of this litigation. As the above cases make clear, it is not so much the title or status of an individual within the corporation, but his or her duties and responsibilities respecting the subject matter of the litigation that is important. Even accepting Experian's characterization of these employees as "entry level," the fact remains that they were the individuals who were charged

**ORDER ON PLAINTIFF'S SECOND MOTION TO COMPEL, Page 9**

with handling Plaintiff's disputes, and they are therefore the only people who might have information about what was actually done, as opposed to simply what Experian's policies and procedures theoretically required. That credit reporting companies are required by federal law to ensure the maximum possible accuracy of credit reports is another factor in this calculus. Statutory duties are statutory duties; that they may be performed by subordinate employees is not determinative.   Further, the factor which many courts have described as "paramount" also cuts in favor of allowing the depositions, because there is no reason to suppose that Experian Chile's Chilean employees would identify with a plaintiff half a world away, as opposed to the corporation which provided them with their livelihood.[5]  Finally, the Court is concerned that Plaintiff has not had complete discovery into the status of these agents or the amount of discretion that they possess. For all these reasons, the **currently employed** dispute agents may be considered "managing agents" for purposes of taking their depositions, with the final determination as to whether they can bind Experian on any particular issue to be made at trial.

### 2.     Chilean Sovereignty Poses No Bar to Taking the Depositions Via Notice

Because the employees in question may be deposed via notice as managing agents of Experian, there is no need for the Court to issue a subpoena and thus, concerns over Chilean

---

[5]The declaration of Xandra Valenzuela Delgado also establishes that under Chilean law, giving testimony in a case arising from the employee's activities while on the job would be considered a duty within the scope of the employment relationship.  Thus, the Court also concludes that current employees of Experian Services, Chile, can be relied upon to give testimony.

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 10**

judicial sovereignty are not implicated. The cases discussed above are in accord on this point. Nevertheless, it is worthwhile to emphasize that this case involves a claim by a United States plaintiff for violation of United States laws, and that the Plaintiff had no idea, until well into the litigation, that a Chilean corporation was processing his disputes.  Given these facts, the Court finds that the sovereign interests of the United States would be infringed were Plaintiff required to proceed with depositions of Experian's key actors according to the very different, and much more restrictive, customs of Chilean law.

These concerns were discussed at length in *Honda American Motors*, a case very similar to the one at bar. There is no need to belabor the points the *Honda* court made here, except to point out that this Court shares these concerns.  *See, Honda American Motors,* 168 F.R.D. at 537-540.  Like the *Honda* court, this Court also believes that it would be "patently unfair" to "constrain [Plaintiff's] ability to discover facts necessary to make his case" by allowing Experian's witnesses to be deposed in Chile according to the much more restrictive Chilean rules, while still allowing Experian "free reign to discover all relevant facts pursuant to the Federal Rules of Civil Procedure."  *Id.* at 539-40.  The dispute concerns a federal statute–the Fair Credit Reporting Act–that is designed to protect the rights of consumers doing business in the United States, and that, like the antitrust laws at issue in *Honda American*, is in its own way critical to the smooth and fair functioning of the modern economy.  And, unlike the plaintiffs in some of the cases upon which Defendant relies, Plaintiff is not attempting to localize a matter in which the United States has at best tangential interests.  *See,*

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 11**

*e.g. Ski Train Fire of November 11, 2000*, 2006 WL 1328259 (S.D.N.Y. 2006).  Simply put, Chilean interests are not implicated here in the same way that those of the United States are.

### 3.      Non Party Status of Experian Services Chile, S.A.

Nor does the non-party status of Experian Chile pose a barrier to conducting the depositions of the individual dispute agents via notice and according to the Federal Rules of Civil Procedure.  Based upon the Defendant's representation that the Chilean entity was its "sister corporation" owned by the same parent, the Court previously concluded that the two corporations were sufficiently linked to treat them as the same for discovery purposes. In any case, it is not necessary for Plaintiff to establish that an employment relationship *per se* exists between the dispute agents and Experian in order for the dispute agents to be considered the Experian's "managing agents."   Counsel for Experian explained at oral argument that "the rules that govern how a dispute is investigated are exactly the same whether they're being processed in Allen, Texas or in Chile."  He further explained that whether a particular dispute is handled in Allen Texas, or in Chile is purely a function of workload.   Clearly, the dispute agents employed by the Chilean entity are acting for and on behalf of the American corporation when they process disputes originating from the United States.   Again, the determinative factor is not the deponent's title or designation within the corporation, but the tasks performed respecting the litigation and the likelihood that their interests would be aligned with the corporation as opposed to with the plaintiff.

For all these reasons, the Court will order Experian to produce for deposition via

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 12**

notice, three individuals of Plaintiff's choosing from the list of employees who are current employees either of Experian or of the related Chilean entity.

**4.      Location of Depositions**

The final question, then, is where these depositions are to occur. Courts have wide latitude over the location of depositions. *See, Hyde & Drath v. Baker,* 24 F.3d 1162, 1166 (9th Cir. 1994).  Though cases such as *Honda American* stand for the proposition that foreign nationals who are managing agents of a corporate defendant may be required to travel to the United States to attend a deposition, in this case, Plaintiff has not requested such an order, but has instead proposed that the witnesses be deposed in Chile, via teleconference from the United States.  Plaintiff has also submitted an affidavit of a Chilean legal expert, Xandra Valenzuela Delgado, who testifies that conducting a deposition, via notice as opposed to subpoena, on Chilean soil would not violate Chilean law.  Ms. Valenzuela Delgado also states that she has assisted in the organization of such depositions in the past. (Dkt. 34-1).  Experian has not identified any aspect of Chilean law that would preclude the taking of these depositions in Chile, aside from their foundational argument that it was necessary to proceed via the letters rogatory process.   *Cf., In re Outsidewall Tire Litigation,* 267 F.R.D. 466 (E.D. Va. 2010). Courts have also recognized a presumption that a foreign corporation's managing agent depositions should be conducted at the corporation's principal place of business. *Id.* at 473; *Kolon Industries* at 54-55; *Rundquist v. Vapiano SE,* 277 F.R.D. 205 (D.D.C. 2011). Considering the burden on the individual dispute agents that would result from being required

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 13**

to attend a deposition within the United States, the Court agrees that Santiago, Chile is the preferable location for these depositions.  Therefore, the Court will order Experian to make the Chilean dispute agents whom Plaintiff wishes to depose available for deposition at a mutually agreed-upon location in Chile, within 30 days of the date of this Order.  Again, this ruling is for the purposes of discovery only, and does not preclude Experian from arguing at trial that the individual agents do not have the authority speak for it as to any particular topic, should that turn out to be the case.  However, the fact that the ultimate ruling on managing agent status will be left for trial shall in no way restrict Plaintiff's ability to inquire as to any subject deemed appropriate under the Federal Rules of Civil Procedure.

**B.    Other Disputes**

**1.    The Decision to Open NCAC Chile**

Next, Plaintiff asks for an order compelling Experian to produce certain information related to its decision to open a division in Chile.  Related to this is a request to depose several high-level Experian employees who were involved in the decision to open the Chilean division.  This information does not appear to be reasonably calculated to lead to the discovery of admissible evidence, even granting Plaintiff's need for information that would go to whether Experian acted willfully in addressing Plaintiff's complaints, or in crafting the policies which guided the decisions the dispute agents made on his file. To the extent he has not already done so, Plaintiff may conduct discovery into specific corporate policies, both in the United States and Chile, that may have affected the decisions made on his file, and he may

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 14**

explore issues related to the level of control that Defendant exerts over the Chilean entity when it comes to the fulfillment of statutory duties.  But allowing broad based discovery into the decision to open a branch or division in Chile would be to allow inquiry into corporate matters that are several orders of magnitude removed from the issues in this case.

> ## 2.     Information About the Operations of NCAC Chile

Plaintiff also seeks additional information about the operations of NCAC Chile.  These particular disputes stem from 30(b)(6) depositions taken previously, pursuant to the Court's instructions.  Plaintiff argues that Experian's witnesses were unwilling or unable to respond to certain lines of questioning, and seeks further discovery on this matter, and  sanctions for Experian's failure to properly respond.  Upon a review of these issues, the Court concludes that there is no basis for further discovery, and therefore no basis for sanctions.

Among other things, Plaintiff's 30(b)(6) deposition notice asked for "all the payments made to Experian Services Chile, S.A. for work done by Experian Services Chile, S.A. on any consumer dispute made by Plaintiff to Experian Information Solutions, Inc."  An Experian employee by the name of Scott Yamanaka testified about this issue, and referenced  various invoices, spreadsheets, and system reports with "drill-down" capabilities that show in specific detail the costs associated with NCAC-Chile.  Plaintiff's Brief at p. 7.  Mr. Yamanaka's testimony on these matters was quite extensive, and the Court is not convinced that further inquiry into sensitive financial matters will lead to the discovery of admissible evidence.  It will therefore deny the motion with respect to further testimony about Deposition Topic

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 15**

Number 4.

The next issue concerns Request for Production No. 15, which asked Experian to produce "all cost benefit analysis regarding expenditures necessary for compliance with 15 U.S.C. § 1681i or the reinvestigation of disputed credit information."   The Court previously ordered Experian to produce responsive materials specific to NCAC Chile.  Experian has stated that neither its American branch nor its Chilean branch maintain such documents. Plaintiff, however, maintains that Mr. Yamanaka's testimony disclosed that responsive information actually does exist.  (Plaintiff's Brief at p. 8). Upon review of the relevant deposition testimony, it appears that Mr. Yamanaka was referring not to an analysis directed specifically to the costs and benefits of FCRA compliance, but rather, to an analysis performed on the costs and benefits of opening a second NCAC in Chile.  (Yamanaka Depo. p. 54). As previously indicated, the Court will not allow broad inquiry into the reasons for opening NCAC Chile.  The motion is therefore denied with respect to RFP 15.

The third issue related to NCAC Chile arises under RFP 13, in which Experian was asked to "produce documentation of all programs under which Defendant's employees or agents who communicate with consumers or handle any aspect of consumer disputes are provided any bonus, pay, or other incentive." (Dkt. 34-3 at p. 13).  As with RFP 15, the Court previously ordered Experian to provided responses to the request that were specific to the Chilean entity. According to the Plaintiff, Experian responded that "it did not have any plans that directly or indirectly rewarded efficiency over accuracy."  Plaintiff's Brief at p. 9.  As an

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 16**

initial matter, is not clear from the materials provided to the Court whether Experian has fully responded to these requests for production.   The request did not ask only for information about incentive plans "that rewarded efficiency over accuracy," it asked for information on compensation programs **generally.**   Accordingly, the Court will order Experian to fully responsd to RFP 13, to the extent it has not already done so.   The responsive documents should, of course, cover both the American and Chilean entities.

Beyond what was addressed in the previous paragraph, the Court will not order any further production on this matter.  Plaintiff contends that Experian's statement that it "did not have any plans that directly or indirectly rewarded efficiency over accuracy" was false, in light of the deposition testimony of Experian employee Teresa Iwanaski.  However, upon review of the testimony at issue, the Court agrees with Experian that there may have been some confusion as to whether the questions were addressed to practices at Experian's Texas NCAC, or to the Chilean entity.  More importantly, Ms. Iwanaski also explained that while Experian might terminate an employee for being wholly unproductive, short of such a situation, it does not compensate its employees based on the volume of disputes they process. Thus, there is no basis that the Court can discern for concluding that Experian has been hiding information on this topic, and no basis for ordering Experian to produce any other information related to it, other than as set forth above.  Thus, the Court will grant in part and deny in part

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 17**

the Motion to Compel with respect to this item.[6]

### 3.     Legal Interpretations

Finally, Plaintiff asks the Court to order Experian to produce information on "any legal interpretations on which Experian intends to rely as a defense to any claim in the instant case. For each such interpretation, please identify, authenticate, describe and explain with specificity how it was determined that such interpretation would be relied upon here." Plaintiff's arguments on this point are somewhat convoluted, but essentially, he argues that such information is necessary in order for him to prove that Experian acted willfully.  As the request is drafted, however, it merely seeks to obtain information on what Experian's defenses will be at trial.   Clearly, the parties are entitled to know the substance of the other side's theories and defenses well before trial, and the Court will not tolerate sandbagging. Therefore, if Experian has a legal theory or interpretation of the FCRA that it intends to rely upon in defense of this case in order to show, for example, that it relied on the advice of counsel and acted in good faith, it must disclose the substance of those theories to the Plaintiff well in advance of trial.  Indeed, the disclosure of witnesses and documents relevant to a party's defense is mandated by Rule 26(a)(1).   Beyond those matters, the request is over-broad, and treads on matters which would be covered by the attorney-client privilege. Thus, the motion will be denied with respect to this item.

---

[6]Also, Plaintiff may inquire as to compensation issues at the depositions of the individual dispute agents.

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 18**

## ORDER

1.     For the reasons set forth above, Plaintiff's motion is hereby **GRANTED IN PART and DENIED IN PART**, according to the discussion set forth above.

2.     With respect to the depositions of the dispute agents Experian is directed to make three individuals of the Plaintiff's choosing, who are currently employed by either Defendant or the Chilean sister entity, available for deposition via notice within **thirty (30)** days of the date of this Order.  To the extent that these witnesses are Chilean nationals, the depositions are to take place at a mutually agreed upon location in Chile.

3.     To the extent that they go beyond matters specifically requested by the Court at oral argument or in Docket Entry Order 45, the parties' post-hearing submissions (Dkts. 48, 49, and 50), are hereby **STRICKEN.**

**DATED: October 31, 2012.**

**Honorable Mikel H. Williams**
**United States Magistrate Judge**

**ORDER ON PLAINTIFF'S SECOND  MOTION TO COMPEL,  Page 19**