Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
Geoff B. McCarrell, Esq.
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com
Email: gmccarrell@sgoldsmithlawoffice.com

Leonard A. Bennett (Admitted *Pro Hac Vice*)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **JOSE LUIS CALDERON**, ) | |
| ) | CASE NO.: 1:11-CV-00386-EJL |
| Plaintiff, ) | |
| ) | JUDGE LODGE |
| v. ) | |
| ) | |
| **EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC.**, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE TO EXPERIAN'S OBJECTIONS TO
ORDER ON PLAINTIFF'S SECOND MOTION TO COMPEL**

**I.     INTRODUCTION.**

This lawsuit centers around a claim that Defendant, Experian Information Solutions, Inc. ("Experian"), did not conduct a "reasonable reinvestigation" as is guaranteed to Plaintiff by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[1]

Through the course of Plaintiff's multi-year problem involving a highly derogatory public record item wrongly being included with his otherwise impeccable credit,[2] more than a dozen individual dispute agents handled Plaintiff's disputes with Experian. Plaintiff's request to depose some of these dispute agents has sparked a several-month long discovery battle which has resulted in two (2) separate opinions of the Honorable Mikel H. Williams, ultimately ordering Experian to produce three (3) currently-employed dispute agents of Plaintiff's choosing for deposition. *See Order on Plaintiff's [First] Motion to Compel*, dated June 18, 2012 [Doc. 25]; *Order on Plaintiff's Second Motion to Compel*, dated October 31, 2012 [Doc. 51].

Experian has refused to do so.[3] Experian wants to force Plaintiff to accept the testimony of a specially-trained "legal and compliance specialist" who has testified about what

---

[1] "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate[.]" *See* 15 U.S.C. § 1681*i*(a)(1). The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681*i*(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination[.]" *See* 15 U.S.C. § 1681*i*(a)(3)(B).

[2] Notably, Experian no longer disputes that the public record judgment that was "verified" by Experian as properly included in Plaintiff's credit report and which Experian subsequently refused to reinvestigate, actually belongs to someone other than Plaintiff.

[3] Experian's over-the-top protestations to helping facilitate the depositions of these fact witnesses calls to mind the famous Shakespeare quote: "[Experian] doth protest too much." Why is Experian fighting so hard to prevent

2

Experian's individual dispute agents are *supposed* to do when handling disputes, but who admittedly could not explain what *was* (or was not) actually done each and every time Plaintiff disputed the false information that remained in his credit report. This issue has been briefed and re-briefed, argued and re-argued, with two (2) careful and lengthy opinions outlining the factual and legal bases to order Experian to produce these witnesses for deposition. As will be shown in detail below, nothing in Experian's latest effort to re-hash the matter warrants setting aside Magistrate Judge Williams' Orders on point.

II.  **LAW AND ARGUMENT.**

   A.  **The Magistrate Judge's Determination About The "Sufficiently Close" Relationship Between Experian and Its Chilean Sister Company Is Not Clearly Erroneous.**

   Experian's attack on Magistrate Judge Williams' *Order on Plaintiff's Second Motion to Compel* [Doc.51] is rooted largely on the seemingly deliberately-designed theory that Experian and its sister company, Experian Services Chile, S.A. ("Experian Chile"), are two wholly independent companies with little nexus between them. *See* Experian's Objections [Doc. 54] at 6-8. Experian carefully crafts its attack, pressing form over substance, *i.e.*, arguing that the Order "should be set aside for its failure to cite any legal authority or evidence[,]" *see Id.* at 6, yet never provides any factual support to refute the underlying conclusion that Experian and Experian Chile are inextricably connected with respect to the operation of Experian's dispute center in Santiago, Chile.

---

(continued…)

Plaintiff from deposing the only individuals who might have information about what was actually done with Plaintiff's disputes? Especially considering that Experian has offered to help arrange the deposition of the one dispute agent who is located in Experian's Allen, Texas dispute center, its refusal to do so with respect to the two (2) dispute agents in Experian's Santiago, Chile dispute center is particularly suspicious.

As a preliminary matter, Experian argues that "[t]he issue of whether EIS and ESC should be treated as the same" was never addressed prior to either ruling made by Magistrate Judge Williams. That simply is not true. In fact, Experian dedicated an *entire section* of its opposition to Plaintiff's first motion to compel to "Information Regarding Non-Party Employees." *See* Experian's Opposition [Doc. 16] at 13-14. Experian tried (as it does now) to justify withholding information relative to its dispute agents, arguing that they "are employed by a non-party corporation." *Id.* at 14.

In his reply, Plaintiff pointed out the inherent dishonesty in this deliberately-created distinction:

> Every one of Plaintiff's fourteen (14) disputes of the false information in his ***Experian*** credit report was addressed to ***Experian*** at an address in Allen, Texas. Plaintiff would systematically receive a responsive communication with ***Experian's*** logo in the corner, and usually reminding Plaintiff that he could contact Experian at its United States website, www.***experian***.com. Nevertheless, and despite the repeated use of the phrases such as "***our*** investigation" and "description of how ***we*** verified the information," Experian claims it cannot produce a single piece of information about the individual who processed any of these communications[.] * * *
>
> There is something inherently dishonest about Experian's effort to hide the *only* information about how, when and why Plaintiff's disputes were handled as they were, and the details of by whom, behind a corporate shell game (emphasis in original).

*See* Reply Memo. in Support of Plaintiff's [First] Motion to Compel [Doc. 17] at 8-9.

Following the parties' lead, Magistrate Judge Williams then inquired and confirmed at the first motion to compel hearing that Experian and Experian Chile are, in fact, sister corporations. His ruling followed, finding that the two should be treated "the same for purposes of the present discovery dispute." *See* Order [Doc. 25] at 4.

The record in the case *sub judice* is replete with evidence confirming that Experian controls the dispute center in Santiago, Chile in all material respects:

- ➢ Experian considers itself as having 300-400 agents to handle consumer disputes, with 100-150 of them located in the dispute center in Texas ("Texas

4

  NCAC"), and 200-250 located in the dispute center in Santiago, Chile ("Chile NCAC"). *See* Deposition of Teresa Iwanski ("Iwanski Depo.," relevant excerpts of which are attached hereto as Exhibit 1), at 41, 111.[4]

➢ The two NCACs have been set up with the same organizational structure, *see* Iwanski Depo. at 111, and there is a single Experian employee, Lee Lundy, who makes frequent trips to Chile to oversee the operation there. *Id.* at 113.

➢ When looking to hire employees for its Chilean NCAC, a job ad is posted to the generic www.experian.com website. *See* Deposition of Scott Yamanaka ("Yamanaka Depo.," relevant excerpts of which are attached hereto as Exhibit 2), at Depo. Ex. 1 (a copy of which is attached hereto as Exhibit 3).

➢ Experian employees are responsible for the training of *all dispute agents* irrespective of whether they are in Texas or Chile, and an identical training manual – a manual that was created by Experian – is used to train employees in both locations. *See* Iwanski Depo. at 80-88, 122.

➢ The two NCACs share the same computer systems with information flowing interchangeably between the two. *See* Iwanski Depo. at 110.

➢ The policies and procedures to be employed in both NCACs are identical, and have been created by Experian. *See* Iwanski Depo. at 122.

  Additionally, the accounting operations of Experian and Experian Chile are shared and jointly handled by *yet another* affiliated Experian entity. When compelled to produce a witness about the relationship between Experian and Experian Chile, and "any cost or payment arrangement(s) by and between any Experian entities for reinvestigation done by the NCAC in Santiago, Chile[,]" *see* Amended Notice of Rule 30(b)(6) Deposition at Subjects 4 and 5, Experian put forth an individual, an employee of Experian Services Corp., who testified that he oversees the accounting for both Experian and Experian Chile:

  Q. What is the full name of your employer?
  A. Experian Services Corp.

  Q. That is the entity that is on your paycheck, right?
  A. I believe so.

---

[4] It cannot go unnoticed that when opening a "second office" to handle its disputes, Experian continued to call this dispute center a "*National* Consumer Assistance Center" even though it was placed in Chile.

> Q. Have you ever been employed by Experian Information Solutions, Inc.?
> A. No.
>
> Q. So how is it that you became the deposition designee for an entity for whom you are not employed?  * * *
> A. So through my capacity, I do the accounting for Experian Information Solutions as part of what we call the North American Region which includes that entity.
>
> Q. What exactly does Experian Services Corp. do?  * * *
> A. It provides most of the corporate functions for the North American Region, and it does the accounting.

*See* Yamanaka Depo. at 6-7.  Mr. Yamanaka has direct oversight for "consolidating Santiago operations into the North American Region packages that in turn, go to our parent company in the U.K." *Id.* at 24.

Mr. Yamanaka also testified about how Experian Chile "invoices" Experian for the services performed under the parties' "Experian *Intra-*Company Services Agreement" which, notably, was signed on behalf of Experian Chile by an individual named Tony Reeves, who also happens to be the senior vice president of Experian's Consumer Services Group.  *See* Yamanaka Depo. at 7, 29-31; Yamanaka Depo. Ex. 2 (a copy of which is attached hereto as Exhibit 4).  In this regard, Mr. Yamanaka, as Senior Director of Accounting and Reporting, has direct oversight of Experian's "connection to our Shared Services Center in Santiago[,]" *Id.* at 22-23, and the creation of various spreadsheets detailing the Cost Centers for Experian Chile which are used to support the invoices to be paid by Experian.  *See Id.* at 34-36, 44, 48-49.

But perhaps the most compelling evidence that Experian controls the Chile NCAC is found in the testimony of Kim Hughes, a twenty-plus year employee of Experian's Texas NCAC and purported expert for Experian in this case, who testified unequivocally that Experian's dispute center is "one seamless operation" that just happens to be located in two different places:

> Q. And today, unlike in 2000, Experian also sends some of the consumer assistance work to Experian Chile and – to Santiago, Chile, correct?

6

> A. Well, yes, I understand that – that legally it's a separate entity. But to someone like myself, *it's just an arm. It's just an extension of the National Consumer Assistance Center. So [a dispute handled in Chile is] still handled by the National Consumer Assistance Center.* * * *
>
> Q. Well, you've just suggested that – even though its technically a [separate] legal entity, your – your claim is that – that your office would still have been able to maintain control over those Chilean employees or – or agents when they handle consumer disputes. And I'm asking why you think that's true.
> A. *Well, I know it to be true because they operate under the same policies, procedures, they're trained exactly the same. It – it's a seamless operation. If we have meetings in Allen, the meetings are held with people from Santiago.*
> *Internally to people at Experian, there's no difference. It's one seamless operation; it's one seamless center.*
>
> Q. All right. Well, but there's different management, right? I mean, they – the people in Chile would take orders from different people than the – for example, the ACDV operator that would be working in Allen, Texas.
> A. Not necessarily, no.
>
> Q. What do you mean by that?
> A. Well, it – it – *the same leadership is in place.* I mean, there are some – I mean, the – *the head of the National Consumer Assistance Center in Allen, Texas, Lee Lundy, is the head of the National Consumer Assistance Center arm in Santiago, Chile. The operations managers in Experian Allen are the operations managers who also control Experian Chile* (emphasis added).

*See* Deposition of Kim Hughes ("Hughes Depo.," relevant excerpts of which are attached hereto as Exhibit 5), at 24-26.[5]

In the face of all the foregoing evidence confirming that the two companies are incestuously intertwined, it almost rises to the level of deception for Experian to continue challenging Magistrate Judge Williams' determination that the relationship between itself and its sister company, Experian Chile, is "sufficiently close to treat them as the same for purposes of the present discovery dispute."

---

[5] Notably, Mr. Lundy is one of the individual executives whom Plaintiff requested to depose to clarify some of the very issues raised by Experian about the interrelationship between Experian and Experian Chile. Magistrate Judge Williams determined that such deposition was not relevant here and denied Plaintiff's request to compel his appearance. *See* Order [Doc. 51] at 14 .

B.  **A Determination That "Currently Employed Dispute Agents" May Be Considered "Managing Agents" For Purposes Of Discovery Depositions In This Instance Is Not Clearly Erroneous Or Contrary To Law.**

Experian's objection to Magistrate Judge Williams' decision to consider currently employed dispute agents "managing agents" for purposes of noticing them for deposition is rooted in the procedurally and substantively flawed argument that he "*erred in his analysis of the factors to be considered.*"  *See* Experian's Objections [Doc. 54] at 8.[6]

---

[6] Experian spends a considerable amount of time in its Objections arguing that the issue of whether the individual dispute agents are "managing agents" for purposes of a discovery deposition was raised for "[t]he first time" by Plaintiff in his reply brief and so, the Magistrate Judge should not have considered Plaintiff's arguments or authority in that regard or, in the alternative, erred in striking Experian's post-hearing submissions on point.  *See* Experian's Objections [Doc. 54] at 8-11.

As a preliminary matter, Experian's attempted justification for refusing to produce the individual dispute agents for deposition has changed multiple times throughout the course of this litigation. Originally, Experian withheld the fact that *every one* of Plaintiff's disputes was handled by agents in the Chile NCAC.  Only after Experian supplemented its original discovery responses (following a lengthy letter by Plaintiff and a required meet and confer conference), did Experian disclose the Chile NCAC role in this case, a disclosure which was accompanied by Experian's "these are non-party employees" argument.  When that line of defense was rejected by Magistrate Judge Williams in his original Order [Doc. 25], Experian went on the offensive, accusing Plaintiff of disregarding that Order by failing to wait until the Rule 30(b)(6) depositions were completed before he even broached the subject of scheduling the individual dispute agent depositions.  After Plaintiff pointed out that with the original discovery deadline approaching, it was necessary to at least discuss possible dates to proceed with such depositions if needed, Experian launched its "against Chilean law" argument, representing that the *only* way for a U.S. litigant to conduct a deposition of a Chilean national on Chilean soil was to proceed through the letters rogatory process. When Plaintiff offered to conduct the depositions via teleconference at the U.S. embassy, *i.e.*, on U.S. soil, Experian insisted all depositions of Chilean nationals needed to be conducted by Chilean court personnel *via* the letters rogatory process.  Plaintiff was ultimately forced to incur the considerable expense of hiring a Chilean law expert to show that Experian's representations in this regard were blatant fabrications.  *See* Declaration of Zandra X. Valenzuela Delgado ("Valenzuela Aff." a copy of which is attached hereto as Exhibit 6).  It was only *after* Plaintiff called Experian's bluff on that issue did Experian press its current theory that if the individual dispute agents are not deemed "managing agents," Plaintiff must issue a subpoena for their appearance and so, must proceed through the cost- and time- prohibitive letters rogatory process.

So for Experian to now attack Plaintiff for allegedly failing to brief the managing agent issue in his opening brief on the Second Motion to Compel is a bit disingenuous.  As is evident from Plaintiff's Memorandum in Support [Doc. 34], Plaintiff's motion centered on disproving Experian's representation that it is "against Chilean law" for any U.S. litigant to conduct a deposition of a Chilean national outside the letters rogatory process which was Experian's position at the time.

Moreover, in arguing that the Court should not have considered Plaintiff's arguments and authority and/or struck Experian's post-hearing submissions on the "managing agents" issue, Experian relies on authority that a court should not rely on "new arguments" presented in a reply brief.  *See* Experian's Objections [Doc. 54] at 10.  It is important to note in this regard that Experian does not actually suggest that the "managing agent" issue was a "new" issue; rather, Experian states that "[t]he first time ***Plaintiff*** presented the Court with his argument" was in his reply brief.  *Id.* at 8 (emphasis added).  Experian glosses over the fact that ***Experian*** raised the issue in its response brief. *See* Experian's Response [Doc. 40] at 8.  It is axiomatic that a party is permitted to respond to any and all issues raised in an opponent's submission, whether or not such issues were originally presented to the court by the plaintiff. Therefore, Magistrate Judge Williams acted within his discretion in refusing to consider Experian's post-hearing submissions.

8

As a procedural matter, the question here is not simply whether Magistrate Judge Williams "erred" in his determination as Experian suggests. A district judge may modify or set aside a magistrate's order only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 622 (1993). A number of courts have said that a ruling can be shown to be clearly erroneous only when it can be concluded that the challenged decision is not "just maybe or probably wrong; it must strike us with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). Experian does not even suggest that the Magistrate's Order approaches this standard.

Substantively, Experian's challenge that Magistrate Judge Williams "erred in his analysis of the factors to be considered" is equally flawed. "The law concerning who may properly be designated as a managing agent is sketchy." *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996) (quoting *Founding Church of Scientology, Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986)). "Largely because of the vast variety of factual circumstances to which the concept must be applied, the standard … remains a functional one to be determined on a case-by-case basis." *Webster*, *supra*, 802 F.2d at 1452. What is resoundingly accepted, though, is that "doubts about an individual's status as a 'managing agent,' at the pre-trial discovery stage, are resolved in favor of the examining party." *In re Honda*, *supra*, 168 F.R.D. at 540. Magistrate Judge Williams specifically discussed the authority stressing this fact:

> [W]hile the burden is on the party seeking the discovery to prove that the potential witness is a managing agent of the corporation, this burden is a modest one, and at least at the discovery stage, all doubts are to be resolved in favor of the party seeking the

> depositions. *See*, *e.g.*, *Afram Lines*, 159 F.R.D. 408, 413-414 (S.D.N.Y. 1994); *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 107 (S.D.N.Y. 1985), *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968); *Malletier v. Dooney & Bourke, Inc.*, 2006 WL 2476735 at *14 (S.D.N.Y. 2006); *Boss Mfg. Co. v. Hugo Boss, AG*, 1999 WL 20828 (S.D.N.Y. 1999). This is particularly true where the party seeking discovery has had less than complete discovery on the issue of the witness's status within the corporation. *See id.* at *4; *Afram Lines*, 159 F.R.D. at 413-14. Thus courts have concluded that if there is at least a "close question" as to the managing agent status of a potential witness, doubts should be resolved in favor of allowing the deposition, with the final determination of whether the agent has the ability to bind the corporation to be left for trial. *See id.*, 159 F.R.D. at 413-414; *Sugarhill Records*, 105 F.R.D. at 171; *EEOC v. Honda America, Inc.*, 2007 WL 682088 (S.D. Ohio 2007); *Boss Mfg. Co.*, 1999 WL 20828 at *3.

*See* Order [Doc. 51] at 6-7.

There are "several factors that generally are considered in making a case specific determination of a person's managing agent status: (1) the discretionary authority vested in the person by the corporation; (2) the employee's dependability in following the employer's directions; (3) whether the individual is more likely to identify with the corporation or the adverse party in the litigation; and (4) the degree of supervisory authority in areas pertinent to the litigation." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 48-49 (E.D. Va. 2010). "Of these factors, the third – the employee's identity of interests with his employer as opposed to the opposing party – is 'paramount.'" *Id.* "[T]he question of identity of interest is not merely one of how strongly these employees identify with [Defendant]. This facet of the test focuses on the extent to which they identify with [Defendant] *as opposed to [Plaintiff]* (emphasis in original)." *Id.* at 50.

Citing this and other authority, Magistrate Judge Williams acknowledged the general-acceptance that the potential witness's identification with the interests of the employer is said to be "paramount" to the determination:

> Further, at least where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements, the third factor, i.e., the witness's likely "identification with the interests of the employer" – is said to be the "paramount test." *See*, *e.g.*, *Kolon Industries*, 268 F.R.D. at 49; *Honda*

> *America*, 168 F.R.D. at 541; Boston Diagnostics Development Corp., Inc. v. Kollsman Mfg. Co., 123 F.R.D. 415 (D. Mass. 1988); Independent Productions Corp. v. Loew's Inc., 24 F.R.D. 19. 25 (S.D.N.Y. 1959); FPP § 2103.

*See* Order [Doc. 51] at 5-6.

As explained in his thorough opinion, Magistrate Judge Williams then concluded that it was appropriate to deem the currently employed dispute agents as managing agents for purposes of discovery depositions here:

> The above authorities persuade the Court that there is at least a "close question" as to whether the individual dispute agents are "managing agents" of Experian for purposes of this litigation. As the above cases make clear, it is not so much the title or status of an individual within the corporation, but his or her duties and responsibilities respecting the subject matter of the litigation that is important. * * * Further, the factor which many courts have described as "paramount" also cuts in favor of allowing the depositions, because there is no reason to suppose that Experian Chile's Chilean employees would identify with a plaintiff half a world away, as opposed to the corporation which provided them with their livelihood.

*See* Order [Doc. 51] at 8-9.

In so determining, Magistrate Judge Williams further acknowledged that Plaintiff is merely attempting to secure discovery of fact witnesses – witnesses who hold key information relevant to Plaintiff's claims.[7] First, Magistrate Judge Williams acknowledged the significance of this by commenting that "the final determination as to whether they can bind Experian on any particular issue [is] to be made at trial." *See* Order [Doc. 51] at 10. *See also Id.* at 14 ("Again, this ruling is for the purposes of discovery only, and does not preclude Experian from arguing at trial that the individual agents do not have the authority [to] speak for it as to any particular topic, should that turn out to be the case."). Second, Magistrate Judge Williams recognized that these individuals may be the *only* ones with the pertinent information:

> Even accepting Experian's characterization of these employees as "entry level," the fact remains that they were the individuals charged with handling Plaintiff's disputes, and

---

[7] Since these fact witnesses still work in the Chile NCAC, Plaintiff is not ethically permitted to approach them about their willingness to testify here.

11

> they are therefore the only people who might have information about what was actually done, as opposed to simply what Experian's policies and procedures theoretically require.

*See* Order [Doc. 51] at 9-10. This determination is supported by numerous instances in the record where Experian's Rule 30(b)(6) designee admitted she could only testify to what the individual dispute agents were *supposed* to consider when evaluating Plaintiff's disputes, not what they actually did or thought. *See*, *e.g.*, Iwanski Depo. at 172-173 ("Since I was not standing next to the agent that actually processed the piece of mail, I can't – I can't tell you whether or not the agent did that, but I can tell you that that's what they're trained to do.).

As is evidenced by the twelve-plus pages in his Order explaining the factual and legal bases for his determination, Magistrate Judge Williams put considerable thought into his decision to find that the currently employed dispute agents are "managing agents" for purposes of discovery depositions. Experian has failed to identify how the Order in this regard even remotely rises to the "significantly deferential" standard necessary to set it aside. Therefore, this Court must defer to Magistrate Judge Williams' findings on that issue.

C. **Proceeding With The Subject Depositions Is Not Illegal Under Chilean Law.**

As its final argument, Experian resorts to its previous insistence that it is against Chilean law for this Court "to require a Chilean citizen to appear for a deposition in Chile" without making Plaintiff go through the letters rogatory process. *See* Experian's Objections [Doc. 54] at 14. To be clear, there does not seem to be a dispute that if Plaintiff is required to serve a subpoena to compel the appearance of the individual dispute agents in Chile, he will necessarily be forced to expend the nearly seven thousand dollars ($7,000.00), delaying this case by no less than twelve (12) to fifteen (15) months, to institute the letters rogatory process. And even then, Plaintiff's lead counsel, who has litigated this type of complex credit reporting case for nearly twenty years, will not be permitted to actually conduct the depositions, being forced

instead to rely on the questioning of Chilean court personnel with no connection with this case and/or experience with this kind of litigation. The possibility that the totality of the letters rogatory process is so prohibitive and/or undesirable so as to deter Plaintiff from pursuing the depositions further is, presumably, exactly what Experian is counting on.[8]

But, as Plaintiff has established, there is nothing unique to Chilean law that prevents the individual dispute agents, within the scope of their employment, from appearing for a tele-conference deposition by notice directed to Experian. In fact, Plaintiff's Chilean law expert specifically opined that there is "no express prohibition under Chilean law" that would bar an employer from asking – or even directing – an employee or agent from appearing at a deposition related to a foreign lawsuit. *See* Valenzuela Aff. at ¶¶ 2 and 3(a). If, as requested here, a witness appears at the direction of its employer as opposed to requiring a subpoena (which necessarily invokes the jurisdiction of a Chilean court), the letter rogatory process never comes into play. *Id.* at ¶¶ 5, 9 and 10.

Experian's arguments against complying with the Order on Plaintiff's Second Motion to Compel [Doc. 51] are limited to instances where the individual witness must be *forced* to appear. That completely misapprehends Magistrate Judge Williams' ruling which provides that because of the inter-relationship between the two Experian entities, and the determination that for purposes of discovery depositions in this case the individual dispute agents are "managing agents," Plaintiff need not serve a subpoena to compel their appearance; serving a

---

[8] Plaintiff suspects that this reality played a part in Experian's decision to open its second NCAC in Chile as compared to other countries. Plaintiff attempted to conduct discovery on this issue but was denied. *See* Order [Doc. 51] at 14-15.

Notice of Deposition on Experian is sufficient to compel Experian to direct these agents to appear. It is irrefutable that nothing under Chilean law prohibits Experian from doing so.[9]

### III.    CONCLUSION.

Experian's objections to Magistrate Judge Williams' Order on Plaintiff's Second Motion to Compel [Doc. 51] is little more than a Hail Mary attempt to avoid giving Plaintiff access to the actual dispute agents who handled (or mishandled) Plaintiff's multiple disputes for just a bit longer. The issue was originally decided nearly six (6) months ago, and Magistrate Judge Williams' determination that Plaintiff is entitled to question "the only people who might have information about what was actually done" with Plaintiff's disputes was confirmed, in great detail, in a carefully-reasoned and lengthy opinion. Experian may not like it. This Court may not even agree with it. But there is significant support in both the record evidence as well as applicable authority demonstrating that Magistrate Judge Williams' Order on point is not clearly erroneous or contrary to law as would be necessary to set aside any portion thereof.

Therefore, for all of the reasons enumerated herein, as well as the totality of the submissions on Plaintiff's First and Second Motions to Compel, Plaintiff respectfully urges this Court to overrule Experian's objections in their entirety.

---

[9] Notably, Experian avoids addressing whether it has actually asked these dispute agents to appear and/or if they have refused to do so.

Respectfully submitted,


  /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Admitted *Pro Hac Vice*)
Geoff B. McCarrell, Esq.
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com
Email: gmccarrell@sgoldsmithlawoffice.com

Leonard A. Bennett (Admitted *Pro Hac Vice*)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho 83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearlattorneyatlaw@yahoo.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing *Response to Experian's Objections to Order on Plaintiff's Second Motion to Compel* is being filed electronically with the United States District Court for the District of Idaho, on this 28th day of November 2012. Notice of this filing will be transmitted to counsel of record by operation of the Court's electronic filing system.

    /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (*Pro Hac Vice*)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Attorney for Plaintiff