UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOSE LUIS CALDERON,

      Plaintiff,

      v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

      Defendant.

Case No. 1:11-CV-00386-EJL

**ORDER**

      Before the Court in the above-entitled matter is Defendant's Objection to the Magistrate Judge's Order partially granting Plaintiff's Second Motion to Compel Discovery.   (Dkt. 54.)   The Order requires Defendant to make certain individuals available for deposition in a mutually agreed-upon location in Chile via notice, without issuing subpoenas through the Chilean letters rogatory process.   Because Defendant has failed to demonstrate that the Order was either clearly erroneous or contrary to law, the Court affirms the Magistrate Judge's Order.

**ORDER - 1**

**Factual and Procedural Background**

This case involves Plaintiff Jose Luis Calderon's ("Mr. Calderon" or "Plaintiff")

claims against Experian Information Solutions Inc. ("EIS") for various violations of the

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*   In general, Mr. Calderon claims EIS

wrongfully identified certain negative credit information associated with another

individual, also named "Jose Calderon," as belonging to him.   Mr. Calderon also alleges

EIS failed to reasonably investigate Mr. Calderon's file, and that EIS repeatedly refused to

correct his credit report after he notified it of the error.   As a result of the false information

that remained on his credit report, Mr. Calderon alleges that he was ultimately denied a

mortgage loan in November of 2009.   (Dkt. 1, p. 6, ¶31.)

Mr. Calderon filed suit against EIS in August, 2011.   (Dkt. 1.)   During the course

of discovery, Mr. Calderon learned that the key personnel who handled his dispute with

EIS were actually employed by EIS' sister company, Experian Services Chile, S.A.

("ESC"), and that the majority of these dispute agents live and work in Chile.[1]   Mr.

Calderon's request to depose the agents who processed his dispute caused a discovery

battle resulting in two opinions by the Magistrate Judge ordering EIS to produce three of

the currently employed agents who handled Mr. Calderon's dispute with EIS for

deposition.   (Dkts. 25, 51.)   EIS seeks this Court's review of the Magistrate Judge's

second order (Dkt. 51), which requires EIS to produce dispute agents employed by EIS and

---

[1] One of the more than twelve individuals who handled Plaintiff's multi-year dispute is employed
by EIS in Allen, Texas.   In addition, several of the agents who handled Mr. Calderon's claim no
longer work for either EIS or ESC.   (Dkt. 54, p. 4.)

**ORDER - 2**

ESC via notice, and without subpoena, regardless of whether such witnesses are located in Chile or the United States.[2]

As a preliminary matter, the Court notes that EIS moved to strike Mr. Calderon's initial Response to EIS's Objections to the Discovery Order (Dkt. 57) for failing to comply with the page limitations set forth in Local Civil Rule 72.1(b)(1).   After EIS filed its Motion to Strike (Dkt. 60), Plaintiff filed a corrected ten page Response to EIS's Objections to the Discovery Order.   (Dkt. 62-1.)   EIS does not object to Mr. Calderon's corrected Response brief.   (Dkt. 63.)   The Court has accordingly considered only Mr. Calderon's corrected Response brief (Dkt. 62-1) and has not reviewed or otherwise considered Plaintiff's over-length brief (Dkt. 57).   EIS' Motion to Strike is accordingly **MOOT**.

## Standard of Review

A party objecting to a magistrate judge's ruling on a pretrial motion may, within fourteen days of the entry of the order, seek review by the assigned district judge.   28 U.S.C. § 636(b)(1).   Federal Rule of Civil Procedure 72(a) provides that a magistrate judge's ruling on nondispositive motions may be set aside or modified by the district court only if they are found to be "clearly erroneous" or "contrary to law."   Fed.R.Civ.Proc. 72(a); *see also Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).   Orders of a magistrate judge resolving pretrial discovery issues are nondispositive

---

2 The facts and procedural background are more fully set forth in the aforementioned discovery orders.   (Dkts. 25, 51.)

ORDER - 3

within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1), and are thus reviewed under the "clearly erroneous or contrary to law" standard of review.   *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1414 (9th Cir. 1991); *see also U.S. v. Ionia Management S.A.*, 499 F.Supp.2d 166, 168 (D. Conn. 2007); *Mental Disability Law Clinic v. Hogan*, 739 F.Supp.2d 201, 203 (E.D.N.Y. 2010).   The clearly erroneous standard applies to the magistrate judge's findings of fact, while legal conclusions are reviewable *de novo* to determine whether they are contrary to law.   *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999) (citation omitted).

To conclude that a magistrate judge's decision is clearly erroneous, the district court must arrive "at a definite and firm conviction that a mistake has been committed."   *Id.* (*citing Federal Sav. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co.*, 130 F.R.D. 507 (D.D.C. 1990).   An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.   *Botta v. Barnhart*, 475 F.Supp.2d 174, 185 (E.D.N.Y. 2007).   Review of a magistrate judge's order on nondispositive issues is "extremely deferential," and parties seeking to overturn the magistrate's discovery ruling "bear a heavy burden."   *Dochniak v. Dominium Management Services, Inc*., 240 F.R.D. 451, 452 (D. Minn. 2006); *Citicorp. v. Interbank Card Ass'n*, 87 F.R.D. 43, 46 (S.D.N.Y. 1980).

## Analysis

EIS claims the Magistrate Judge's Second Discovery Order (Dkt. 51) should be set aside as clearly erroneous and contrary to the law.   Specifically, EIS claims the Magistrate

Judge erred in: (1) treating EIS and non-party entity ESC as the same legal entity for purposes of deposition discovery; (2) determining low level dispute agents could be considered "managing agents" under the Federal Rules of Civil Procedure and striking post-hearing submissions regarding this issue; and (3) failing to account for EIS's inability to require the Chilean citizen employees of ESC to appear for deposition in Chile under Chilean law.   The Court will address each of these issues in turn.

### 1.   Treatment of EIS and ESC as the same legal entity

EIS argues the discovery order is improper because the Magistrate Judge decided to treat EIS and ESC as the same legal entity for purposes of deposition discovery without pointing to any evidence or legal authority to support this conclusion.   (Dkt. 54, pp. 6-8.) EIS claims the Magistrate Judge's treatment of EIS and ESC as the same entity for deposition discovery rested solely on the fact that EIS represented, during oral argument on Mr. Calderon's First Motion to Compel, that EIS and ESC are sister corporations.   (*Id.*, p. 6.)   EIS also claims the Magistrate Judge failed to consider the authority EIS provided to establish that Rule 30 of the Federal Rules of Civil Procedure does not require EIS to produce the employees of its sister corporation when Plaintiff *merely alleged* that the Chilean dispute agents are under EIS's control.   (*Id.*, p. 7.) (emphasis in original) (*citing Ski Train Fire of November 11, 2000 Kaprun Austria*, 2006 WL 1328259 (S.D.N.Y. 2006) and *Ethypharm S.A. France v. Abbott Laboratories*, 271 F.R.D. 82, 88 (D. Del. 2010)). Finally, EIS claims the Magistrate Judge decided to treat EIS and ESC as the same entity

for discovery purposes without any briefing on the issue from the parties, and without any citation to authority.   (*Id*.)

The Court finds that the Magistrate Judge's decision to treat EIS and ESC as one for purposes of discovery was not clearly erroneous.   Contrary to EIS's suggestions, the Magistrate Judge did not base his decision solely on EIS's representation that EIS and ESC were sister corporations, but also considered arguments by the parties and evidence regarding the relationship between EIS and ESC before deciding to treat the two entities as the same for purposes of discovery.   For instance, the Magistrate Judge noted that EIS's counsel maintained that "the rules that govern how a dispute is investigated are exactly the same whether they're being processed in Allen, Texas or in Chile."   (Dkt. 51, p. 12.)   The Magistrate Judge also noted that EIS's counsel "explained that whether a particular dispute is handled in Allen, Texas or in Chile is purely a function of workload."   (*Id*.)   During the hearing on Plaintiff's Second Motion to Compel, EIS's counsel also stated that it is "almost happenstance if an individual mails a dispute to Experian whether it happens to be processed in Allen, Texas or Santiago, Chile or in the case of the plaintiff in both places." (*See Transcript of Hearing on Plaintiff's Second Motion to Compel before the Honorable Mikel H. Williams, October 3* (hereinafter "hearing transcript"), p. 37, ll. 5-8.)   Further, as the Magistrate Judge explained in the Second Discovery Order, "[c]learly, the dispute agents employed by the Chilean entity are acting for and on behalf of the American corporation when they process disputes originating from the United States."   (Dkt. 51, p. 12.)

**ORDER - 6**

In addition, contrary to EIS' claim that the parties did not brief this issue before the Magistrate Judge, *both* parties addressed this issue in their briefing on Mr. Calderon's First Motion to Compel.   For instance, in its Opposition to the First Motion to Compel, EIS argued that it could withhold evidence related to its dispute agents because they were "employed by a non-party corporation."   (Dkt. 16, pp. 13-14.)   In his reply, Mr. Calderon pointed out that EIS and ESC had operated as one with respect to his dispute. Specifically:

> Every one of Plaintiff's fourteen (14) disputes of the false information in his ***Experian*** credit report was addressed to ***Experian*** at an address in Allen, Texas. Plaintiff would systematically receive a responsive communication with ***Experian's*** logo in the corner, and usually reminding Plaintiff that he could contact ***Experian*** at its United States website, www.***experian***.com.   Nevertheless, and despite the repeated use of the phrases such as "***our*** investigation" and "description of how ***we*** verified the information," Experian claims it cannot produce a single piece of information about the individual who processed any of these communications because '***all persons who received communications from Plaintiff or reviewed his disputes are non-parties***.'

(Dkt. 17, pp. 8-9.) (emphasis in original)

Indeed, Judge Williams noted during the hearing on Plaintiff's Second Motion to Compel that the "parties have provided extensive briefing to the Court on this issue addressing whether or not, first of all, the Chilean entity is a non-party to this litigation and how close they are connected to the actual defendant."   (*Hearing Transcript*, p. 5, ll. 4-7.)   In light of this history, EIS's claim that the Magistrate Judge treated "EIS and ESC as the same legal entity without pointing to any evidence or legal authority to support this conclusion," is simply not accurate.   (Dkt. 54, pp. 5-6.)

**ORDER - 7**

Moreover, there is legal authority to support the Magistrate Judge's decision treating ESC as a party for purposes of discovery.   In *Alcan International Ltd. v. S.A. Day Mfg. Co., Inc.*, 176 F.R.D. 75 (W.D.N.Y. 1996) ("*Alcan*"), plaintiff Alcan, developer of an aluminum product marketed under the trademark "NOCOLOK" and plaintiff Solvay Performance Chemicals, licensee of the NOCOLOK trademark, sued defendant competitor for false representation under the Lanham Act.   Defendant counterclaimed for false advertising under the Lanham Act.   Defendant sought depositions of employees of "Solvay Fluor," the German manufacturer of NOKOLOK.   Plaintiffs refused to produce such testimony because Solvay Fluor was a foreign corporate affiliate of Solvay Performance Chemicals, and was not a party to the dispute.   Like EIS, Plaintiffs in *Alcan* argued the court could not compel testimony of Solvay Fluor's employees because they were neither parties to the dispute nor employees of a party.   *Id.* at 77.   Plaintiffs suggested Solvay Fluor's employees were "simply non-party witnesses who, as residents of a foreign country, must be subpoenaed pursuant to the procedures authorized by the Hague Convention."   *Id.*

The *Alcan* court rejected Plaintiffs' argument and granted Defendant's motion to compel testimony of the German employees of Solvay Fluor.   In so holding, the *Alcan* court explained:

> The ordinary discovery provisions of the Federal Rules of Civil Procedure, rather than the more complicated procedures of the Hague Convention, generally apply to the discovery of information in the custody or control of a party's foreign affiliate. This is true whether the information or witness is located in a foreign country, or whether the corporate entity from whom the discovery is sought is itself a party to

the case.   When considering whether information sought from a corporate party's foreign affiliate is in the party's 'custody and control' so as to be discoverable under the Federal Rules, the focus is on the nature of the relationship between the two corporations.   In each case, 'it is the nature of the transactional relationship between the [corporate entities] that is pivotal.   The court must examine the facts of the case before it in order to determine if the relationship is such that [discovery] is to be compelled.'

*Id*. at 78 (internal citations omitted).

In finding defendant had sufficiently demonstrated that the nature of the relationship between plaintiff Solvay Performance Chemicals and its foreign affiliate Solvay Fluor was such that Solvay Fluor should be compelled to respond to Defendant's requests for depositions and documents, the *Alcan* court noted that Solvay Fluor was the manufacturer of the product exclusively sold in the United States by Solvay Performance Chemicals; that both Solvay Performance Chemicals and Solvay Fluor were corporate members of a unified worldwide entity known as the Solvay Group; that the Solvay Group issued a consolidated annual financial report; that both Solvay Performance Chemicals and Solvay Fluor used the same corporate logo in their promotional materials; and that officers of Solvay Performance Chemicals testified that they had regular contact with Solvay Fluor regarding product sales and marketing.   *Id*. at 79.

In this case, there is similarly a wealth of evidence to suggest that the relationship between EIS and ESC is such that ESC's employees were under EIS's control.   For instance, both the EIS dispute center located in Allen, Texas and the ESC dispute center located in Santiago, Chile are referred to as "National Consumer Assistance Center[s]." (Dkt. 62-1, p. 3) (*citing* deposition testimony from EIS's corporate designee).   The two

**ORDER - 9**

dispute centers have the same organizational structure, and a single EIS employee oversees the operations in Chile.   (*Id*.)   EIS employees are responsible for training all dispute agents, regardless of whether they are located in Texas or Chile, and an identical training manual, created by EIS, is used to train employees in both locations.   (*Id*.)   The policies and procedures employed in both dispute centers are identical, and were created by EIS. (*Id*.)   The two dispute centers also share the same computer systems, and information flows interchangeably between the two systems.   (*Id*.)   Further, the accounting operations of EIS and ESC are shared jointly and are handled by another affiliated Experian entity.   (*Id*.) (*citing* testimony of ESC employee Scott Yamanaka).

        In light of the significant evidence establishing the close corporate relationship between EIS and ESC, and particularly the purportedly seamless interaction between EIS and ESC for purposes of consumer disputes, the Magistrate Judge's decision to treat EIS and ESC as one for purposes of discovery cannot be considered clearly erroneous. Contrary to EIS's claim, and as demonstrated by both the transcript of the hearing on Plaintiff's Second Motion to Compel and in the Second Discovery Order itself, the Magistrate Judge's decision did not rest solely on the fact that EIS and ESC are "sister" corporations, but was instead based upon both the close relationship between EIS and ESC in all aspects of dispute resolution, as well as on the briefing of the parties.   *See, e.g*., *Hearing Transcript,* p. 31, ll. 4-5 (the procedures and rules for handling consumer disputes are "exactly the same" regardless of whether such disputes are handled by EIS or ESC); *Id*., p. 37, ll. 5-8 (it is "almost happenstance if an individual mails a dispute to Experian

**ORDER - 10**

whether it happens to be processed in Allen, Texas or Santiago, Chile or in the case of the

plaintiff, in both cases"); *Id.*, p. 5, ll. 5-7 (Judge Williams stating that "the parties have

provided extensive briefing to the Court on this issue addressing whether or not, first of all,

the Chilean entity is a non-party to this litigation and how close they are connected to the

actual defendant"); Dkt. 51, p. 12 (Magistrate Judge's conclusion that "the dispute agents

employed by the Chilean entity are acting for and on behalf of the American corporation

when they process disputes originating from the United States.").

      Finally, EIS claims the Magistrate Judge's ruling with respect to this issue is clearly

erroneous because the Magistrate Judge failed to consider "legal authority establishing that

Rule 30 of the Federal Rules of Civil Procedure does not require EIS to produce the

employees of its sister corporation when Plaintiff has *merely alleged* that the Chilean

dispute agents are under EIS's control." (Dkt. 54, p. 7) (emphasis in original) (*citing Ski

Train Fire of November 11, 2000 Kaprun, Austria*, 2006 WL 1328259, at *9 and

*Ethypharm S.A. France v. Abbott Laboratories*, 271 F.R.D. 82, 88 (D. Del. 2010).).

However, as discussed above, Mr. Calderon has not merely alleged that the Chilean dispute

agents are under EIS's control, but has instead presented substantial evidence to support

this conclusion.   Moreover, as also discussed *supra*, in addition to the non-binding

authority cited by EIS, there is conflicting non-binding authority which supports the

Magistrate Judge's decision to compel testimony of ESC's employees.   *Alcan*, 176 F.R.D.

at 77-79.   The Magistrate Judge cannot be found to have misapplied or erroneously

construed the law where there is non-binding authority to support both sides of the issue, but, apparently, no controlling authority from the Ninth Circuit.

### 2.    Managing Agent Status of Dispute Agents

EIS also contends the Second Discovery Order incorrectly concluded that the "low-level dispute agents of ESC and EIS are 'managing agents' of defendant EIS."   (Dkt. 54, p. 8.)   EIS's argument with respect to this issue has two components.   First, EIS claims Mr. Calderon raised the theory that the dispute agents should be treated as managing agents for the first time in his Reply to Defendant's Opposition to Plaintiff's Second Motion to Compel.   Because Plaintiff allegedly introduced this argument for the first time in his Reply Brief, EIS submitted post-hearing submissions to provide evidence that the Chilean dispute agents are not managing agents of EIS.   However, because the Magistrate Judge determined EIS should have anticipated Mr. Calderon's managing agent theory, he struck EIS's post-hearing submissions.   EIS suggests the Magistrate Judge erred in failing to allow EIS the opportunity to respond to Plaintiff's managing agent argument.   Second, EIS argues the Magistrate Judge failed to properly consider the relevant factors to determine the dispute agents were managing agents, and that the Magistrate Judge's conclusion that the dispute agents were managing agents is clearly erroneous because it renders the term "managing" meaningless.

### a.    Post-hearing Submissions

EIS devotes much of its briefing to arguing that Mr. Calderon waived his ability to

**ORDER - 12**

argue that the Chilean dispute agents were managing agents by failing to raise this issue

until his Reply to Defendant's Opposition to Plaintiff's Second Motion to Compel.   (Dkt.

54, pp. 8-11.)   The Court agrees that parties "cannot raise a new issue for the first time in

their reply brief."   *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (citations

omitted); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("[i]ssues raised for the first

time in a reply brief are waived.").   However, EIS mischaracterizes the parties' briefing on

this issue, as well as the history of the parties' discovery dispute.   Mr. Calderon did not

raise the managing agent for the first time in his Reply Brief.   Instead, EIS raised the issue

as a defense for the first time in its Opposition to Plaintiff's Second Motion to Compel.[3]

The purpose of Mr. Calderon's Reply Brief was to respond to EIS's Opposition to his

Second Motion to Compel.   "A reply necessarily raises facts and issues, for the first time,

that are germane to the opposition.   If the evidence and argument included with a motion

were required to anticipate the arguments a respondent might raise in opposition to the

motion, the court would not permit the movant to file a reply to any opposition."   *In re*

---

3 *See, EIS's Opposition to Plaintiff's Second Motion to Compel*, Dkt. 40, pp. 4-5, stating
"[m]oreover, a party seeking to depose a resident of a foreign country who is not a party to the
local action (or officer, director, managing agent or employee of an entity party)…must proceed
under the laws and procedures of the foreign country"; p. 7 "[e]ven assuming, *arguendo*, that this
Court finds that [ESC] is a party to the litigation for purposes of this dispute, Plaintiff is not
entitled to deposition upon notice in absence of any assertion that the individuals sought to be
deposed are officers, directors, or managing agents of Experian.   It is well-settled that '[a]
corporate employee or agent who does not qualify as an officer, director, or managing agent is not
subject to deposition by notice'"; p. 7 "'[i]f the individual so designated is not an officer, director,
or managing agent, but merely an employee, then the party seeking the deposition must proceed as
for an ordinary non-party witness.'"; p. 9 "case law simply confirms that the deposition of
individual dispute agents, without a showing that the agents are 'officers, directors or managing
agents' of Experian, must be conducted in Chile in accordance with Chilean law."   (citations
omitted).

**ORDER - 13**

*Large Scale Biology Corp.*, 2007 WL 2859782 (Bkrtcy. E.D.Cal. 2007), at *1.   Here, EIS

"has not been sandbagged," as Mr. Calderon, in his Reply Brief, responded to defensive

issues put in play by EIS's opposition.   *Id.*   As such, Mr. Calderon did not waive the

ability to argue that the employees of ESC are managing agents of EIS, and the Magistrate

Judge did not err in refusing to consider EIS's post-hearing submissions (Dkts. 48, 50).

Nor did the Magistrate judge err in denying EIS's request to file a sur-reply on the

managing agent issue.   *Baugh v. City of Milwaukee*, 823 F.Supp. 1452, 1457 (E.D. Wis.

1993) (where a reply brief "merely responds to matters placed in issue by the opposition

brief and does not spring upon the opposing party [new arguments], reply papers…may

properly address those issues."); *Crummey v. Social Sec. Admin.*, 794 F.Supp.2d 46, 62

(D.D.C. 2011) (sur-replies are generally disfavored, and the determination of whether to

grant or deny leave to file a sur-reply is entrusted to the sound discretion of the district

court).

    In addition, the Magistrate Judge's ruling that EIS could have, and should have,

anticipated that Mr. Calderon would argue the dispute agents were managing agents for

EIS is supported by the procedural history of this dispute.   (Dkt. 51, p. 7, n. 3.)

Specifically, EIS changed its justification for refusing to produce the dispute agents for

deposition multiple times.   EIS first withheld the fact that Mr. Calderon's thirteen

attempts to correct his credit report were each handled by dispute agents working for the

Chilean NCAC.   (Dkt. 62-1, p. 5, n. 5.)   Mr. Calderon did not learn that his disputes were

processed by Chilean employees of ESC until after EIS supplemented its original

**ORDER - 14**

discovery responses following a meet and confer conference between the parties' counsel. (*Id*.)   EIS then argued that it could not produce the dispute agents because they were non-party employees.   The Magistrate Judge rejected this argument in his First Discovery Order, and held EIS and ESC should be treated as one for purposes of discovery.   (Dkt. 25, p. 4.)   Although the discovery deadline was approaching, EIS next argued that depositions of the Chilean dispute agents could not be scheduled because Plaintiff had yet to complete his Rule 30(b)(6) depositions.   (*Id*.)   When Plaintiff sought to at least schedule the deposition of the Chilean dispute agents, EIS then argued that deposing the dispute agents was "against Chilean law" and that the only way to proceed with deposition of a Chilean national on Chilean soil was to proceed with the letters rogatory process.   (*Id*.)   When Plaintiff offered to conduct the depositions via teleconference at the U.S. embassy (*i.e*., on U.S. soil), EIS continued to insist the only way to depose Chilean nationals was through the letters rogatory process.   (*Id*.)   Plaintiff then incurred the significant expense of hiring a Chilean law expert to show that EIS's argument with respect to the letters rogatory process was inaccurate, and that the depositions of ESC's dispute agents is not against Chilean law. (*Id*.; *see also* Dkt. 42-1.)   Given this history, Mr. Calderon could not yet anticipate, at the time he filed his Second Motion to Compel, that EIS would next argue that the dispute agents could not be deposed because they are not managing agents.   Because EIS raised this issue as a defense in its Opposition to Plaintiff's Second Motion to Compel, Plaintiff was entitled to respond to EIS's managing agent argument in his Reply Brief.

**ORDER - 15**

Throughout the discovery battle between the parties, Mr. Calderon's consistent position has been that he should be permitted to depose the employees who handled his dispute with EIS.   The Magistrate Judge's conclusion that EIS could have, and should have, anticipated the managing agent issue cannot be considered clearly erroneous where EIS raised its claim that Mr. Calderon could not depose the dispute agents without issuing a subpoena because they do not qualify as managing agents of EIS as a defense to Plaintiff's Second Motion to Compel.[4]   The Magistrate Judge did not err in considering argument and authority presented by Mr. Calderon's Reply Brief in response to the managing agent argument EIS raised in its Opposition.   Nor did the Magistrate Judge err in refusing to consider EIS's post-hearing submissions.

---

[4] EIS suggests Mr. Calderon should have raised the managing agent issue in his Second Motion to Compel because EIS's counsel included one sentence, in one of numerous letters exchanged between the parties' counsel during the lengthy discovery dispute, stating that the dispute agents were not "officers, directors or managing agents of either ESC or EIS."   (Dkt. 54, p. 9) (*citing* August 8, 2012 letter from EIS counsel to Plaintiff's counsel.)   However, when ruling on a motion to compel, a court "generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel; thus when an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege waived."   10A FED.PROC.L.ED. § 26:778 (2013) (*citing Sonnino v. University   Kansas Hosp. Auth.*, 220 F.R.D. 633, 642 (D.Kan. 2004).   It follows that Plaintiff was entitled to respond to the managing agent argument in his Reply Brief, where EIS only formally raised the issue as a defense in response to Plaintiff's Second Motion to Compel.

**ORDER - 16**

b.  *Managing agent status of Chilean dispute agents*

Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition.[5]   If the party is a corporation, it may be noticed pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, in which case it must designate an officer, director, or managing agent to testify on its behalf.   Fed.R.Civ.Proc. 30(b)(6).   If the party seeking the deposition wishes to depose a specific employee of the corporation, it may identify a specific officer, director or managing agent to be deposed and notice that person under Federal Rule of Civil Procedure 30(b)(1).   However, a corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice.   *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985).   Such employees must be subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure.

As the Magistrate Judge noted in his Second Discovery Order, the same rules apply to witnesses located overseas.   (Dkt. 51, p. 4.)   Foreign nationals who qualify as managing agents of a party may be subject to deposition pursuant to notice.   However, if the witness sought to be deposed in not an officer, director, or managing agent of a corporate opponent, "the procedures of the Hague Convention or other applicable treaty must be utilized."   (*Id.*) (*citing Stone v. Morton Int'l.*, 170 F.R.D. 498, 503 (S.D. Utah 1997); *In re Honda American Motor Co., Inc. Dealership Litigation*, 168 F.R.D. 535, 540

---

5  As previously discussed, given the common interest of EIS and ESC, as well as the discretion and control over ESC maintained by EIS, the Magistrate Judge determined ESC should be treated as one with EIS—a party to this litigation—for purposes of discovery.   (Dkt. 25.)

(D. Md. 1996) ("*Honda Motors*"); *EEOC V. Honda of America Mfg., Inc.*, 2007 WL

682088 (S.D. Ohio 2007).

The framework for determining whether a particular individual qualifies for

"managing agent" status is "primarily a construction of decisional law concerned with

ensuring that an organization is deposed through its proper representatives concerning the

matters at issue in the litigation."   (Dkt. 51, p. 4) (*citing E.I. Dupont de Nemours & Co. v.

Kolon Indus.*, 268 F.R.D. 45, 48 (2010).).   Determining whether an individual qualifies as

a "managing agent" of a corporation "must be made at the time of the deposition."   *Honda

Motors*, 168 F.R.D. at 540 (citation omitted).   While the burden of proof rests on the party

seeking discovery, this burden is a modest one, and doubts about an individual's status as

'managing agent,' at the pretrial discovery stage, are resolved in favor of the examining

party.   (Dkt. 51, p. 6, *citing U.S. v. Afram Lines*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994);

*Sugarhill Records*, 105 F.R.D. at 170; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

(S.D.N.Y. 1968); *Malletier v. Dooney & Bourke, Inc.*, 2006 WL 3476735 at *14 (S.D.N.Y.

2006); *Boss Mfg. Co., v. Hugo Boss, AG*, 1999 WL 20828 (S.D.N.Y. 1999).).

EIS contends the Magistrate Judge's analysis of whether the Chilean dispute agents

can be considered managing agents is clearly erroneous because "it renders the term

'managing' to be meaningless."   (Dkt. 54, p. 11.)   Specifically, EIS claims that the

Magistrate Judge focused on only one of the relevant factors for determining a witness is a

"managing agent," or whether the duties and activities of the specific witness are closely

linked with the events giving rise to the lawsuit.   EIS suggests "such an interpretation

**ORDER - 18**

renders the term 'managing' mere surplusage as there would never be a reason to take a

deposition of an employee if they did not play some role in the matters in dispute in

litigation."   (*Id.*)

EIS misrepresents the Magistrate Judge's order.   Far from relying on a single factor

to determine the Chilean dispute agents can be considered managing agents for purposes of

discovery, the Magistrate Judge engaged in an extensive review and analysis of the law

regarding each of the factors to be considered when determining whether a corporate

employee can be considered a "managing agent," and considered how each of these factors

apply to the facts of this case.

Specifically, the Magistrate Judge explained that when determining whether a

corporate employee can be considered a "managing agent," courts around the country have

consistently considered the following factors:

> (1) whether the individual is invested with general powers allowing him to exercise
> judgment and discretion in corporate matters; (2) whether the individual can be
> relied upon to give testimony, at his employer's request, in response to the
> demand of the examining party; (3) whether any person or persons are employed
> by the corporate employer in positions of higher authority than the individual
> designated in the area regarding which information is sought by the
> examination; (4) the general responsibilities of the individual *respecting the
> matters involved in the litigation*.

(Dkt. 51, p. 5) (*quoting Sugarhill Records*, 105 F.R.D. at 170 (emphasis in original).   The

Magistrate Judge also noted that the Court in *Honda Motors* identified the relevant factors

as: "whether the corporation has invested the person with discretion to exercise his

judgment; (2) whether the employee can be depended upon to carry out the employer's

**ORDER - 19**

directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the opposing party."   (Dkt. 51, p. 5) (*quoting Honda Motors*, 168 F.R.D. at 540-41).

Regardless of which variation of the test used, the Magistrate Judge noted that "virtually all courts and commentators agree that the question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an ad hoc basis, considering the facts of the particular case."   (*Id*.)   Further, the Magistrate Judge explained that "at least where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements, the third factor, i.e. the witness's likely 'identification with the interests of the employer'—is said to be the 'paramount test.'" (*Id*., pp. 5-6, *citing Kolon Industries*, 268 F.R.D. at 49; *Honda Motors*, 168 F.R.D. at 541; *Boston Diagnostics Development Corp*., *Inc. v. Kollsman Mfg. Co*., 123 F.R.D. 415, 416 (D. Mass. 1988); *Independent Productions Corp. v. Loew's Inc*., 24 F.R.D. 19, 25 (S.D.N.Y. 1959); FPP § 2103.).

The Magistrate Judge considered each of the relevant factors for determining whether the dispute agents could constitute managing agents for purposes of discovery in this case.   For instance, with respect to whether the individual has discretion to exercise judgment in corporate manners, as well as whether any persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought, the Magistrate Judge explained that the "parties have presented the Court with almost no information as to the status of the

**ORDER - 20**

individual dispute agents within [ESC] or within the overall corporate structure of the related Experian entities."   (Dkt. 51, p. 7.)   Although he noted that EIS argued the dispute agents could not qualify as managing agents due to their status as low-level employees, and that there is authority for this position, the Magistrate Judge concluded that a roughly equal number of cases have found that employees not specifically designated as "managers" can still qualify as managing agents for purposes of discovery.   (Dkt. 51, pp. 7-8.)   The Magistrate Judge then discussed these cases and concluded such authorities illustrate that there is "at least a 'close question' as to whether the individual dispute agents are managing agents of EIS for purposes of this litigation."   (*Id.*, p. 9.)   The Magistrate Judge also noted that the fact that credit reporting companies "are required by federal law to ensure the maximum possible accuracy of credit reports," is also relevant to the managing agent inquiry, as "[s]tatutory duties are statutory duties; that they may be performed by subordinate employees is not determinative."   (Dkt. 51, p. 10.)   Contrary to EIS's claim, the Second Discovery Order illustrates that the Magistrate Judge considered the first factor, or whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters.

The Magistrate Judge also analyzed whether the dispute agents can be depended upon to carry out the employer's directions and to give testimony, and concluded that current employees of ESC can be relied upon to give testimony because the declaration of Xandra Valenzuela Delgado, Mr. Calderon's Chilean law expert, established that giving testimony in a case arising from the employee's job-related activities would be considered

**ORDER - 21**

a duty within the scope of the employment relationship under Chilean law.   (*Id.*, p. 10, n. 5.)

In addition, the Magistrate Judge considered whether the dispute agents could be expected to identify with the interests of EIS as opposed to the interests of Mr. Calderon, and concluded this "paramount" factor weighed in favor of allowing the depositions "because there is no reason to suppose that [ESC's] Chilean employees would identify with a plaintiff half a world away, as opposed to the corporation which provided them with their livelihood."   (Dkt. 51, p. 10.)   Finally, the Magistrate Judge weighed the general responsibilities of the dispute agents with respect to the matters involved in the litigation, and determined that, even "accepting EIS's characterization of these employees as 'entry level,' the fact remains that they were the individuals who were charged with handling Plaintiff's disputes, and they are therefore the only people who might have information about what was actually done, as opposed to simply what Experian's policies and procedures theoretically required."[6]   (*Id.*, pp. 9-10.)

---

6 EIS argues the dispute agents will "certainly not have any recollection of one isolated piece of mail correspondence that he/she handled more than four years ago," that EIS's 30(b)(6) witness already provided extensive testimony regarding the actions taken by the dispute agents, and that the Magistrate Judge's conclusion that the dispute agents individuals might have information about what was actually done was thus improper.   (Dkt. 54, p. 13.)   However, Plaintiff is entitled to question the dispute agents themselves about whether or not they have a memory of handling his disputes, and should not be forced to accept EIS's representations about what their employees will say, particularly where EIS has made every attempt to frustrate Mr. Calderon's ability to depose such employees.   In addition, EIS's 30(b)(6) witness stated several times during her deposition that she could only testify to what the individual dispute agents were supposed to consider when evaluating Mr. Calderon's disputes, and could not testify as to how they actually handled Mr. Calderon's dispute, or to whether they generally followed EIS's policies.   (Dkt. 34-2, pp. 172-73.)   The Magistrate Judge's conclusion that the dispute agents are the only people who might have

Although the Magistrate Judge emphasized the dispute agent's responsibilities with respect to the matters involved in the litigation, the Second Discovery Order illustrates that the Magistrate Judge in no way limited his holding to consideration of this factor.   Instead, the Second Discovery Order demonstrates that the Magistrate Judge properly considered each of the relevant factors for determining whether the dispute agents were managing agents, and appropriately concluded that several of these factors weighed in favor of finding the dispute agents were managing agents for purposes of discovery.    The Magistrate Judge's analysis thus did not render the term "managing" meaningless, and did not fail to consider the appropriate factors to determine whether a particular employee should be considered a managing agent.   The Court recognizes that the dispute agent's apparently low-level status weighs against concluding that they are managing agents for EIS.   However, in light of the other factors which support a finding that the dispute agents are managing agents, the Magistrate Judge's conclusion cannot be considered clearly erroneous or contrary to law.   Moreover, in cases such as this, where the characterization of proposed deponents "as managing agents is not free from doubt, whatever doubt remains should be resolved in favor of the examining party[.]"   *Tomingas v. Douglas Aircraft*, *Co*., 45 F.R.D. 94, 97 (S.D.N.Y. 1968).

---

information about what was actually done, as opposed to what EIS's policies theoretically require, was accordingly reasonable.

**ORDER - 23**

### 3.   Requirements for deposing Chilean employees

Finally, EIS argues that it does not have the ability to require Chilean citizens to appear for a telephonic deposition under the laws of Chile, and that the only way to require a Chilean citizen to appear for a deposition in Chile is through use of the letters rogatory process.   (Dkt. 54, p. 14.)   However, because the employees in question may be deposed via notice as managing agents of EIS, concerns over Chilean judicial sovereignty are not implicated, as a Chilean court will not be required to issue a subpoena. (Dkt. 51, pp. 10-11.) As Mr. Calderon's Chilean legal expert, Zandra Valenzuela Delgado ("Ms. Valenzuela") explained, "if the involvement of the Chilean court is not required by the foreign court, for instance, if the witness appears at the direction of its employer as opposed to needing to be compelled via subpoena, there is no jurisdictional claim in the Chilean Legal System.   In that case, the relevant procedural rules are subject to U.S. jurisdiction."   (Dkt. 57-5, p. 2.)

EIS insists that the Second Discovery Order requires ESC to "do something that is improper under the laws of Chile," that Chilean case law recognizes "that it is not proper for employers to require their employees to testify in legal proceedings," and that "only Chilean Courts have the power to impose an obligation to appear as a witness."   (Dkt. 54, p. 14.)   However, even where foreign countries have passed "blocking statutes" in an attempt to "prohibit its nationals from complying with American discovery requests," such blocking statutes "are insufficient in and of themselves for a district court to restrain its power to compel discovery under a comity analysis."   *Honda Motors*, 168 F.R.D. at 538, n. 2.   Here, EIS has not pointed to any Chilean statute which prohibits employers from

ORDER - 24

requiring their employees to testify, nor to any Chilean statute which mandates that only

Chilean Courts have the power to impose an obligation to appear as a witness.   Although

EIS cites to three Chilean law cases which allegedly support this position,[7] such case

authority is insufficient to restrain the Court's power to compel discovery under a comity

analysis where not even a Chilean statute would be enough, in and of itself, to so restrain

the Court.   *Id*.

       If "foreign sovereignty is in fact implicated in a given case, comity analysis requires

the balancing of competing interests between the sovereigns and the parties involved."   *Id*.

at 537, *citing First Nat'l Bank of Cicero v. Reinhart Vertrieb's AG*, 116 F.R.D. 8, 9 (N.D.

Ill. 1986).   Although he determined Chile's foreign sovereignty is not implicated in this

case because the dispute agents can be deposed via notice, rather than subpoena, the

Magistrate Judge also included a comity analysis within the Second Discovery Order.   For

instance, he emphasized that "this case involves a claim by a United States plaintiff for

violation of United States laws," and that "the Plaintiff had no idea, until well into the

litigation, that a Chilean corporation was processing his disputes.   Given these facts, the

Court finds that the sovereign interests of the United States would be infringed were

Plaintiff required to proceed with depositions of [EIS's] key actors according to the very

different, and much more restrictive, customs of Chilean law."   (Dkt. 51, p. 11.)   The

Magistrate Judge also relied on *Honda Motors* in holding it would be "'patently unfair' to

---

7  Spanish versions of the cases to which EIS cites were attached as exhibits to its Objections to the
Magistrate Judge's Second Discovery Order.   EIS represented that it did not have time to obtain
official English translations of the Chilean case authority given the short time provided for making
objections.   (Dkt. 54, p. 14, n. 2.)

**ORDER - 25**

'constrain [Plaintiff's] ability to discover facts necessary to make his case' by allowing [EIS's] witnesses to be deposed in Chile according to the much more restrictive Chilean rules, while still allowing [EIS] 'free reign to discover all relevant facts pursuant to the Federal Rules of Civil Procedure.'"   (*Id.*, p. 11, *citing Honda Motors*, 168 F.R.D. at 539-40.)   Further, the Magistrate Judge noted this "dispute concerns a federal statute—the Fair Credit Reporting Act—that is designed to protect the rights of consumers doing business in the United States, and that, like the antitrust laws at issue in [*Honda Motors*], is in its own way critical to the smooth and fair functioning of the modern economy."   (*Id.*) Finally, the Magistrate Judge noted, "[s]imply put, Chilean interests are not implicated here in the same way that those of the United States are."   (*Id.*, p. 12.)   Thus, even if some aspect of Chilean law (which EIS has failed to identify) did pose a bar to requiring testimony of EIS's dispute agents via notice and without use of the letters rogatory process, the Magistrate Judge's comity analysis still supports his Order compelling such testimony.

The Magistrate Judge's decision to compel testimony of the Chilean dispute agents is further buttressed by the declaration of Ms. Valenzuela, which provides, in relevant part: "[t]here is no provision under Chilean law that might be understood as preventing a plaintiff or its employees or agents in Chile from cooperating with the courts in the U.S. voluntarily"; "[i]t is within the legal authority of a Chilean company to require its employees to cooperate with the US Court, including testifying before said Court in matters related to their employment in Chile"; "if the witness appears at the direction of its employer as opposed to needing to be compelled via subpoena, there is no jurisdictional

claim in the Chilean Legal system"; "it can be concluded that there is no prohibition under Chilean law in regards to an employer requesting an employee, as a condition of their employment, to be deposed as a witness in a court in the United States, independently of any formal legal procedure within a Chilean court."   (Dkt. 42-1, pp. 2-5.).   Ms. Valenzuela's affidavit does not limit the aforementioned conclusions to cases of voluntary depositions, as EIS claims, but instead specifically states that employers may require their employees to cooperate with a U.S. Court, including testifying before the U.S. Court in matters related to their employment in Chile.   (*Id.*, p. 2.)   EIS has demonstrated neither that proceeding with the depositions via notice and without use of the letters rogatory process is illegal under Chilean law, nor that the Magistrate Judge's conclusions with respect to this issue were clearly erroneous.

## ORDER

**IT IS ORDERED**:

1.  EIS's Motion to Strike Plaintiff's Over-Length Brief (Dkt. 60) is **MOOT**.

2.  The Court **AFFIRMS** the portions of the Second Discovery Order which compel EIS to produce the Chilean dispute agents who handled Mr. Calderon's dispute via notice, and without subpoena.   The October 31, 2012 Discovery Order of Magistrate Judge Mikel Williams (Dkt. 51) is accordingly **AFFIRMED,** and EIS's Objections to the Second Discovery Order (Dkt. 54) are **OVERRULED.**

**ORDER - 27**

3.  With respect to the depositions of the dispute agents, EIS is directed to make three individuals of Plaintiff's choosing, who are currently employed by either EIS or ESC, available for deposition via notice within **thirty (30)** days of the date of this Order.   To the extent that these witnesses are Chilean nationals, the depositions are to take place at a mutually agreed upon location in Chile.

4.  The Court previously vacated trial on this matter due to an ongoing capital criminal trial and the need to rule on EIS's Objections to the Second Discovery Order. (Dkt. 64.)   Now that EIS's Objections have been overruled, the Court directs the parties to confer regarding potential trial dates.   After conferring, the parties are directed to contact Diane McDonald, judicial assistant to Judge Lodge, (208) 334-9270, and advise a joint trial date.   The Court's available Boise trial dates are October 8, October 22, November 5, November 19, December 3 or December 17, 2013.

DATED: June 5, 2013

Edward J. Lodge
United States District Judge

**ORDER - 28**